UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Matthew Albright,<br><br>            Plaintiff,<br><br>    -v-<br><br>Terraform Labs, Pte. Ltd., et al.<br><br>            Defendants. | 22-cv-07281 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:[1]

On October 21, 2022, defendants Terraform Labs, Pte. Ltd. and Jump Trading, LLC filed a motion to transfer venue to the District Court for the Northern District of California for consolidation with a class action filed in that district, Patterson v. Terraform Labs, Pte. Ltd., No. 3:22-cv-03600 (N.D. Cal. filed June 17, 2022). By order rendered orally during the initial pre-trial conference on October 31, 2022, the Court denied that motion. The reasons for this decision are set forth below.

I. **Factual Background**

On August 25, 2022, the plaintiff, Matthew Albright, brought this putative class action against the defendants on behalf of anyone who purchased TerraUS coins between May 1, 2019 and June 15, 2022. See Complaint, Dkt. 1 at ¶ 1, Albright v. Terraform Labs, Pte. Ltd., No.

---

[1] All capitalized terms here used refer to the definitions set forth in this order, unless otherwise specified. Also, all internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources.

1

1:22-cv-07281 (S.D.N.Y. filed August 25, 2022) ("Complaint"). The TerraUS coin is a kind of cryptocurrency known as a "stablecoin," in which the price of the coin is pegged to another asset, most commonly fiat currency, exchange-traded commodities, or other cryptocurrencies. Id. at ¶ 1 n.1. Each TerraUS coin, for instance, was algorithmically pegged to the U.S. dollar and could be purchased and sold for exactly $1.00. Id. Stablecoins can serve as a useful medium of exchange because their stability assures both buyers and sellers that they will retain purchasing power over time. See New to the Crypto World? Here Are Terms to Know, N.Y. Times (June 8, 2022).

Albright's allegations run as follows. He claims that defendants misled investors of TerraUS coins into believing that the coins were stable and had the potential to generate high annual returns, while simultaneously engaging in a scheme to artificially inflate their value. See Complaint ¶¶ 5-6, 135. When that illusory demand inevitably evaporated, the $60 billion market for the coins crashed, allegedly generating billions of dollars in losses for members of the putative class. Id. ¶¶ 6-7. Meanwhile, defendants allegedly siphoned billions of dollars earned through TerraUS coin sales to private cryptocurrency wallets that they owned. Id. ¶ 5. Their actions, according to the plaintiff, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO" Act) and federal laws regarding money laundering and mail and wire fraud. Id. ¶¶ 127-137.

About two months before the filing of this suit, on June 17, 2022, another plaintiff filed a class action lawsuit in the Northern

2

District of California against all but one of the defendants in this case. See Patterson v. Terraform Labs, Pte. Ltd., No. 3:22-cv-03600 (N.D. Cal. June 17, 2022). The Patterson complaint, though it recites many of the same facts, alleges that the defendants infringed federal securities law and California state law in addition to the RICO Act. See Patterson v. Terraform Labs, Pte. Ltd. Complaint, Dkt. 28-1, Ex. A ("Patterson" Complaint).

## II. Discussion

Defendants argue for transfer to the Northern District of California on two grounds: First, that the first-filed principle dictates that this case be consolidated with Patterson, which, according to the defendants, features effectively the same facts and issues and was filed nearly two months before this case. Second, and in the alternative, that the balance of conveniences counsels for transferring the case under the change of venue statute, 28 U.S.C. § 1404. The Court considers each of these arguments in turn.

1. First-Filed Principle

Under the well-settled first-filed principle, "when two district courts concurrently have before them actions involving substantially or effectively the same parties and issues, there is a strong presumption in favor of transfer to the forum of the first-filed suit" unless special circumstances counsel against transfer. McCain v. Racing, 2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007). The purpose of this principle is to "avoid conflicting decisions and promote

judicial efficiency, while respecting principles of federal comity." See Speedfit LLC v. Woodway USA, Inc. 53 F. Supp. 3d 561, 570 (S.D.N.Y. 2014).

Defendants contend that adhering to this long-established principle requires transfer to the Northern District of California as the case in that district -- Patterson v. Terraform Labs -- involves issues and parties that, defendants claim, are essentially identical to those in this case and Patterson was filed first. The Court disagrees. Though Patterson was unquestionably filed before this case and was brought against nearly all of the same defendants, that case does not involve "substantially or effectively the same . . . issues," and therefore, the first-filed principle does not apply. See McCain, 2007 WL 2435170, at *2.

For one, while Patterson asserts that the TerraUS coins qualify as securities, Albright makes no such assertion. Because of this difference in approach, the Patterson complaint primarily focuses on the claim that the defendants' conduct runs afoul of federal securities law, namely, the Securities Act of 1933 and the Securities Exchange Act of 1934. Patterson Complaint ¶ 1. On the other hand, the Complaint in this case solely alleges violations of the RICO Act. Complaint ¶¶ 127-137.

To be sure, the Patterson complaint also includes a RICO claim, Patterson Complaint ¶¶ 225-227, but this is set forth as a fallback claim in case the complaint's primary claim of securities violations were to fail. The Patterson papers make clear that Patterson intends

4

to focus on his claim that defendants engaged in securities violations, and this has real practical consequences that make transfer improper. This is because the RICO and securities fraud claims are mutually exclusive. "Section 107 of the [Private Securities Litigation Reform Act of 1995 (PSLRA)]. . . bars private causes of action under RICO for predicate acts that describe conduct that would otherwise be actionable as securities fraud." MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 274 (2d Cir. 2001); 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [of the RICO Act].").

In other words, if Patterson's securities fraud claims were to survive in the Northern District of California district court, their RICO claims -- and those of Albright and this putative class, if consolidated -- would be preempted. This preemption, in turn, would significantly impact the course of the litigation. First, the plaintiffs in the consolidated action would be unable to pursue treble damages, which are available under RICO and not under the securities fraud statutes. See 18 U.S.C. § 1964 ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit. . . .").

Second, the potential for threefold damages brings with it unique elements that those bringing RICO claims predicated on mail and wire

fraud must prove. Generally, for instance, only the existence of a "complex, multi-faceted scheme[]" is ordinarily sufficient to "satisfy [the] 'pattern' element of a plausible RICO claim." See Gross v. Waywell, 628 F. Supp. 2d 475, 494 (S.D.N.Y. 2009). Also, a plaintiff bringing a RICO claim predicated on mail and wire fraud must prove that the "mails or wires" were used "to further the scheme," which is understandably not a requirement of the securities laws. United States v. Shellef, 507 F.3d 82, 107 (2d Cir. 2007). Though this may seem at first glance to be a trivial element of proving mail and wire fraud, plaintiffs must do more than merely show that these instrumentalities were used -- in many RICO cases, they must show how such use "translate[s] into a 'pattern' of racketeering activity." Gross, 628 F. Supp. 2d at 494. And, as already discussed, a RICO claim will only be sustained if the plaintiff can maintain that the alleged fraud did not involve the purchase of securities. See 18 U.S.C. § 1964(c).

Put simply, the difference is not just semantics: transferring this case and forcing the plaintiff and the putative class to run the risk of having their claims preempted in the consolidated action -- and depriving them of the opportunity to obtain treble damages -- would not serve the purposes undergirding the first-filed principle. As a matter of plain meaning, if a plaintiff in one action is bringing claims that could be preempted in the first-filed case -- and such preemption would have significant downstream consequences on trial strategy -- it can hardly be said that the two cases involve "effectively" or even "substantially" the same issues. Even if transfer

6

would, as defendants contend, further the interests of judicial economy by ensuring that "there are not conflicting judgments based on the same set of alleged facts," the first-filed principle simply was not meant to apply in circumstances such as this, where the relevant issues are exceptionally different. Defs' Br. at 8.

To put "extra icing on a cake already frosted," transfer would be improper even if the first-filed principle did apply. See Van Buren v. United States, 141 S. Ct. 1648, 1661 (2021). The presumption of transfer under the first-filed principle is just that -- a presumption -- and can be "rebutted by proof of the desirability of proceeding in the forum of the second-filed action." See Employers Ins. of Wausau v. Fox Ent. Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008). Moreover, the "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404." Id. Because, as discussed below, the Court finds that the "balance of convenience" factors to be considered under that statute weigh against transfer, it also, by necessary implication, finds that these same factors counsel against application of the first-filed principle.

The Court thus declines to transfer the case under the first-filed principle, which does not apply here.

2. Transfer Under 28 U.S.C. § 1404

Defendants also ask the Court to transfer this action under 28 U.S.C. § 1404, also known as the change of venue statute. Pursuant to

7

that statute, district courts "may transfer any civil action to any other district or division where it might have been brought," that is, anywhere where the court has jurisdiction, to further the "interest[s] of justice" and facilitate "the convenience of parties and witnesses." 28 U.S.C. § 1404. Neither party disputes that the action could have been filed in the Northern District of California, and so the only issue that remains is whether transferring the case to that district is appropriate in light of the circumstances.

Whether transfer is proper -- and thus, exactly what counts as the "interest[s] of justice" and "the convenience of parties and witnesses" -- is left to the "sound discretion of the district court." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). Notwithstanding this broad discretion, district courts should aim to dispose of these motions in a way that promotes the underlying purposes of § 1404, namely, "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

In service of these values, courts routinely consider the following non-exhaustive factors when evaluating § 1404 motions: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's

8

that statute, district courts "may transfer any civil action to any other district or division where it might have been brought," that is, anywhere where the court has jurisdiction, to further the "interest[s] of justice" and facilitate "the convenience of parties and witnesses." 28 U.S.C. § 1404. Neither party disputes that the action could have been filed in the Northern District of California, and so the only issue that remains is whether transferring the case to that district is appropriate in light of the circumstances.

Whether transfer is proper -- and thus, exactly what counts as the "interest[s] of justice" and "the convenience of parties and witnesses" -- is left to the "sound discretion of the district court." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). Notwithstanding this broad discretion, district courts should aim to dispose of these motions in a way that promotes the underlying purposes of § 1404, namely, "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

In service of these values, courts routinely consider the following non-exhaustive factors when evaluating § 1404 motions: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's

familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." See, e.g., Enigma Software Group USA, LLC v. Malwarebytes, Inc., 260 F. Supp. 3d 401 (S.D.N.Y 2017). To prevail on their motion, the moving party must clear a significant hurdle: they must make a "clear and convincing showing" that transfer is preferable under these factors. Bukhari v. Deloitte & Touche LLP, 2012 WL 5904815, at *2 (S.D.N.Y. 2012).

Moreover, these factors are not to be given equal weight. Motions to transfer should be evaluated from a strong baseline in favor of the plaintiff's choice of forum. "Because . . . discretion [under § 1404] must be exercised at the very outset of [a] case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the . . . plaintiff's choice of forum, for that very choice reflects one side's assessment of the balance of relevant factors." See Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

Here, defendants argue with considerable force that less deference than is typically accorded to the plaintiff's choice of forum is due. To be sure, a plaintiff's decision to bring a case in the Southern District of New York is less pertinent to the balancing test when "New York is not the plaintiff's home district, and the operative facts have little connection to the chosen district." Garnish & Gather, LLC v. Target Corp., 2019 WL 6729152, at *2 (S.D.N.Y. 2019). Further, a plaintiff's choice of forum is understandably a "less

9

significant consideration in a (putative) class action," where the class, if certified, would be drawn from all corners of the United States. See Bukhari v. Deloitte & Touche, 2012 WL 5904815, at *5 (S.D.N.Y. 2012).

But it does not follow that the plaintiff's choice of forum should receive no weight in these circumstances, or even substantially less consideration. Lead plaintiffs of class action lawsuits play a crucial role in the litigation: they must devote considerable time and energy to the case, must be intimately familiar with its facts, and must be representative of the class overall in important respects. Indeed, lead plaintiffs are the only class members involved in a class action throughout its duration. Their choice of forum deserves respect so long as it is "motivated by legitimate reasons." See Tomita Techs. USA, LLC v. Nintendo Co., 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011). And, as the Court will explain below, the plaintiff's desire to have the case proceed "expeditiously" is a valid interest. This factor, then, weighs against transfer, but less so than it would in an individual case.

Factors two through seven of the balancing test, which have to do with the relative convenience of the parties, are plainly neutral. Given that the parties and relevant witnesses are located all across the globe -- for instance, in Hong Kong, Singapore, and South Korea -- and the "locus of operative facts" is also abroad, there is no reason to think that either of the fora would be considerably more convenient for either of the parties. Indeed, only one of the

10

defendants still remaining in the action -- Nicolas Platias -- is located in California. Defendants' argument that it would be burdensome to litigate both Patterson in California and Albright in New York does not suggest that the district court in California would be a better forum than New York. The defendants must do more than contend that litigating two actions would be more costly than one -- an uncontroversial proposition -- they must make a "strong case" for the desirability of the other forum. See National Union Fire Ins. Co. of Pittsburgh, PA v. XL Ins. America, Inc., 2013 WL 174269, at *1 (S.D.N.Y. 2013).

The final -- and perhaps most important -- factor to be considered is whether transfer would further the goal of trial efficiency and the interests of justice. It should be said at the outset that the plaintiff has a legitimate interest in the expeditious and efficient resolution of his dispute and in avoiding the massive -- and growing -- expenses and inconveniences characteristic of modern litigation. Indeed, as this court has already recognized, courts should be even more alert to these considerations "following on the pandemic, when litigants have been asked to wait longer and expend greater resources before their disputes are resolved." Hermes v. Rothschild, 590 F. Supp. 3d 647, 650 (S.D.N.Y. 2022).

Far from being an attempt to gain a "tactical advantage," many litigants would not be able to bring their claims at all if they did not fight to stay in a forum that would more swiftly resolve their claims. Cf. Tomita Techs. USA, LLC v. Nintendo Co., 818 F. Supp. 2d

11

770, 772 (S.D.N.Y. 2011). So, if there exists a forum that is presently able to resolve the parties' dispute more quickly than another forum, the plaintiff's decision to choose that venue should be afforded very considerable weight. Any analysis of the balance of conveniences under § 1404, then, should take into account the speed by which the two lawsuits are set to be resolved. Preventing needless expenses -- both those of the Court and of litigants -- is the very meaning of "trial efficiency" and more importantly, is an essential element of the "interests of justice."

This factor -- which weighs heavily in this Court's analysis -- indisputably counsels against transfer. See Garnish & Gather, 2019 WL 6729152, at *2. The Patterson matter -- in large part due to the procedural requirements imposed by the PSLRA -- is set to move more slowly than this case. An initial conference to set a case management plan is scheduled for February 16, 2023. A lead plaintiff will not be selected until at least December 13, 2023. This may mean that discovery in that case will not begin for another year. Here, on the other hand, the Court has already held a pre-trial conference that requires this case be ready for trial by September 28, 2023. Discovery, moreover, is set to begin on December 15, 2022. A transfer to California would almost certainly delay the prompt resolution of this matter, an outcome that could dissuade future class action plaintiffs from bringing meritorious claims.

Defendants' argument that the interests of trial efficiency and justice would be better served by transfer because it would avoid

"potentially inconsistent determinations on the same questions of law and fact" are, in light of the foregoing, unpersuasive. Defs' Br. at 8-9. The Court has already explained why the issues involved in this case and <u>Patterson</u> are emphatically <u>not</u> the same. And, in any event, the interest in avoiding inconsistent judgments does not outweigh the even more weighty interest in avoiding delay and reducing the burden placed on class litigants.

Because two of the factors weigh heavily against transfer and none in favor, the Court declines to transfer the <u>Albright</u> case, either under the first-filed principle or 28 U.S.C. § 1404. Accordingly, for the foregoing reasons, the Court reaffirms its bench order on October 31, 2022 denying defendants' motion to transfer. The Clerk is directed to close the motion (item 27) on the docket.

SO ORDERED.

New York, NY
November 15, 2022

JED S. RAKOFF, U.S.D.J.