# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MATTHEW ALBRIGHT, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

TERRAFORM LABS, PTE. LTD., JUMP TRADING LLC, DELPHI DIGITAL CONSULTING, INC., DO KWON, NICHOLAS PLATIAS, LUNA FOUNDATION GUARD LTD., JOSE MACEDO, KANAV KARIYA, and REMI TETOT,

Defendants.

Civil Action No. 1:22-cv-07281

Hon. Jed S. Rakoff

### MEMORANDUM OF LAW IN SUPPORT OF TERRAFORM LABS, PTE. LTD, LUNA FOUNDATION GUARD LTD. AND DO KWON'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)

### ORAL ARGUMENT REQUESTED

Douglas W. Henkin
Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com

Stephen J. Senderowitz (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 876-8141
stephen.senderowitz@dentons.com

*Counsel for Defendants*
*Terraform Labs Pte. Ltd., Luna Foundation*
*Guard Ltd., and Do Kwon*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 2

STANDARD OF REVIEW – Rule 12(b)(2) ................................................................... 9

STANDARD OF REVIEW – Rule 12(b)(6) ................................................................... 9

ARGUMENT ................................................................................................................. 11

    I.    The Court Lacks Personal Jurisdiction Over TFL, LFG, and Mr. Kwon. ............ 11

        A.    TFL and LFG ................................................................................... 12

        B.    Mr. Kwon ........................................................................................ 16

    II.    Plaintiff's RICO Claims Are Barred By PSLRA Section 107 ............................. 18

    III.    Plaintiff Fails To Allege RICO Standing ............................................................. 21

    IV.    Plaintiff's RICO Claim Is Impermissibly Extraterritorial. ................................. 24

    V.    Plaintiff Has Failed To Properly Plead Any Other Element Of A RICO
        Claim. .................................................................................................................. 27

        A.    Plaintiff Has Not Alleged Predicate Acts. ..................................... 27

        B.    Plaintiff Does Not Properly Plead An Association-In-Fact
            Enterprise. ....................................................................................... 36

        C.    Plaintiff's Operation or Management Allegations Are Insufficient. ........ 37

        D.    Plaintiff Fails To Allege Pattern Or Continuity. ............................ 39

    VI.    Plaintiff's RICO Conspiracy Claim Fails. .......................................................... 41

    VII.    The Class Claims Asserted in the AC Are Barred By the Anchor Terms of
        Service ................................................................................................................. 42

CONCLUSION .............................................................................................................. 43

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 650 Fifth Ave. & Related Properties*,
  777 F. Supp. 2d 529 (S.D.N.Y. 2011)......................................................................32

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  771 F. App'x 498 (2d Cir. 2019) ............................................................................23

*Aaron v. Durrani*,
  Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471 (S.D. Ohio Mar. 13, 2014) ....................11

*ABF Capital. Mgmt. v. Askin Capital Mgmt.*,
  957 F. Supp. 1308 (S.D.N.Y. 1997)........................................................................21

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995)....................................................................................29

*Albright v. Terraform Labs, Pte. Ltd.*,
  No. 22-CV-07281 (JSR), 2022 WL 16985806 (S.D.N.Y. Nov. 15, 2022)............................20

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
  No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ...............................15

*Allianz Global Investors GmbH v. Bank of Am. Corp.*,
  457 F. Supp. 3d 401 (S.D.N.Y. 2020)......................................................................16

*In re Am. Exp. Co. S'holder Litig.*,
  39 F.3d 395 (2d Cir. 1994)....................................................................................24

*Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs.*,
  2005 WL 696897 (S.D.N.Y. Mar. 24, 2005) ...............................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................9, 11

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ...............................................................................31

*Audet v. Fraser*,
  No. 3:16-cv-940 (MPS), 2022 WL 1912866 (D. Conn. Jun. 3, 2022) ................................20

*Azrielli v. Cohen L. Offs.*,
  21 F.3d 512 (2d Cir. 1994)....................................................................................27

*Barry v. Cboe Glob. Markets, Inc.*,
    42 F.4th 619 (7th Cir. 2022) ........................................................................28, 30

*Bascuñán v. Elsaca*,
    874 F.3d 806 (2d Cir. 2017)..........................................................................26, 27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................9

*Blockchange Ventures I GP, LLC. v. Blockchange, Inc.*,
    No. 20 CIV. 6866 (AKH), 2021 WL 308277 (S.D.N.Y. Jan. 29, 2021) .................15

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017).........................................................................................13

*Bonadio v. PHH Mortg. Corp.*,
    No. 12 CV 3421 VB, 2014 WL 522784 (S.D.N.Y. Jan. 31, 2014) .........................37

*Boyle v. United States*,
    556 U.S. 938 (2009)........................................................................................36, 37

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)............................................................................................22

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014)....................................................................12

*Capital Records, LLC v. VideoEgg, Inc.*,
    611 F. Supp. 2d 349 (S.D.N.Y. 2009)..................................................................15

*Cedar Swamp Holdings, Inc. v. Zaman*,
    487 F. Supp. 2d 444 (S.D.N.Y. 2007)..................................................................36

*CFTC v. Laino Grp. Ltd.*,
    No. 4:20-CV-03317, 2021 WL 4059385 (S.D. Tex. June 30, 2021)......................20

*CFTC v. McDonnell*,
    287 F. Supp. 3d 213 (E.D.N.Y. 2018) .................................................................20

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016) .............34

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
    952 F.Supp.2d 633 (S.D.N.Y. 2013)....................................................................10

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) .................................................................11

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013)................................................................38

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .......................................................................12

*Dale v. Banque SCS Alliance S.A.*,
   2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005)..............................32, 33

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2009)...............................................................31

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001)..............................................................39

*Democratic Nat'l Committee v. Russian Fed.*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019)................................................37

*Dornberger v. Metro. Life Ins. Co.*,
   961 F. Supp. 506 (S.D.N.Y. 1997) ....................................................22

*In re Express Scripts Holding Co. Sec. Litig.*,
   No. 16 CIV. 3338 (ER), 2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ..................................10

*FIA Card Servs., N.A. v. Karagianis (In re Karagianis)*,
   Adversary No. 09-1056-JMD, 2009 WL 4738188 (Bankr. D.N.H. Dec. 4,
   2009) .....................................................................................11, 39

*Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*,
   368 F. Supp. 3d 681 (S.D.N.Y. 2019)............................................24, 25

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)...........................................28, 31, 39, 40

*First Nationwide Bank v. Gelt Funding, Corp.*,
   820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ..............................21, 36

*Foster v. 2001 Real Est.*,
   No. 14 CIV. 9434 (RWS), 2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015)...........................36

*Fund Liquidation Holdings LLC v. UBS AG*,
   15 Civ. 5844 (GBD), 2021 WL 4482826 (S.D.N.Y. Sept. 30, 2021)....................25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..............................................................12, 13, 16

*Gucci America, Inc. v. Weixing Li*,
   135 F. Supp. 3d 87 (S.D.N.Y. 2015).................................................14

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ..........................................................................................................23

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ......................................................................................................13

*Interallianz Bank AG v. Nycal Corp.*,
  No. 93 CIV. 5024 (RPP), 1994 WL 177745 (S.D.N.Y. May 6, 1994) ...................................38

*Jus Punjabi LLC v. Get Punjabi US, Inc.*,
  640 Fed. Appx. 56 (2d Cir. 2016) ..................................................................................34

*Kaczmarek v. Int'l Bus. Machines Corp.*,
  30 F. Supp. 2d 626 (S.D.N.Y. 1998) ..............................................................................38

*Keady v. J.P. Morgan Chase & Co.*,
  No. 07 CIV 9896JSR, 2008 WL 638444 (S.D.N.Y. Mar. 3, 2008) *aff'd*, 328 F.
  App'x 23 (2d Cir. 2009) ................................................................................................2

*Kimm v. Chang Hoon Lee and Champ, Inc.*,
  196 Fed. App'x 14 (2d Cir. July 6, 2006) .......................................................................21

*Kinra v. Chi. Bridge & Iron Co.*,
  2018 WL 2371030 (S.D.N.Y. May 24, 2018) ..................................................................31

*Lavastone Cap. LLC v. Coventry First LLC*,
  No. 14-CV-7139 JSR, 2015 WL 4940471 (S.D.N.Y. July 30, 2015) ...................................39

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
  No. 12 CIV. 3419 (GBD), 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) .............................18

*Laydon v. Coöperatieve Rabobank U.A.*,
  51 F.4th 476 (2d Cir. 2022) ..........................................................................................23

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12 CIV. 3419 GBD, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ...............................18

*Lerner v. Colman*,
  26 F.4th 71 (1st Cir. 2022) ....................................................................................18, 19

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) .............................................................................11

*McBrearty v. Vanguard Grp., Inc.*,
  No. 08 CIV. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009), *aff'd*,
  353 F. App'x 640 (2d Cir. 2009) ....................................................................................22

*Meyer v. Bd. of Regents of Univ. of Oklahoma*,
No. 13 CIV. 3128 CM, 2014 WL 2039654 (S.D.N.Y. May 14, 2014) ...................................17

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
651 F.3d 268 (2d Cir. 2001)....................................................................................................18

*MMA Fighter Mgmt., Inc. v. Ballengee Grp., LLC*,
19 Civ. 11276 (AKH), 2020 WL 3000401 (S.D.N.Y. June 4, 2020) ....................................16

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)................................................................................................................24

*Motorola Credit Corp. v. Uzan*,
322 F.3d 130 (2d Cir. 2003)....................................................................................................21

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
165 F. Supp. 2d 514 (S.D.N.Y. 2001).....................................................................................41

*Novomoskovsk Joint Stock Co. "Azot" v. Revson*,
No. 95 CIV. 5399 (JSR), 1997 WL 698192 (S.D.N.Y. Nov. 7, 1997) ...................................28

*Novomoskovsk Joint Stock Co. "Azot" v. Revson*,
No. 95 CIV. 5399 (JSR), 1998 WL 3352 (S.D.N.Y. Jan. 5, 1998)..........................................33

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................................29

*Ox Labs, Inc. v. Bitpay, Inc.*,
Case No. CV 18-5934-MWF, 2020 WL 1039012 (C.D. Cal. Jan. 24, 2020).........................26

*Patterson v. Terraform Labs Pte Ltd. et al.*,
No. 3:22-cv-03600 (N.D. Cal. June 17, 2022), ECF No. 1..................................................8, 19

*In re Petrobras Sec. Litig.*,
393 F. Supp. 3d 376 (S.D.N.Y. 2019).....................................................................................13

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
Case No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022)..................................................21

*Petroleos Mexicanos v. SK Eng'g & Const. Co.*,
572 F. App'x 60 (2d Cir. 2014) ..........................................................................................24, 25

*Picard v. Kohn*,
907 F. Supp. 2d 392 (S.D.N.Y. 2012)............................................................................18, 39, 41

*In re Platinum-Beechwood Litig.*,
427 F. Supp. 3d 395 (S.D.N.Y. 2019).....................................................................20, 28, 41

*In re Quintel Ent. Inc. Sec. Litig.*,
    72 F. Supp. 2d 283 (S.D.N.Y. 1999).......................................................................11

*Reich v. Lopez*,
    858 F.3d 55 (S.D.N.Y. 2017)....................................................................................17

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).................................................................................................38

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016).................................................................................................24

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).....................................................................................29

*Rosenheck v. Rieber*,
    932 F. Supp. 626 (S.D.N.Y. 1996) (Rakoff, J.) .......................................................31

*Royalty Network v. Dishant.com*,
    638 F.Supp.2d 410 (S.D.N.Y. 2009).........................................................................15

*S.E.C. v. W.J. Howey Co.*,
    328 U.S. 293 (1946)............................................................................................19, 20

*Schlesinger v. Schlesinger*,
    No. 05 CV 5016, 2007 WL 9706976 (E.D.N.Y. Feb. 8, 2007) ................................34

*Schmidt v. Fleet Bank*,
    No. 96 CIV. 5030 (AGS), 1998 WL 47827 (S.D.N.Y. Feb. 4, 1998) .................36, 38

*Sec. & Exch. Comm'n v. LBRY, Inc.*,
    No. 21-CV-260-PB, 2022 WL 16744741 (D.N.H. Nov. 7, 2022)...........................20

*In re Sec. Cap. Assur. Ltd. Sec. Litig.*,
    729 F. Supp. 2d 569, 597 (S.D.N.Y. 2010)...............................................................30

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015)........................................................................................22

*Sheridan v. Mariuz*,
    No. 07 Civ. 3313 (SCR)(LMS), 2009 WL 920431 (S.D.N.Y. Apr. 6, 2009).........35

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
    366 F. Supp. 3d 516 (S.D.N.Y. 2018).......................................................................25

*SPV. OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015)..........................................................9, 13, 14, 16

*In re SSA Bonds Antitrust Litig.*,
　420 F. Supp. 3d 219 (S.D.N.Y. 2019) ............................................................. 17

*Suedrohrbau Saudi Co. Ltd. v. Bazzi*,
　19-CV-5130(EK)(LB), 2021 WL 980883 (E.D.N.Y. Mar. 16, 2021) ................... 26

*Sullivan v. Barclays PLC*,
　13-cv-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) .......................... 24

*Terraform Labs Pte Ltd. et al. v. SEC*,
　No. 22-332 .......................................................................................................... 12

*In re Tether & Bitfinex Crypto Asset Litig.*,
　576 F. Supp. 3d 55 (S.D.N.Y. 2021) ................................................................. 23

*Tongue v. Sanofi*,
　816 F.3d 199 (2d Cir. 2016) ............................................................................... 29

*Tymoshenko v. Firtash*,
　57 F. Supp. 3d 311 (S.D.N.Y. 2014) ............................................................. 31, 32

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
　916 F.3d 143 (2d Cir. 2019) ............................................................................... 17

*United States Sec. & Exch. Comm'n v. Terraform Labs Pte Ltd.*,
　No. 22-368, 2022 WL 2066414 (2d Cir. June 8, 2022) ....................................... 35

*United States v. Autuori*,
　212 F.3d 105 (2d Cir. 2000) ............................................................................... 28

*United States v. Coiro*,
　922 F.2d 1008 (2d Cir.1991) .............................................................................. 34

*United States v. Quattrone*,
　441 F.3d 153 (2d Cir. 2006) ............................................................................... 34

*United States v. Turkette*,
　452 U.S. 576 (1981) ...................................................................................... 36, 37

*Walden v. Fiore*,
　571 U.S. 277 (2014) ........................................................................................... 14

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*,
　No. 03 Civ. 8606, 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ................... 32, 33

*West Virginia v. E.P.A.*,
　142 S. Ct. 2587 (2022) ....................................................................................... 21

*Williams v. Affinion Group, LLC*,
    889 F.3d 116 (2d Cir. 2018)......................................................................................27, 28

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
    286 F. Supp. 3d 634 (S.D.N.Y. 2017)................................................................................18

**Statutes**

18 United States Code
    § 1503.................................................................................................................................34
    § 1956.................................................................................................................................31
    § 1956(a)(1)(A)(i)..............................................................................................................32
    § 1956(a)(1)(B)(i)..............................................................................................................32
    § 1956(c)(7)........................................................................................................................32
    § 1961(c)...............................................................................................................................8
    § 1962(c).................................................................................................................27, 37, 38
    § 1962(d).............................................................................................................................41
    § 1964(c).............................................................................................................................18

Private Securities Litigation Reform Act
    § 107................................................................................................................. *passim*

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 8.................................................................................................................................31
    Rule 9(b).................................................................................................................1, 28, 31
    Rule 11(b)...........................................................................................................................12
    Rule 12(b)(2)........................................................................................................................9
    Rule 12(b)(6)........................................................................................................................9
    Rule 23(a)(3).......................................................................................................................42
    Rule 23(b)(3).......................................................................................................................42

**Other Authorities**

Alexander Osipovich, *Cutting-Edge Crypto Coins Tout Stability.  Critics Call
    Them Dangerous.*, Wall Street Journal (April 18, 2022),
    https://www.wsj.com/articles/cutting-edge-crypto-coins-tout-stability-critics-
    call-them-dangerous-11650226597?mod=itp_wsj&ru=yahoo ...................................6

*Cosmos Around the World – Catch the Highlights, Messari Mainnet 2021, New
    York* (Nov. 23, 2021), https://blog.cosmos.network/cosmos-around-the-world-
    catch-the-highlights-2c1825599190 ........................................................................17

David Z. Morris, *"Built to Fail": Why TerraUSD's Growth is Giving Finance
    Experts Nightmares*, Coindesk (April 22, 2022),
    https://www.coindesk.com/layer2/2022/04/22/built-to-fail-why-terrausds-
    growth-is-giving-finance-experts-nightmares/ .........................................................6

https://www.sec.gov/news/speech/gensler-sec-speaks-090822 ...................................................20

*Licenses & Standards*, Open Source Initiative, https://opensource.org/licenses; .........................10

*Matter of Coinschedule*, https://www.sec.gov/news/public-statement/peirce-
   roisman-coinschedule ...............................................................................................20

*Open Source Definition*, Open Source Initiative https://opensource.org/osd ...............................10

Ryan Clements, *Built to Fail: The Inherent Fragility of Algorithmic Stablecoins*,
   11 Wake Forest L. Rev. Online 131 (2021)
   http://www.wakeforestlawreview.com/2021/10/built-to-fail-the-inherent-
   fragility-of-algorithmic-stablecoins/ .........................................................................6

Defendants Terraform Labs PTE, Ltd. ("TFL"), Luna Foundation Guard Ltd. ("LFG"), and Do Kwon respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiff's Amended Class Action Complaint for Violations of the Federal Racketeering Laws (ECF No. 42, the "AC").  TFL, LFG, and Mr. Kwon respectfully request that the Court dismiss the AC as against them with prejudice, because the Court lacks personal jurisdiction over them and Plaintiff does not and cannot plead viable RICO claims.

## INTRODUCTION

TFL developed a stablecoin (TerraUSD, or "UST") and a companion cryptocurrency (Luna), both of which grew in circulation after their introduction.  In May 2022, UST and Luna experienced a market event and lost their values.  Plaintiff claims to have purchased UST and Luna and seeks to recover unspecified alleged losses.

Plaintiff's RICO claims fail for multiple reasons:

- This Court lacks personal jurisdiction over TFL, LFG, and Mr. Kwon.

- Section 107 of the Private Securities Litigation Reform Act ("PSLRA") bars Plaintiff's RICO claims as a matter of law because it precludes Plaintiff from relying on the predicate acts he attempts to plead (all of which also fail for independent reasons).

- The AC neither particularizes the alleged fraudulent conduct of each defendant nor alleges why any representations regarding TFL's business, UST, Luna, or any associated protocols were fraudulent, in violation of Fed. R. Civ. P. 9(b).

- The AC fails to properly allege injury sustained as a result of the alleged RICO scheme.

- Plaintiff's RICO claims are impermissibly extraterritorial.  Although Plaintiff alleges that domestic conduct *may* have occurred, that is insufficient when all the conduct actually alleged is *not* domestic.

- Plaintiff has not pleaded a viable RICO enterprise, that TFL, LFG, or Mr. Kwon participated in the operation or management of the alleged enterprise, or satisfied the requirements for pleading the continuity necessary to support RICO claims.

- Plaintiff's RICO conspiracy claim fails because the underlying RICO claim fails, and also because Plaintiff has failed to adequately plead a conscious agreement by TFL, LFG, or Mr. Kwon to further the alleged violations of subsection (c).

1

- The proposed class claims should be dismissed pursuant to the Anchor Protocol Terms of Service.

Any one of these flaws would require dismissal.  Together they demonstrate that Plaintiff cannot plead a viable RICO or RICO conspiracy claim and that dismissal should be with prejudice.

## STATEMENT OF FACTS[1]

### A.    TFL is Founded In 2018 With A New Approach to Stablecoins

TFL is an open-source software development firm incorporated and headquartered in Singapore.  AC ⁋ 23.[2]  The company was founded in December 2018 by Do Kwon and Daniel Shin.  Mr. Kwon currently serves as TFL's CEO.  AC ⁋ 24.  He has lived outside the United States at all relevant times.  *Id*.

TFL was founded to address the fact that the price volatility of cryptocurrencies like Bitcoin interfered with the ability to use them as a medium of exchange.  AC ⁋ 60.  When Bitcoin launched in 2008, it was intended to serve as a stable store of value and medium of exchange; however, its subsequent history of price volatility interfered with its use as a medium of exchange.[3] AC ⁋⁋ 38-44.  What was needed was a digital coin specifically designed to maintain a stable price, one that could *peg*—target a 1:1 exchange rate—to the US dollar or another fiat currency.

A number of such stablecoins had been developed, the two most prominent of which (at the time) relied on collateral to support their fiat currency pegs.  *See* AC ⁋⁋ 40-44.  Beginning in

---

[1] TFL, LFG, and Mr. Kwon accept the AC's *well-pleaded* allegations as true only for the purposes of this motion.

[2] Plaintiff incorrectly alleges that TFL is headquartered in Seoul, Korea; it is headquartered in Singapore.  In any event, TFL is *not* headquartered in the U.S.

[3] *See* Declaration of Douglas W. Henkin dated Dec. 5, 2022 ("Henkin Decl.") Ex. A at 1. Documents Plaintiff relied on in the AC may be considered on this motion.  *See Keady v. J.P. Morgan Chase & Co.*, No. 07 CIV 9896JSR, 2008 WL 638444, at *2 (S.D.N.Y. Mar. 3, 2008) (Rakoff, J.), *aff'd*, 328 F. App'x 23 (2d Cir. 2009).

2018, TFL developed a novel approach to this problem by creating the Terra protocol, a decentralized and open-source public blockchain protocol for algorithmic stablecoins. Terra stablecoins would not require a centralized issuer to hold reserves or users to pledge collateral in order to maintain the peg. Instead, Terra stablecoins would maintain their pegs programmatically through smart contracts operating directly on the blockchain, with the open-source code for those contracts adjusting money supply in response to changes in demand. AC ¶ 51.

**B.     September 2020: UST Launches**

In September 2020, TFL announced the launch of UST, a Terra stablecoin pegged to the US dollar. AC ¶¶ 63, 71. TFL had previously published a whitepaper on UST and Terra stablecoins pegged to other fiat currencies (the "Terra Money Whitepaper"). AC ¶¶ 6, 34, 51; Henkin Decl. Ex. A. Released in April 2019, the Terra Money Whitepaper fully disclosed the structure and functionality of Terra stablecoins such as UST to prospective users of these stablecoins.

The Terra Money Whitepaper described how the Terra protocol works to stabilize Terra stablecoin prices through an "elastic money supply." Henkin Decl. Ex. A. Given that market prices are determined by supply and demand, when the market price of UST falls below $1, "***all conditions held equal***," decreasing the supply of UST should gradually move its price back up towards $1. *Id*. at 4. Likewise, when the market price of UST rises above $1, "***all conditions held equal***," increasing the supply of UST should gradually move its price back down towards $1. *Id*. Thus "[t]he protocol adjusts the supply of Terra[USD] in response to changes in demand to keep its price stable." *Id*. at 13. This depends on Luna, which although not a stablecoin, is a token used by the protocol as the stabilizer for UST. AC ¶¶ 1, 3, 6.

The Terra Money Whitepaper further described how the supplies of UST and Luna are adjusted through transactions between users and Terra protocol smart contracts using a mint-burn

mechanism.  *Id*. at 4.  When UST falls below $1, UST holders can burn their UST tokens and receive, from the Terra protocol itself (not TFL), $1 of newly minted Luna.  *Id*. at 5-6.  When UST is valued above $1, Luna holders can mint new UST using the Terra protocol by burning $1 worth of Luna.  *Id*.  Because the protocol was designed so that users can profit by burning UST when priced below $1 and by minting UST when priced above $1, those users are incentivized to interact with the protocol (not TFL) to decrease and increase the supply of UST and Luna as needed to normalize the price of UST relative to $1.  *Id*.

The source code for the Terra Protocol is and was publicly available:  The code, and the history of changes to it, resides in a GitHub repository and can and could be examined by anyone interested in reviewing it or analyzing its function or potential vulnerabilities.  *See* Henkin Decl. Ex. K at 3; https://github.com/terra-money/core (last visited December 3, 2022).  Plaintiff does not allege that the code running the Terra protocol at any time was other than what had been publicly disclosed.

### C.      April 2021: Anchor Protocol Launches

In March 2021, TFL announced the launch of the Anchor Protocol.  AC ⁋ 95.  Prior to launching Anchor, TFL published a whitepaper (the "Anchor Whitepaper").  AC ⁋ 96; Henkin Decl. Ex. B.  Released in June 2020, the Anchor Whitepaper disclosed Anchor's structure and functionality to prospective users.

The Anchor Whitepaper explained how the protocol accepts UST deposits from staking users and lends out UST deposits to users who wish to borrow UST, and those borrowers pledge digital assets to the protocol as collateral for the loans.  Henkin Decl. Ex. B at 1.  The yield earned by the protocol from its programmatic use of that collateral is paid to the staking users as "interest." *Id*. at 1, 4.  Staking users can make instant withdrawals and their staked tokens are protected in two ways: The protocol requires all loans to be over-collateralized, and loans at risk of violating

collateral requirements are immediately called via a liquidation mechanism—third parties are incentivized to pay off the at-risk loans in exchange for the collateral plus a fee. *Id*. at 6-7. Since the Anchor Whitepaper was published the protocol has been updated and changed over time, which changes and updates were announced on the Anchor website, as well as other online platforms.

The Anchor protocol offered staking users 20% annual "interest" on their staked tokens subject to certain terms and conditions. AC ⁋ 112. The Terms of Services published on the Anchor website cautioned:

> The Rate is a forward-looking projection based on a good faith belief of how to reasonably project results over the relevant period, but such belief is subject to numerous assumptions, risks and uncertainties (including smart contract security risks and third-party actions) which could result in a materially different (lower or higher) token-denominated Rate.
>
> The Rate is not a promise, guarantee, or undertaking on the part of any person or group of persons, but depends entirely on the results of operation of smart contracts and other autonomous systems (including third-party systems) and how third parties interact with those systems after the time of your deposit.

Henkin Decl. Ex. K at 5. Critically, the Anchor Terms of Service expressly warned that "[e]ven if the Rate is achieved as projected, you may still suffer a financial loss in fiat-denominated terms if the fiat-denominated value of the relevant tokens (your deposit and any tokens allocated or distributed to you pursuant to the Rate) declines during the deposit period." *Id.* Plaintiff does not allege that any user of the Anchor Protocol (a) failed to receive the disclosed "interest rate" on staked tokens or (b) lost any staked tokens due to the operation of the Anchor Protocol; Plaintiff only alleges losses due to declines in the market (*i.e.*, "fiat-denominated") values of UST and Luna.

The source code for the Anchor Protocol is and was publicly available; indeed, as explained in the Terms of Service, the Anchor protocol "is comprised entirely of open-source software running on the public Terra blockchain and is not [TFL's] proprietary property." *Id.* ¶ 7. The code, and the history of changes to it, resides in a GitHub repository and can and could be examined

5

by anyone interested in reviewing it or analyzing its function or potential vulnerabilities.  *See*

Henkin Decl. Ex. K at 3; https://github.com/Anchor-Protocol (last visited December 3, 2022).

Plaintiff does not allege that the code running the Anchor protocol at any time was other than what

had been publicly disclosed.

### D.    May-December 2021: The Risk of a UST Depeg is Publicly Debated

In May 2021, the market price of UST declined from its peg but soon recovered its peg.

AC ⁋ 128.  A robust public debate followed as to whether UST could one day lose its peg and not

recover:

- In July 2021, a British economist publicly argued that algorithmic stablecoin models such as UST's could not defend against a bank run.  AC ⁋ 116.

- In December 2021, an engineer at MakerDAO, creator of the DAI stablecoin, publicly argued that "UST will collapse in a death spiral with LUNA hyper-inflating to try to cover the peg."  AC ⁋ 160.

- Numerous articles appeared in journals and news media regarding the risks associated with UST and algorithmic stablecoins generally.  *See, e.g.*, Alexander Osipovich, *Cutting-Edge Crypto Coins Tout Stability.  Critics Call Them Dangerous.*, Wall Street Journal (April 18, 2022), https://www.wsj.com/articles/cutting-edge-crypto-coins-tout-stability-critics-call-them-dangerous-11650226597?mod=itp_wsj&ru=yahoo; David Z. Morris, *"Built to Fail": Why TerraUSD's Growth is Giving Finance Experts Nightmares*, Coindesk (April 22, 2022), https://www.coindesk.com/layer2/2022/04/22/built-to-fail-why-terrausds-growth-is-giving-finance-experts-nightmares/; Ryan Clements, *Built to Fail: The Inherent Fragility of Algorithmic Stablecoins*, 11 Wake Forest L. Rev. Online 131 (2021) http://www.wakeforestlawreview.com/2021/10/built-to-fail-the-inherent-fragility-of-algorithmic-stablecoins/.

### E.    January 2022: LFG is Formed

In January 2022, LFG was formed to help address the risk that UST might materially lose

its peg and require additional support to prevent a more significant collapse.  AC ⁋ 126.  LFG is a

non-profit organization incorporated and headquartered in Singapore.  AC ⁋ 28.  On January 19,

2022, LFG announced its formation as a non-profit whose "first prerogative is to focus on building

reserves to better safeguard the UST peg during adverse market conditions."  *Id*.; Henkin Decl.

Ex. C at 1.  Mr. Kwon emphasized the importance of LFG's "mandate to continuously support the peg stability of Terra's stablecoins," with LFG confirming that it "will prioritize the peg stability and sustainability of Terra's flagship stablecoin, TerraUSD (UST)."  *Id.*

On February 22, 2022, LFG announced that it had raised $1 billion for a reserve fund to defend the UST peg.  AC ¶ 138; Henkin Decl. Ex. D at 1.  Although UST was structured to incentivize users to engage in arbitrage trades with the Terra protocol to support the peg, LFG acknowledged that "[o]ne of the common criticisms of algorithmic stablecoins is their reflexive nature during extreme volatility, where the arbitrage incentives to bring the peg back to parity can potentially deteriorate."  Henkin Decl. Ex. D at 1.  LFG explained that the UST reserve fund would "provide[] an additional avenue to maintain the stability of the peg," as "[t]he Reserve assets can be utilized in instances where protracted market sell-offs deter buyers from restoring the UST peg's parity and deteriorate the Terra protocol's open market arbitrage incentives."  *Id.*  On April 7, 2022, LFG announced that it had added another $100 million in digital assets, which included Bitcoin, UST, Luna, Tether, USD Coin, Binance Coin, and AVAX, to its reserve fund.  AC ¶ 158; Henkin Decl. Ex. E at 1.  LFG again stated that "[t]he premise of the UST Reserve is to provide a backstop against UST peg deviations in instances of sharp contractions of UST demand exogenous to Terra's algorithmic model."  Henkin Decl. Ex. E at 1.

### F.  May 2022: UST Depegs from US Dollar

In May 2022, the disclosed risk that had been publicly debated for months materialized. UST experienced a market event, lost its peg, and failed to recover.  On May 7, 2022, as alleged in the AC, amid a sharp slump in the wider cryptocurrency market, over $2 billion worth of UST was unstaked and removed from the Anchor Protocol, and hundreds of millions of dollars of UST were quickly liquidated which depressed the price of UST slightly below its peg.  AC ¶¶ 162-64. Seeing this de-pegging, UST holders quickly sought to redeem their UST for Luna, *id.*, precisely

as the Terra protocol was designed to function.   However, during the following days the redemptions of UST caused an explosion in Luna's supply, resulting in hyperinflation.  AC ⁋ 164. Both coins lost nearly all their value.  *Id*.  While this was happening, and as it had promised to do, LFG expended roughly $2.8 billion to defend the UST peg.  AC ⁋⁋ 190-194; Henkin Decl. Ex. F at 8-11.  And LFG was not alone in trying to defend the peg:  TFL spent hundreds of millions of dollars of its own in trying to defend the peg.  *See* Henkin Decl. Ex. F.

### G.       June-August 2022: U.S. Litigations Are Filed

On June 17, 2022, a putative class action against TFL, LFG, Mr. Kwon, and others was filed by Nicholas Patterson in the U.S. District Court for the Northern District of California (the "California Action").[4]  The California Action alleges that UST, Luna, and related tokens are securities and asserts (a) claims under the registration and anti-fraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934, (b) a RICO claim, and (c) state law claims.

On August 25, 2022, Matthew Albright, a member of the putative class in the California Action, filed this case against many of the same parties named in the California Action.  ECF No. 1.  The Complaint asserted one claim, for violation of RICO subsection (c), the same RICO claim asserted in the California Action.  On November 3, 2022, Republic Capital, Republic Maximal, LLC and Defiance Capital/Definance Technologies OY were dismissed based on Plaintiff's Notice of Voluntary Dismissal.  ECF No. 38.  On November 11, 2022, Plaintiff filed the AC, asserting an additional claim for RICO conspiracy and adding LFG, Delphi Digital Consulting Inc., Jose Macedo, and Kanav Kariya as defendants while removing GSR/GSR Markets Limited, Three Arrows Capital Pte. Ltd., and Pantera Capital as defendants.  ECF No. 42.

---

[4] *Patterson v. Terraform Labs Pte Ltd. et al.*, No. 3:22-cv-03600, (N.D. Cal. June 17, 2022), ECF No. 1 (the "California Action").

## STANDARD OF REVIEW – Rule 12(b)(2)

"On a pre-discovery motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to make a *prima facie* showing that the Court has personal jurisdiction over a defendant." *SPV. OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 166-67 (S.D.N.Y. 2015) (citation omitted).  Courts "may consider documents beyond the pleadings in determining whether personal jurisdiction exists," and "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction." *Id*. at 167 (citations omitted)

## STANDARD OF REVIEW – Rule 12(b)(6)

Only a complaint that states a plausible claim for relief can survive a Rule 12(b)(6) motion to dismiss, and determining the plausibility of a complaint "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough well-pleaded facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The Federal Rules of Civil Procedure demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Because the way cryptocurrency projects like UST, Luna, and Anchor are structured is so different from the way companies in the public equity markets operate, complaints like the AC must be analyzed with those differences in mind.  It is not an accident that (a) every factual allegation in the AC is taken from white papers, press reports, and social media platforms and (b)

there are no "confidential witness" allegations as there are in many "traditional" fraud cases.[5]  The former is because the open source nature of blockchain projects like UST, Luna, and Anchor means that those projects are conducted more "in public" than operating a publicly traded company—white papers are published and discussed on social media and other collaboration platforms before projects become fully operational; the code bases for the projects are, as here, stored on public source-control systems such as GitHub, which allows anyone to review (and propose modifications to) those code bases and for those suggestions (including any which are implemented) to be tracked by anyone with a browser; and project governance is conducted electronically for public voting.[6]

This means that cryptocurrency-related complaints, like the AC, are often based entirely on cherry-picked quotes from public project documents (such as white papers) and social media. In a more vanilla fraud case where the primary documents relied on by plaintiffs in their complaints are SEC filings and press releases, courts have generally construed the documents available to plaintiffs—and thus subject to review on a motion to dismiss—as those same SEC filings and press releases. *In re Express Scripts Holding Co. Sec. Litig.*, No. 16 CIV. 3338 (ER), 2017 WL 3278930, at *2 n.1 & *10 (S.D.N.Y. Aug. 1, 2017) (court may consider publicly available documents such as SEC filings or press coverage or releases, including those not cited or relied upon in the complaint).  But when systems are developed as UST, Luna, and Anchor were here, and plaintiffs are able to cherry-pick only the allegations they want *and omit those that were available to them*

---

[5] *See generally City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 952 F.Supp.2d 633, 635 (S.D.N.Y. 2013) ("Thus in this case, as in many others, the [AC] relied heavily, although not exclusively, on information attributed to 'confidential witnesses' ('CWs').") (Rakoff, J.).

[6] For examples of relevant operating principles and licensing features unique to the open source development model, *see Licenses & Standards*, Open Source Initiative, https://opensource.org/licenses; *The Open Source Definition*, Open Source Initiative https://opensource.org/osd.

*but that they do not like*, that should change the way courts review motions to dismiss.  Under the analytic mode that permits references to other sections of a Form 10-Q to show that a supposedly hidden risk was disclosed (*e.g.*, *In re Quintel Ent. Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 288, n.1 (S.D.N.Y. 1999)), courts analyzing motions to dismiss relating to open source projects should review any public information about the project (a) to which a complaint refers *or* (b) that a plaintiff could have seen *because it was also publicly available*.  This is especially important given the ease of a plaintiff focusing on cherry-picked comments that may be addressed by an omitted part of the same document or later dated tweets, posts, or GitHub change requests that are no less public.  *See generally Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 158 (S.D.N.Y. 2015) ("matters of which judicial notice can be taken include press coverage establishing what information existed in the public domain during periods relevant to the plaintiffs' claims").

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction Over TFL, LFG, and Mr. Kwon.

Plaintiff's jurisdictional allegations are based primarily on references to arguments made by the Securities and Exchange Commission ("SEC") in connection with the SEC's investigation of the Mirror Protocol and MIR tokens, which are not at issue in this case.  *See, e.g.*, AC ¶ 23 ("As noted by the [SEC]…").  There are three overarching problems with this approach by Plaintiff. *First*, relying on assertions made by a non-party in an entirely separate proceeding is not the same as alleging facts oneself.[7]  *Second*, the SEC's jurisdictional assertions were made in the context of

---

[7] *See Aaron v. Durrani*, Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471, at *2 (S.D. Ohio Mar. 13, 2014) ("the practice of incorporating by reference allegations in a separate proceeding is inappropriate and violates Fed. R. Civ. P. 8(a).") (citations omitted); *FIA Card Servs., N.A. v. Karagianis (In re Karagianis)*, Adversary No. 09-1056-JMD, 2009 WL 4738188, at *4 (Bankr. D.N.H. Dec. 4, 2009) (incorporating by reference and summarizing facts alleged in other lawsuits fails *Iqbal* and "the practice of incorporating allegations from pleadings in separate, unrelated cases is suspect"); *cf. In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008) (granting motion to strike allegations "alleged in [a separate] SEC complaint" where

a proceeding to enforce investigative subpoenas relating to a formal order of investigation that is not about UST and Luna. *Third*, the validity of even those jurisdictional assertions by the SEC is under review by the Supreme Court:  TFL and Mr. Kwon filed a petition for certiorari to review the decisions enforcing the SEC subpoenas, and the Supreme Court has ordered the SEC to respond to that petition despite the SEC's initial response that certiorari was not warranted. *See Terraform Labs Pte Ltd. et al. v. SEC*, No. 22-332, Docket Entries 4 and 6 (https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22-332.html).  In any event, Plaintiff's allegations do not establish personal jurisdiction.

A.    **TFL and LFG**

i.    TFL and LFG Are Not Subject to General Jurisdiction.

The Court may assert general jurisdiction over a foreign corporation only when the corporation's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).  "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal punctuation and citation omitted). "Only on truly exceptional occasions may general jurisdiction extend over individuals who are at home in a state that is not otherwise their domicile." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 350 (S.D.N.Y. 2014).  "But even extensive business contacts such as significant physical infrastructure and thousands of employees in a particular state do not

---

attorney failed to conduct an independent investigation to validate the trust and legal reasonableness of such allegations in accordance with Rule 11(b) obligations).

constitute such an exceptional case." *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382 (S.D.N.Y. 2019) (Rakoff, J.) (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017)).

Plaintiff alleges that TFL is incorporated in Singapore and headquartered in South Korea,[8] and that LFG is a non-profit organization located in Singapore.  AC ¶¶ 23, 28.  There are no additional jurisdictional allegations to suggest "exceptional" bases for general jurisdiction over TFL or LFG.  Accordingly, the Court does not have general jurisdiction over TFL or LFG.

ii.   <u>TFL and LFG Are Not Subject to Specific Jurisdiction</u>.

Specific jurisdiction is predicated on an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919.  Due process requirements prevent a court from exercising personal jurisdiction over a defendant unless the defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Where, as here, TFL and LFG acted "entirely abroad and with only sporadic or indirect contacts with the United States," the relatedness inquiry is more demanding and Plaintiff must establish that the controversy "was proximately caused by those contacts." *SPV. OSUS*, 114 F. Supp. 3d at 170.  Plaintiff's allegations do not satisfy this standard.

Plaintiff makes boilerplate allegations that Defendants "have continuous and systematic contacts with this District, do substantial business in this State and within this District, and engage in unlawful practices in this District as described in this Complaint, so as to subject themselves to personal jurisdiction in this District."  AC ¶ 33.  He further asserts that TFL "actively conducts

---

[8] Contrary to Plaintiff's allegations, TFL is and always has been headquartered in Singapore. *See* Henkin Decl. Ex. G at 1.

business within this District" because Mr. Kwon traveled "to this District for business, including to attend events such as the Messari Mainnet cryptocurrency conference;" employs a small number of employees in the U.S.; distributed white papers regarding the Anchor Protocol; allegedly made misleading statements to the public; offered and sold its products to U.S.-based investors; and received funding from entities within this District.  AC ¶¶ 23, 34-35.  Plaintiff similarly fails to allege any facts that would permit this Court to exercise specific jurisdiction over LFG, asserting only that LFG "is a non-profit organization located in Singapore."  AC ¶ 28.  Under established due process analysis, this is not sufficient to establish specific jurisdiction.

In a loose attempt to find a jurisdictional "hook," Plaintiff cites one trip by Mr. Kwon to New York where Mr. Kwon spoke on a panel entitled "The Multi-Chain Future is Here."  But Plaintiff fails to allege (nor can he) how Mr. Kwon's comments during the panel discussion could have given rise to the misdeeds he tries to allege in the AC or how Mr. Kwon's attendance or presentation at that conference could possibly create personal jurisdiction over TFL or LFG.  *See SPV. OSUS*, 114 F. Supp. 3d at 169 (requiring a "proximate cause" between the alleged minimum contacts and the alleged controversy to establish specific jurisdiction).  Plaintiff cannot allege that TFL and LFG "purposefully availed" themselves of the privilege of doing business in the United States through Mr. Kwon as part of the purported RICO enterprise.  *Gucci America, Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 98 (S.D.N.Y. 2015); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").

Plaintiff also alleges that two whitepapers, prepared and posted outside of the United States, "were all made available to traders in this District."  AC ¶ 34.  But this does not support

specific jurisdiction over TFL, as the mere possibility that someone in this District may have had access to whitepapers published outside the U.S. but not specifically directed at the U.S. is neither "volitional nor distinguishable from its interactions with users located in any other jurisdiction." *Capital Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 359 (S.D.N.Y. 2009).

Likewise, the mere fact that TFL's web applications were usable in the U.S. or that UST, Luna, and Anchor were discussed in U.S. media (AC ¶¶ 34-35) cannot support specific jurisdiction. Merely "operating a website, however commercial in nature, that is capable of reaching customers" in a forum cannot support personal jurisdiction without evidence of acts directed at those particular customers. *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018); *see also Royalty Network v. Dishant.com*, 638 F.Supp.2d 410, 418 (S.D.N.Y. 2009) ("Because websites are ... equally accessible everywhere, the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state[.]"). Plaintiff has failed to allege any facts that TFL targeted potential UST or Luna purchasers in the U.S.

Although Plaintiff alleges that TFL received funding from at least two entities located within this District (AC ¶ 36) this also does not support specific jurisdiction. *See Blockchange Ventures I GP, LLC. v. Blockchange, Inc.*, No. 20 CIV. 6866 (AKH), 2021 WL 308277, at *2 (S.D.N.Y. Jan. 29, 2021) ("even if such a partnership existed" between a foreign defendant and in-state business, "Plaintiff has not shown that its causes of action arise out of the partnership" so as to support specific jurisdiction). The few contacts alleged between TFL and U.S. resident employees (AC ¶ 23) also fail to support specific jurisdiction because those contacts are unrelated to this matter. With the exception of one former employee (Nicholas Platias), none are identified as having participated in any specific scheme within the U.S. Plaintiff alleges that Platias, as

TFL's Head of Research, made false and/or misleading statements regarding UST, Luna, and the Anchor Protocol; concealed information regarding Mr. Kwon's alleged prior stablecoin project; created LFG; and transferred UST and bitcoin into his private wallets.  AC ¶ 212.  But nowhere in those allegations is there any plausible claim that Mr. Platias engaged in such activities while within the U.S., the bare minimum necessary to try to assert specific jurisdiction.  *Compare* AC ¶ 23 with *Allianz Global Investors GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 413-14 (S.D.N.Y. 2020) (dismissing foreign defendants against whom plaintiff failed to raise non-conclusory and fact-specific allegations regarding their employees' participation in the alleged conspiracy).

This Court thus lacks personal jurisdiction over TFL and LFG, and Plaintiff's claims against them should be dismissed.  *See SPV. OSUS*, 114 F. Supp. 3d at 171.

**B.   Mr. Kwon**

i.   <u>Mr. Kwon Is Not Subject to General Jurisdiction</u>.

The Supreme Court has provided that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"  *Goodyear*, 564 U.S. at 924.  In other words, general jurisdiction does not apply to individual defendants who are not resident in the U.S.  *MMA Fighter Mgmt., Inc. v. Ballengee Grp., LLC*, 19 Civ. 11276 (AKH), 2020 WL 3000401, at *3 (S.D.N.Y. June 4, 2020) (domicile determines whether court has general jurisdiction over individual defendants except in an "exceptional case" which has yet to be found in precedent).  This is because

> it is not constitutionally permissible to sue an individual ... in a state where that individual is not "at home" unless the defendant's activities in the forum state are the basis for the lawsuit—that is, it is not appropriate for a state where a defendant is not "at home" to exercise general (as opposed to specific) jurisdiction over that defendant.

*Meyer v. Bd. of Regents of Univ. of Oklahoma*, No. 13 CIV. 3128 CM, 2014 WL 2039654, at *2 (S.D.N.Y. May 14, 2014).

Plaintiff's concession that Mr. Kwon is not a U.S. resident or citizen (AC ¶ 24) thus precludes the exercise of general jurisdiction.  Furthermore, Plaintiff fails to allege that Mr. Kwon transacted business in the U.S. in his individual capacity.  Instead, he alleges that Mr. Kwon was acting on behalf of TFL during visits to the U.S.  Accordingly, this Court cannot exercise general jurisdiction over Mr. Kwon.  *See Reich v. Lopez*, 858 F.3d 55, 63 (S.D.N.Y. 2017).

ii.     Mr. Kwon Is Not Subject to Specific Jurisdiction.

For specific jurisdiction to apply, Plaintiff must show that (1) Mr. Kwon purposefully availed himself of doing business in the U.S. and that (2) the case "arise[s] out of or relates to" those contacts with the U.S.  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).  The only specific contact with the U.S. that Plaintiff alleges in support of jurisdiction over Mr. Kwon is a visit to New York where Mr. Kwon attended and spoke at a cryptocurrency conference in September 2021.  AC ¶¶ 24, 34.  But that panel discussion was about the interoperability between leading blockchains and various developments in interoperable multi-chain ecosystems.  *See Cosmos Around the World – Catch the Highlights, Messari Mainnet 2021, New York* (Nov. 23, 2021), https://blog.cosmos.network/cosmos-around-the-world-catch-the-highlights-2c1825599190.  Notably, Plaintiff does not allege that Mr. Kwon's participation on this panel even relates to the claims asserted here.  Without any allegations to link it to this case, this allegation does not support specific jurisdiction.  *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 233 (S.D.N.Y. 2019) (boilerplate allegations regarding a trip to New York, without allegations that the trip was used to further the alleged manipulation, were not sufficient to support jurisdiction).  Likewise, Plaintiff's allegations about tweets or media statements that Mr. Kwon

17

made about TFL which may have been viewable in the U.S. (AC ⁋ 114), are insufficient to establish specific jurisdiction over Mr. Kwon.  *See Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12 CIV. 3419 (GBD), 2017 WL 1113080, at *4 (S.D.N.Y. Mar. 10, 2017); *Laydon v. Mizuho Bank, Ltd.*, No. 12 CIV. 3419 GBD, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015).

Moreover, to the extent Plaintiff attempts to impute TFL's purported contacts with the U.S. to Mr. Kwon, (a) as demonstrated above those alleged contacts do not support jurisdiction and (b) even if they did, imputing them to Mr. Kwon is improper for jurisdictional purposes.  *See generally Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs.*, 2005 WL 696897, at *4 (S.D.N.Y. Mar. 24, 2005) ("[I]t does not follow automatically that New York may exercise personal jurisdiction over all of a corporation's officers as a consequence of having jurisdiction over the corporation.").

Accordingly, this Court cannot exercise specific jurisdiction over Mr. Kwon.

## II.    Plaintiff's RICO Claims Are Barred By PSLRA Section 107.

Section 107 of the PSLRA provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962."  18 U.S.C. § 1964(c).  A plaintiff cannot avoid this prohibition by artful pleading.  "[I]f the alleged conduct could form the basis of a securities fraud claim against <u>any</u> party—be it against, or on behalf of, the plaintiff, defendants or a non-party—it may not be fashioned as a civil RICO claim." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 644 (S.D.N.Y. 2017).  Even a securities claim with no legal viability makes Section 107 applicable.  *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2001).  As this Court has explained, Section 107 thus bars "civil RICO claims, including claims for wire and mail fraud, 'alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant'" and "RICO claims based on conduct that perpetuates a Ponzi scheme." *Picard v. Kohn*, 907 F. Supp. 2d 392, 398 (S.D.N.Y. 2012) (Rakoff, J.); *see also Lerner*

*v. Colman*, 26 F.4th 71, 78 (1st Cir. 2022) (Section 107 "bars [plaintiff] from relying on conduct that would have been actionable as securities fraud, whether or not [plaintiff] herself could have commenced such an action.").

Plaintiff's RICO claims are derived from the California Action, in which a member of the same class proposed here specifically alleges that UST and Luna are securities and asserts claims under the registration and anti-fraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. California Action Compl. ¶¶ 64, 169-211. There is thus no question whether someone like Plaintiff could assert securities law claims about UST and Luna, because Patterson actually has. *See* Patterson Compl. ¶¶ 64-79 ("the Terra Tokens qualify as a security under the *Howey* test for the reasons below"); 169-193 (asserting claim under Exchange Act Section 10(b)); 194-203 (asserting claim under Securities Act Sections 5 and 12(a)(1)). And it is not just Mr. Patterson: four other putative class members sought appointment as lead plaintiffs pursuant to the PSLRA in *Patterson*. *See* Patterson ECF Nos. 19, 24, 28, 32. So although Plaintiff alleges that UST and Luna are not securities, the fact that other people claiming to be members of the same putative class allege they are securities makes Section 107 applicable.

Plaintiff's attempt to avoid Section 107 is not just inconsistent with the allegations of the *Patterson* lead plaintiff movants, it is also *internally inconsistent* because Plaintiff alleges that the defendants "obstructed justice" by "hiding their criminal scheme from … the SEC" (AC ¶ 289), an allegation that makes no sense when combined with Plaintiff's assertion that UST and Luna are not securities. Plaintiff's affirmative allegation that some sort of disclosure to the SEC was required but not made cannot be reconciled with his affirmative attempt to avoid Section 107. The fact that Congress enacted Section 107 to preclude plaintiffs from pursuing both RICO and securities law claims about the same assets and alleged conduct, *see generally Albright v.*

*Terraform Labs, Pte. Ltd.*, No. 22-CV-07281 (JSR), 2022 WL 16985806, at *2 (S.D.N.Y. Nov. 15, 2022) (Rakoff, J.) ("RICO and securities fraud claims are mutually exclusive"), means that the Court need not decide whether or not UST or Luna are securities to enforce Section 107 here because (a) members of the same proposed class as Plaintiff allege that the tokens at issue are securities and allege securities law claims about those tokens and (b) Plaintiff himself makes allegations inconsistent with his own theory.  Because Section 107 bars any claim *potentially* subject to it, Plaintiff's claims should be dismissed.  *See In re Platinum-Beechwood Litig.,* 427 F. Supp. 3d 395, 447 (S.D.N.Y. 2019) (Rakoff, J.).  Indeed, Plaintiff himself alleges the proposed class purchased UST and Luna expecting to profit as passive investors from the managerial and entrepreneurial efforts of various defendants supposedly involved in the "Enterprise" (AC ¶¶ 1, 21, 207-209, 213-215, 223-226, 290), which is enough to trigger Section 107.[9]

---

[9] Making matters worse for Plaintiff, the SEC has asserted that "the vast majority" of cryptocurrencies qualify as securities subject to federal securities law (but has declined to specify which tokens should be considered securities other than through enforcement proceedings).  *Compare* https://www.sec.gov/news/speech/gensler-sec-speaks-090822 ("Of the nearly 10,000 tokens in the crypto market, I believe the vast majority are securities." (footnote omitted)) *and Sec. & Exch. Comm'n v. LBRY, Inc.*, No. 21-CV-260-PB, 2022 WL 16744741, at *3 (D.N.H. Nov. 7, 2022) (suggesting that most tokens are securities) *with Matter of Coinschedule*, https://www.sec.gov/news/public-statement/peirce-roisman-coinschedule ("We … are disappointed that the Commission's settlement with Coinschedule did not explain *which* digital assets touted by Coinschedule were securities, an omission which is symptomatic of our reluctance to provide additional guidance about how to determine whether a token is being sold as part of a securities offering or which tokens are securities." (emphasis in original)) (Peirce and Roisman, dissenting in part) *and Audet v. Fraser*, No. 3:16-cv-940 (MPS), 2022 WL 1912866, at *12-18 (D. Conn. Jun. 3, 2022) (upholding jury verdict that certain tokens were not securities).  In contrast, the CFTC has pressed the view that cryptocurrencies are commodities.  *See, e.g.*, *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) (enforcement action treating bitcoin and litecoin as commodities); *CFTC v. Laino Grp. Ltd.*, No. 4:20-CV-03317, 2021 WL 4059385, at *8 (S.D. Tex. June 30, 2021) (enforcement action treating ether, litecoin, and bitcoin as commodities).  With that background and the fact that Patterson and other members of the proposed class allege that UST and Luna *are* securities, Plaintiff's offhand citation of *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) (AC ¶¶ 198-202) is not enough to avoid application of Section 107.  And this assumes the *Howey* test is still good law following *West Virginia v. E.P.A.*, 142 S. Ct. 2587, 2595 (2022), in which the Supreme Court explained that the major questions

### III.    Plaintiff Fails To Allege RICO Standing.

The AC alleges that Plaintiff and purported class members "have been and will continue to be injured in its business and property" and "lost opportunities" (AC ‖ 290) without ever explaining how Plaintiff was specifically injured by the alleged racketeering activity.[10]  That is insufficient to state a civil RICO claim.  *See First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994); *see also Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (RICO plaintiff must demonstrate that injury to business or property was caused by the alleged RICO violation); *see also Petroff Amshen LLP v. Alfa Rehab PT PC*, Case No. 21-847, 2022 WL 480475, at *2 (2d Cir. Feb. 17, 2022) (plaintiff failed to state a plausible RICO claim because claimed damages were too speculative and general).  And although Plaintiff alleges harm to himself and the purported class when the value of UST and other coins dropped (AC ‖ 20), he never alleges when his UST or Luna were purchased, how, from whom, at what price(s), and what became of them.[11]

---

doctrine requires an agency to point to "clear congressional authorization" for authority it claims, something it is not clear the SEC can do with respect to cryptocurrencies.  Although TFL, LFG, and Mr. Kwon do not agree with the SEC's views and do not agree that UST and Luna should be considered securities, the Court need not reach these issues because "Congress made clear its intent to prevent the invocation of RICO in ordinary fraud cases, which were beyond the original purpose of the law."  *ABF Capital. Mgmt. v. Askin Capital Mgmt.*, 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997).

[10] Plaintiff's attempt to use attorney's fees and costs in litigating this action as a way to plead sufficient RICO injury (AC ‖ 290) fails because the pursuit of a RICO action does not create RICO proximate causation.  *Kimm v. Chang Hoon Lee and Champ, Inc.*,196 Fed. App'x 14, 16 (2d Cir. July 6, 2006).

[11] For example, Plaintiff does not allege that UST purchasers who staked their UST in Anchor ever failed to receive the yields they expected.  If a member of the proposed class purchased UST, staked it in Anchor, unstaked it, and then used it to purchase something other than UST or Luna before the depeg event occurred, he or she could not have suffered any injury at all, let alone from the alleged racketeering activity.

Even with the most favorable reading, Plaintiff's alleged injury would be based on the notion that UST and Luna were riskier to purchase than he originally believed.  But such belief cannot support a RICO claim.  *See Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 522 (S.D.N.Y. 1997) ("Plaintiff cannot recover under RICO by alleging that []he was induced to enter into a transaction which was riskier than []he originally believed.").

Plaintiff must sufficiently allege both "but for" and proximate causation to state a RICO claim.  *See McBrearty v. Vanguard Grp., Inc.*, No. 08 CIV. 7650 (DLC), 2009 WL 875220, at *2 (S.D.N.Y. Apr. 2, 2009), *aff'd*, 353 F. App'x 640 (2d Cir. 2009).  Plaintiff has failed to sufficiently allege either.  To establish "but for" causation, Plaintiff must plead that absent TFL, LFG, or Mr. Kwon's alleged predicate acts, he would not have purchased UST or Luna.  In *Bridge v. Phoenix Bond & Indem. Co.*, the Supreme Court explained that although the party injured by a RICO mail fraud scheme need not show that it directly relied on the defendant's misrepresentations (in other words, first-party reliance), "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."  553 U.S. 639, 658 (2008); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) ("[I]f the person who was allegedly deceived by the misrepresentation (plaintiff or not) ***would have acted in the same way regardless of the misrepresentation***, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury.") (emphasis added).  Given that the complete design specification for UST and Luna, the Anchor Protocol, and their respective code bases were publicly available and the very risks about which Plaintiff complains were widely discussed in public prior to the depeg event, Plaintiff has not pleaded even but-for causation.

Nor has Plaintiff sufficiently alleged proximate cause.  "To establish proximate causation, the connection between the defendant's conduct and the plaintiff's injury must be 'direct' and 'straightforward'."  *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 116 (S.D.N.Y. 2021).  It is well-established that plaintiffs may not recover damages unless their injury occurs at the "first step" in the proximate cause inquiry.  *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010) (denying recovery where the "theory of causation requires us to move well beyond the first step"); *Laydon v. Coöperatieve Rabobank U.A.*, 51 F.4th 476, 491 (2d Cir. 2022) ("Plaintiff's alleged injury does not flow directly from the first step in the causal chain.  Not only does Plaintiff fail to allege any direct dealings with Defendants, but his asserted injury (a change in the value of his domestically traded Euroyen TIBOR futures contract) is several steps removed from Defendants' alleged conduct (sending fraudulent Yen-LIBOR submissions to the BBA).").

Plaintiff's alleged harm from the decline in value of UST and Luna (AC ¶¶ 14, 20) does not stem directly from TFL, LFG, or Mr. Kwon's alleged RICO violations.  Plaintiff does not allege that he ever interacted directly—or at all—with TFL, LFG, or Mr. Kwon.  And Plaintiff concedes that, if he was injured at all, there were intervening causes.  AC ¶¶ 168 ("UST depended primarily on an algorithm to maintain its value.  That algorithm, in turn, depended on forces *outside Defendants' control*, namely demand for UST, public willingness to perform the stabilizing arbitrage, and reliable price information." (emphasis added)); 162-64 ("huge sell-off" by UST holders depressed the price of UST and led to a mass exchange of coins by UST holders); 52, 78, 205 (UST and LUNA markets were controlled by outside forces of supply and demand).  Those allegations *by Plaintiff* are sufficient to nullify proximate cause.  *See 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 771 F. App'x 498, 504 (2d Cir. 2019) (no proximate cause for RICO claim because injury was directly caused by buy/sell decisions of independent market actors); *In re*

*Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d at 119 (same).   Because Plaintiff affirmatively pleads that UST and Luna prices depended on forces outside the Defendants' control, he has failed to plead RICO proximate causation.   *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994).

## IV.   Plaintiff's RICO Claim Is Impermissibly Extraterritorial.

Federal laws are "meant to apply only within the territorial jurisdiction of the United States" unless otherwise stated.   *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). "[U]nless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions."   *Id.* (internal citations omitted).   A RICO claim can only be based on international conduct if the statutes establishing the underlying predicate acts have extraterritorial reach.   *Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 709 (S.D.N.Y. 2019).   And the RICO statute only authorizes a private right of action for domestic injuries: "Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries."   *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 354 (2016).

Plaintiff's RICO claims are predicated on allegations of mail and wire fraud, money laundering, and obstruction of justice.   AC ¶¶ 269-89.   But the federal wire fraud statute does not have extraterritorial application and may not serve as a predicate act for a RICO claim premised on foreign activities.   *See Sullivan v. Barclays PLC*, 13-cv-2811 (PKC), 2017 WL 685570, at *33 (S.D.N.Y. Feb. 21, 2017); *see also Petroleos Mexicanos v. SK Eng'g & Const. Co.*, 572 F. App'x 60, 61 (2d Cir. 2014) (foreign wire fraud cannot serve as RICO predicate act).   "To state a RICO claim predicated on wire fraud, Plaintiff must allege 'sufficient domestic conduct for the claims involving ... wire fraud ... to sustain the application of RICO.'"   *Fire & Police Pension*

*Ass'n of Colorado*, 368 F. Supp. 3d at 709.  The AC fails to allege sufficient domestic conduct.  In *Fire & Police Pension Ass'n of Colorado* the Court determined that the plaintiff failed to allege sufficient domestic conduct because the defendants were based abroad, their allegedly manipulated quotes were submitted abroad to banking associations located abroad, and involved rates dealing with foreign currency.  *Id*. at 709-10.  Although the quotes were submitted through servers located in the United States and published in the United States, that was insufficient to establish domestic conduct.  *Id*.

Plaintiffs' allegations are worse than the allegations in *Fire & Police Pension Ass'n of Colorado*.  Plaintiff broadly alleges that Defendants utilized mail and wire communications to promote and transfer funds related to their business practices and alleged scheme to defraud, and to facilitate the sale of UST and Luna as part of an "international operation" that "regularly participated in the multi-billion-dollar international cryptocurrency industry."  AC ¶¶ 265, 267, 271.  But it is not enough for Plaintiff to allege Defendants used mail and wires to communicate with and/or through U.S.-based counterparties, sent and received funds via U.S. wires, and employed some U.S. employees.  *See Fund Liquidation Holdings LLC v. UBS AG*, 15 Civ. 5844 (GBD), 2021 WL 4482826, at *11 (S.D.N.Y. Sept. 30, 2021) (dismissing RICO claims on extraterritoriality grounds).  Particularly absent are any assertions that the alleged enterprise was directed from or to the United States, which is necessary to survive a motion to dismiss.  *See Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 556 (S.D.N.Y. 2018) ("if the domestic conduct is peripheral to the overall scheme, and the scheme is not directed to or from the United States, it does not matter that the defendant intentionally used U.S. wires in further of a fraudulent scheme.") (internal quotation marks and citations omitted); *Petroleos Mexicanos*, 572 F. App'x at 61.  Also missing are any allegations that TFL, LFG, or Mr. Kwon

traded UST or Luna with Plaintiff or any other member of the proposed class (unlike other entities in the cryptocurrency space, TFL **did not** operate an exchange or marketplace).  Because Plaintiff's allegations do no more than allege that some domestic conduct may have occurred that was (if it did occur) incidental to non-domestic conduct, his mail and wire fraud claims fail.

Finally, Plaintiff has not alleged any domestic injury.  Plaintiff alleges he was "harmed when Defendants' scheme collapsed and the value of UST and Luna coin plummeted."  AC ¶ 20. To determine whether that alleged injury is a "domestic injury," the Second Circuit utilizes the *Bascuñán* test, which turns on the location of the property at the time of the alleged injury. *Suedrohrbau Saudi Co. Ltd. v. Bazzi*, 19-CV-5130 (EK)(LB), 2021 WL 980883, at *5 (E.D.N.Y. Mar. 16, 2021) (citing *Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017)).  In *Bascuñán*, the Second Circuit held that financial property should be subject to the same "domestic injury" extraterritoriality test as tangible property:

> While money is, of course, ultimately fungible, the money allegedly [misappropriated] as a result of this scheme was situated in a specific geographic location at the time of injury such that we can treat it as tangible property for purposes of this inquiry.
>
> *        *        *
>
> The fact that the property at issue was money, rather than real property or chattels, is of no moment.  [Plaintiff] plausibly alleged that the funds stolen were held in a specific and identifiable bank account in New York.  In that sense, the [bank account] resembled real property or chattels in the only way relevant to our decision—that is, the trust funds could be located within the jurisdiction of the United States at all times relevant to the complaint.

874 F.3d at 820, 822-23; *cf. Ox Labs, Inc. v. Bitpay, Inc.*, Case No. CV 18-5934-MWF (KSx), 2020 WL 1039012, at *6 (C.D. Cal. Jan. 24, 2020) (cryptocurrency is "quasi-tangible" property for purposes of assessing viability of conversion claim and related statute of limitations).

Applying that reasoning here, UST and Luna are financial assets held in specific and identifiable accounts (wallets).  Plaintiff's own allegations regarding the transfer of UST, Luna,

and other forms of financial property evince his knowledge about the wallets where such assets exist. *E.g.*, AC ¶¶ 3, 13, 15, 28, 39, 174-75, 180, 182, 184-86, 189-90, 193-96, 209, 212, 222, 226, 229, 239, 282. And yet Plaintiff fails to identify the location (geographic or otherwise) of any wallet or account containing the UST and Luna he claims he purchased. Accordingly, his allegations are not sufficient to survive a motion to dismiss. *See Bascuñán*, 874 F.3d at 820-24 (no domestic injury relating to foreign accounts from which defendant misappropriated funds into his own domestic account).

Plaintiff's RICO claims should be dismissed as impermissibly extraterritorial.

**V.  Plaintiff Has Failed To Properly Plead Any Other Element Of A RICO Claim.**

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ... ." 18 U.S.C.A. § 1962(c). "To establish a civil RICO claim for violation of § 1962(c), a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Azrielli v. Cohen L. Offs.*, 21 F.3d 512, 520 (2d Cir. 1994) (internal citations omitted). Plaintiff has failed to sufficiently plead these elements.

**A.  Plaintiff Has Not Alleged Predicate Acts.**

**i.  Plaintiff Did Not Adequately Plead Mail or Wire Fraud.**

To allege mail or wire fraud, Plaintiff must plead with particularity that Defendants made material misrepresentations with fraudulent intent in a scheme to get money or property furthered by use of interstate mail or wires. *See Williams v. Affinion Group, LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Under the heightened pleading standard for fraud allegations, Plaintiff must go beyond "conclusory assertions of fraud" and (i) describe "the specific statements that are false or

fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent," and (ii) "allege facts that give rise to a strong inference of fraudulent intent." *Id.* at 124-125 (citing Fed. R. Civ. P. 9(b)); *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004); *Novomoskovsk Joint Stock Co. "Azot" v. Revson*, No. 95 CIV. 5399 (JSR), 1997 WL 698192, at *4 (S.D.N.Y. Nov. 7, 1997) (Rakoff, J.). Plaintiff's allegations do not meet these requirements.[12]

Plaintiff's assertion that Defendants "ma[de] fraudulent statements … regarding Terra's sustainability" (AC ⁋ 20) does not withstand scrutiny.  Plaintiff points to the Terra Whitepaper (AC ⁋⁋ 61, 74), but that document simply describes the product design and capabilities of the Terra protocol, UST, and Luna.  Further, the Terra Whitepaper expressly and repeatedly stated as a central assumption that the price of UST could be stabilized by adjusting its supply in response to changes in demand if "***all conditions held equal***."  AC ⁋ 52.  As Plaintiff admits, market conditions changed significantly in May 2022, when "forces outside of Defendants' control" contributed to the collapse in UST and Luna.  AC ⁋⁋ 162, 168.  Although the design described in the Terra Whitepaper failed under acute market conditions, statements are not fraudulent simply because it later turns out they might have been too optimistic or an intervening cause resulted in changed circumstances.  *See generally Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619, 623 (7th Cir. 2022) (plaintiff failed to plead fraud simply because system turned out to not work as expected or predicted) (Easterbrook, J.).  "[L]ack of clairvoyance" in anticipating future events is not fraud.

---

[12] Plaintiff cannot rely on allegations that Mr. Kwon failed to disclose that he tweeted about "Basis Cash" (AC ¶ 50) or that TFL failed to disclose interactions with Jump (AC ¶¶ 123-24), because he alleges no reason why disclosure of either was required.  *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d at 440; *see also United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000).

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995).  As Mr. Kwon and other putative

class members have said publicly, "There is a difference between failing and running a fraud."[13]

      Plaintiff cannot convert this project failure into a fraud by pointing to a selection of

optimistic tweets.  *See, e.g.*, AC ¶¶ 144-45, 152, 156, 160.  Mr. Kwon's tweets merely expressed

genuine confidence and excitement in UST, Luna, and the creation of a reserve to support the peg

and mitigate the risk of a UST collapse.  "Up to a point, companies must be permitted to operate

with a hopeful outlook"; the "[p]eople in charge … are not required to take a gloomy, fearful or

defeatist view of the future; subject to what current data indicates, they can be expected to be

confident about" future prospects.  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

Moreover, the tweets were not statements of fact but expressions of opinion.  Whether the "Terra

Ecosystem" would function as designed was the subject of significant public debate, *supra* at 5-6,

and Mr. Kwon was conveying his honestly held opinion on the topic, not factual statements that

could be read as false or misleading.  *See Tongue v. Sanofi*, 816 F.3d 199, 213 (2d Cir. 2016)

(citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188,

(2015)).  It is thus not surprising that Plaintiff does not actually allege that any of the statements

cited were false[14]; at best, Plaintiff's complaints are about mismanagement or poor design, puffery,

---

[13] *See* Henkin Decl. Ex. H at 4-5 ("I made confident bets and made confident statements on behalf
of UST because I believed in its resilience and its value proposition … I've since lost these bets,
but my actions 100% match my words.  There is a difference between failing and running a fraud.")
(emphasis added); Henkin Decl. Ex. I at 2 ("The 'death spiral'/bank run risk of failure was known
by everyone and repeated consistently over time. $LUNA was referred to as an experiment by Do
Kwon in interviews again and again. Risks are also implicit: it was a new model/ financial
primitive in a decade-old domain."); Henkin Decl. Ex. J at 2 ("While I was wrong (and terribly
so), I maintain there was no fraud.  TFL donated what was then >$3B to establish @LFG_org to
diversify UST's collateral backing, and focused our investments to grow Terra's ecosystem.  We
wouldn't have done this if we thought UST were to fail.").

[14] Similarly, Plaintiff's allegations that Mr. Kwon or TFL stated that the payment network Chai
settled transactions in UST after Chai had ceased doing so (AC ¶ 120) lack any allegations that
Mr. Kwon or TFL knew that the alleged statements were false (either at the time or subsequently).

and "fraud by hindsight," none of which are actionable as fraud.  *See In re Sec. Cap. Assur. Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 597 (S.D.N.Y. 2010); *see also Cboe Glob. Markets*, 42 F.4th at 623 (bad design is not fraud).

Plaintiff's allegations of false statements regarding Anchor fare no better.  Plaintiff points to the Anchor Whitepaper (AC ¶ 99), but like the Terra Whitepaper that document simply describes the product design and capabilities of the Anchor protocol.  Although Plaintiff repeatedly asserts that the 20% annual percentage yield offered to depositors on their staked tokens was "unsustainable" (AC ¶¶ 169, 173), Plaintiff does not allege that it was not sustained—Anchor paid depositors the offered rate.  Even if Anchor had failed to do so, offering that particular rate would not be actionable because the Anchor website expressly cautioned that it was "a forward-looking projection … subject to numerous assumptions, risks and uncertainties," and "not a promise [or] guarantee."  Henkin Decl. Ex. B at K at 5.  To the extent Plaintiff is focused on the decline in value of UST deposited in Anchor, that was not a failure in Anchor's design and in any event the risk was disclosed on the website: "[e]ven if the Rate is achieved as projected, you may still suffer a financial loss in fiat-denominated terms if the fiat-denominated value of the relevant tokens (your deposit and any tokens allocated or distributed to you pursuant to the Rate) declines during the deposit period."  *Id.*  The Anchor Whitepaper, read in its full context, accurately described the protocol's function and specifically warned Plaintiff of the precise danger that came to pass (losses "in fiat-denominated terms").  And to make matters worse, Plaintiff did not even use the Anchor Protocol (Henkin Decl. Ex. M) and so he cannot claim to have relied on any of the cited statements regarding Anchor.  Nor has Plaintiff pleaded reliance for the reasons explained in Point III(B)(1) of the Memorandum of Law in Support of Defendants Jump Trading, LLC and Kanav Kariya's Motion to Dismiss the Amended Complaint.

Finally, Plaintiff fails to allege facts from which this Court could infer that Mr. Kwon, TFL, or LFG acted with scienter. Plaintiff simply lumps all "Defendants" together in alleging they somehow "knew" that the Terra Ecosystem and Anchor were "unstable" and "unsustainable." *See, e.g.*, AC ¶¶ 7, 9, 18-19, 123, 174. This type of blunderbuss pleading fails to satisfy Plaintiff's obligation to plead scienter. *See Kinra v. Chi. Bridge & Iron Co.*, 2018 WL 2371030, at *6 (S.D.N.Y. May 24, 2018) ("Scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading.") (citation omitted); *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) (Rule 9(b) requires that "[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible"); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy th[e] minimum standard" of Rule 8).[15] Accordingly, Plaintiff has not sufficiently pleaded mail or wire fraud. *See First Cap. Asset Mgmt., Inc.*, 385 F.3d at 179; *Rosenheck v. Rieber*, 932 F. Supp. 626, 628 (S.D.N.Y. 1996) (Rakoff, J.).

ii.    Plaintiff Does Not Plead Money Laundering.

To plead a violation of the money laundering statute, 18 U.S.C. § 1956,[16] Plaintiff must first show "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact

---

[15] Plaintiff's reliance (AC ¶¶ 169-172) on a Medium article by Mr. Tetot does not support scienter. Mr. Tetot stated that what he wrote was his "personal opinion," not an analysis of actions by TFL or LFG, that the risks of a depeg and death spiral "were clear" when he did his own research in 2021, and that people "were constantly pointing out Luna/ust weaknesses." *See* Henkin Decl. Ex. L.

[16] The AC asserts money laundering claims "in violation of 18 U.S.C. §§ 1341, 1343," which are the mail and wire fraud statutes. AC ¶¶ 72-76 As demonstrated in Section VI(A), Plaintiff has not adequately pleaded mail or wire fraud. But because Plaintiffs' allegations track the language

involved the proceeds of specified unlawful activity as defined in § 1956(c)(7); [and] (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity." *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 322–23 (S.D.N.Y. 2014); *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 559 (S.D.N.Y. 2011); *Dale v. Banque SCS Alliance S.A.*, 2005 WL 2347853, at *5 n.2 (S.D.N.Y. Sept. 22, 2005). Plaintiff must then plead either (a) that Defendants knew "the transaction was designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" or (b) that the Defendant conducted or attempted to conduct the transaction "with the intent to promote the carrying on of specified unlawful activity." *Tymoshenko*, 57 F. Supp. 3d at 322–23 (citing 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i)).

Plaintiff broadly alleges that "the financial transactions involved the proceeds of the specified unlawful activities, namely mail and wire fraud." AC ⁋ 284. Plaintiff's first problem is that this allegation is not nearly specific enough—it parrots the statutory language but does not identify which "financial transactions" involved "proceeds" of which supposedly "unlawful activities." Does Plaintiff mean his UST and Luna transactions (which he does not even identify), transactions by some defendants (which he also does not identify), or something else entirely? The AC does not say, and so Plaintiff's money laundering claim does not get out of the starting gate.

Plaintiff also fails to satisfy the second element because Plaintiff has not adequately pleaded mail or wire fraud. *See West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606, 2004 WL 2187069, at *10 (S.D.N.Y. Sept. 29, 2004) ("In the absence of adequate allegations as to the existence of a specified unlawful activity, [RICO plaintiff] has failed

---

of 18 U.S.C. § 1956 even though Plaintiff deleted references to that statute in the AC, Defendants address Section 1956 here despite Plaintiff's seemingly deliberate removal of citations to it.

to adequately plead money laundering as a predicate racketeering activity [to support] its civil RICO claim"); *Novomoskovsk Joint Stock Co. "Azot" v. Revson*, No. 95 CIV. 5399 (JSR), 1998 WL 3352, at *2 (S.D.N.Y. Jan. 5, 1998) (Rakoff, J.) (denying motion to reconsider dismissal of RICO claim because none of the "alleged acts of money laundering … relates to the surviving fraud allegations" and thus "none of the proceeds that allegedly were laundered … could constitute the "proceeds of unlawful activity; and, if there are no such proceeds, there can be no claims for money laundering"). Because Plaintiff's allegations of mail and wire fraud are insufficient, he cannot satisfy the "specified unlawful activity" element by reference to those allegations. *West 79th Street Corp.*, 2004 WL 2187069, at *9.

Plaintiff also has not adequately pleaded that any defendants "*knew* that the property involved in the financial transaction represented the proceeds of some form of unlawful activity" and that any defendants "*knew* that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, [or] control" of the monies. *Dale*, 2005 WL 2347853, at *5 n.2 (emphasis added). Even assuming *arguendo* that transfers were made from TFL wallets to so-called "secret wallets," Plaintiff does not plead that Mr. Kwon, TFL, or LFG knew any funds at issue were proceeds of crime or knew that any transaction was designed to conceal or disguise anything about those funds. Indeed, Plaintiff alleges the opposite—that Mr. Kwon, TFL, and LFG repeatedly provided updates on Twitter and elsewhere with the exact wallet addresses being used and the amounts of reserves being transferred. *See* AC ¶¶ 189 ("On March 28, 2022, Defendant Kwon announced in a tweet the wallet address holding [LFG]'s cryptocurrency"); 192 ("The [LFG] stated, in part 3 of the same tweet, that the purchase of UST on May 8, 2022 was accomplished "by directly executing on-chain swaps and transferring $BTC to a counterparty to

enable them to enter trades with the Foundation" and "52,198 $BTC was transferred to trade with a counterparty ...").

Although Plaintiff makes conclusory assertions that certain transactions were to "siphoning funds away from the Terra Ecosystem" and "conceal funds from recovery of Plaintiff' (AC ¶ 283), such allegations do not meet the pleading requirements for particularity and plausibility. *See Jus Punjabi LLC v. Get Punjabi US, Inc.*, 640 Fed. Appx. 56, 58 (2d Cir. 2016) (affirming dismissal of RICO claim for failure to plead that transfer involved proceeds of unlawful activity); *Schlesinger v. Schlesinger*, No. 05 CV 5016, 2007 WL 9706976, at *9 (E.D.N.Y. Feb. 8, 2007) (dismissing RICO claims and concluding that conclusory statements failed "to satisfy the essential elements of the statute" where "Plaintiff's allegation of money laundering consists of the conclusory assertion that [defendant] used various corporations to ... launder funds"). Accordingly, Plaintiff has not pleaded that Mr. Kwon, TFL, or LFG committed a predicate act of money laundering.

iii.   Plaintiff Does Not Adequately Plead Obstruction of Justice.

Plaintiff also does not assert a single, non-conclusory allegation that Mr. Kwon, TFL, or LFG "obstructed justice" in furtherance of their alleged scheme to defraud. *See* AC ¶ 289. Obstruction of justice under 18 U.S.C. § 1503 requires "(1) that there is a pending judicial ... proceeding constituting the administration of justice; (2) that the defendant knew or had notice of the proceeding; and (3) that the defendant acted with the wrongful intent or improper purpose to influence the judicial … proceeding, whether or not the defendant is successful in doing so." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 593 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016). Section 1503 also requires "a connection between the defendant's intentional acts and the likelihood of potentially affecting the administration of justice," that is, "the act must have a

34

relationship in time, causation, or logic with the judicial proceedings." *United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006). Obstruction of justice can only be a RICO predicate act where a defendant's efforts were "designed to prevent detection and prosecution of the organization's illegal activities [and] were part of a consistent pattern that was likely to continue for the indefinite future, absent outside intervention." *United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir.1991).

There are no factual allegations in the AC that Mr. Kwon, TFL, or LFG acted with a "wrongful intent to impact judicial proceedings" or engaged in efforts designed to "prevent detection and prosecution of TFL's activities." Rather, Plaintiff acknowledges (AC ¶ 198) that Mr. Kwon and TFL simply used available judicial processes to object to SEC subpoenas relating to the "Mirror Protocol" (which is not at issue in this case). Critically, Plaintiff does not assert failure to comply with those subpoenas or contempt of court, because he cannot: TFL and Mr. Kwon complied with the subpoenas while contesting them. *See, e.g.*, *United States Sec. & Exch. Comm'n v. Terraform Labs Pte Ltd.*, No. 22-368, 2022 WL 2066414 (2d Cir. June 8, 2022). No rational definition of "obstruction" includes complying with subpoenas while exercising legal rights to challenge them, especially when the Supreme Court orders the agency that issued the subpoenas to file a substantive response to a certiorari petition.

Plaintiff likewise pleads no facts from which this Court could infer that Mr. Kwon or TFL had fraudulent intent or knew that any of their activities were illegal, designed to prevent detection, or had the requisite relationship in time with any relevant judicial proceedings. Plaintiff's only allegations (relating to a potential investigation in South Korea, AC ¶ 200) cannot support an obstruction claim because the alleged obstruction must be directed at a *U.S. proceeding* to be cognizable as a RICO predicate act. *See Sheridan v. Mariuz*, No. 07 Civ. 3313 (SCR) (LMS),

2009 WL 920431, at *9 (S.D.N.Y. Apr. 6, 2009).  Plaintiff thus has not alleged obstruction of justice as a RICO predicate act.

### B.    Plaintiff Does Not Properly Plead An Association-In-Fact Enterprise.

The AC alleges that there was an association-in-fact comprised of all Defendants and operated by all Defendants through a pattern of racketeering activity.  AC ¶¶ 21, 206-239, 261-267.  An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Boyle v. United States*, 556 U.S. 938, 945 (2009).  Association-in-fact enterprises must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's alleged purpose.  *See id*. at 946.  Critically, the enterprise is not the pattern of racketeering activity, it must be an entity separate and apart from the pattern of activity in which the enterprise allegedly engaged.  *See United States v. Turkette*, 452 U.S. 576, 583 (1981).

Plaintiff's enterprise allegations fail for three reasons.  *First*, Plaintiff's association-in-fact allegations (AC ¶¶ 21, 206, 261-267) are conclusory and merely parrot the statutory language.  *See Schmidt v. Fleet Bank*, No. 96 CIV. 5030 (AGS), 1998 WL 47827, at *8 (S.D.N.Y. Feb. 4, 1998).  Although Plaintiff alleges that all defendants participated in the cryptocurrency industry, he alleges no facts suggesting any relationship beyond the alleged predicate acts or otherwise suggesting unity amongst the various alleged members of the enterprise; that is not enough for RICO claims.  *See Foster v. 2001 Real Est.*, No. 14 CIV. 9434 (RWS), 2015 WL 7587360, at *4 (S.D.N.Y. Nov. 24, 2015) (complaint failed to provide a plausible basis for inferring the defendants acted on behalf of the enterprise as opposed to on behalf of themselves in their individual capacities); *First Nationwide Bank*, 820 F. Supp. at 98 ("Conclusory allegations that the disparate parties were

associated in fact by virtue of their involvement in" an industry is insufficient to sustain a RICO claim).

*Second*, the AC contains no well-pleaded allegations regarding the structure and organization of a RICO enterprise—it just names a group of entities connected through arms-length commercial transactions and asserts that those entities were organized as a group, which is not enough for RICO claims. *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) ("merely stringing together a list of defendants and labeling them an enterprise is insufficient to state a RICO claim"); *Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421 VB, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014) (dismissing RICO claim when plaintiff's "only factual allegations relating to the enterprise are that its members had ongoing business relationships"). Plaintiff defines his "enterprise" as the group needed to encompass the predicate acts he tries to allege (AC ¶¶ 206, 262), which is not sufficient. *See Turkette*, 452 U.S. at 583.

*Third*, an enterprise must have longevity sufficient to permit its associates to pursue the enterprise's purpose. *See Boyle*, 556 U.S. at 946. But all Plaintiff does is allege in conclusory fashion that the enterprise has longevity "sufficient to permit the Defendants to pursue the Enterprise's goal of defrauding Plaintiff and the Class … ." AC ¶ 264. On the one hand, Plaintiff's allegation lacks the required specificity—it just parrots the statutory requirement. On the other hand, the allegation is temporal nonsense given that LFG was not formed until late January 2022 (AC ¶ 126), more than two years after the proposed class period commences (May 1, 2019). Plaintiff does not allege that the creation of LFG was planned in advance or that LFG failed to fulfill its stated purpose.

### C.   Plaintiff's Operation or Management Allegations Are Insufficient.

A Section 1962(c) defendant must have "conduct[ed] or participat[ed], directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity."

18 U.S.C. § 1962(c).  To "conduct" the affairs of an enterprise, a defendant must have had "some part in directing [the enterprise's] affairs.'"  *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (adopting the "operation or management test").  The "operation and management test is an extremely rigorous test, and it is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise.  Nor is it enough to simply provide goods and services that ultimately benefit the enterprise."  *Democratic Nat'l Committee v. Russian Fed.*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019) (internal citations, brackets, and ellipses omitted).  Moreover, a complaint must allege that a defendant conducted the affairs of *the enterprise,* not its own affairs.  *See Kaczmarek v. Int'l Bus. Machines Corp.*, 30 F. Supp. 2d 626, 630 (S.D.N.Y. 1998) (finding allegations insufficient where "[defendant] was simply conducting its own 'affairs' in distributing its product, through normal commercial channels.").

The AC fails to allege that LFG participated in the operation of management of the alleged enterprise.  Plaintiff *cannot* allege that LFG had any part in devising the allegedly fraudulent scheme (because the alleged scheme was allegedly created long before LFG was formed) and does not allege that LFG directed other members of the alleged enterprise or otherwise participated in its management.  AC ¶¶ 126, 224; *Schmidt*, 1998 WL 47827, at *11 (allegations that defendant co-operated or assisted originator of enterprise did not rise to level of "operation or management" of a RICO enterprise).

With respect to TFL, the AC only alleges that it hosted the Terra blockchain and posted tweets regarding TFL's business (AC ¶¶ 121, 124, 214).  Those are nothing more than allegations that TFL conducted business, and thus fail as bases for RICO claims.  *Interallianz Bank AG v. Nycal Corp.*, No. 93 CIV. 5024 (RPP), 1994 WL 177745, at *7 (S.D.N.Y. May 6, 1994).

Without LFG (and presumably the other LFG-related entities added as defendants in the AC), the analysis then turns to who might be left to consider for "operation or management." If only TFL is left, it cannot constitute an association-in-fact, and so necessarily fails the operation or management test. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013). If only Mr. Kwon and TFL are left, then the RICO claims fail because the Second Circuit has "long since rejected the idea that a RICO enterprise may consist 'merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant[.]'" *Id.* (excluding entity's corporate counsel and chief operation officer as part of analysis to determine whether an association-in-fact existed). And the mere fact that Mr. Kwon was the CEO and a co-founder of TFL is not sufficient to show operation or management. *Lavastone Cap. LLC v. Coventry First LLC*, No. 14-CV-7139 JSR, 2015 WL 4940471, at *7 (S.D.N.Y. July 30, 2015) (Rakoff, J.). The AC alleges only that Mr. Kwon's involvement was that of a chief executive and fails to allege conduct that extended beyond managing TFL (AC ¶ 208), which is of course insufficient for the operation or management test.

### D.   Plaintiff Fails To Allege Pattern Or Continuity.

Plaintiff does not properly allege RICO pattern or continuity. *See Picard*, 907 F. Supp. 2d at 400–01 (Rakoff, J.) ("[T]he conduct the [plaintiff] alleges lacks the 'further factual enhancement' it needs to suggest that these defendants engaged in racketeering activity, much less that such activity constituted a pattern or that defendants conducted the larger enterprise that the Trustee posits.") (quoting *Twombly*, 550 U.S. at 557).

Plaintiff must allege either open-ended or closed-ended continuity. *First Cap. Asset Mgmt.*, 385 F.3d at 180. Closed-ended continuity is demonstrated by predicate acts that "amount to continued criminal activity" "over a substantial period of time" by a particular defendant. *DeFalco v. Bernas*, 244 F.3d 286, 286, 321 (2d Cir. 2001). Predicate acts spanning fewer than

two years are insufficient to form a closed-ended pattern as a matter of law. *See First Capital Asset Mgmt.*, 385 F.3d at 168 ("Notably, this Court has never found a closed-ended pattern where the predicate acts spanned fewer than two years.").

Plaintiff fails to allege closed-ended continuity as to LFG because, even if LFG's alleged conduct could constitute predicate acts, it did not occur over a long enough of a period. *See First Cap. Asset Mgmt.*, 385 F.3d at 168. LFG was not formed until late January 2022 (AC ¶ 126), and the depeg occurred at the beginning of May 2022 (AC ¶¶ 162-164), which amounts to less than four months that LFG could have engaged in predicate acts. This is insufficient to allege closed-ended continuity as a matter of law. *See First Capital Asset Mgmt*., 385 F.3d at 182.

As to TFL and Mr. Kwon, Plaintiff fails to allege closed-ended continuity because he includes conduct unrelated to any alleged injury sustained by Plaintiff or the proposed class in an effort show that TFL or Mr. Kwon's conduct was not isolated or sporadic. Plaintiff's allegations relate to the purchase of UST and Luna and damages allegedly sustained as a result of their price declines. AC ¶¶ 240, 253, 290. And yet Plaintiff tries to rely on the Anchor White Paper and the Anchor Protocol to support continuity (AC ¶¶ 209, 215) even though the AC does not contain a single allegation that (a) Plaintiff *or anyone else* lost money as a result of Anchor or (b) Anchor ever failed to pay the expected return on staked tokens, and Plaintiff did not even use Anchor (Henkin Decl. Ex. M). Accordingly, nothing relating to Anchor can be considered in evaluating continuity. And without those allegations, Plaintiff's continuity theory unravels because the alleged predicate acts relating to UST and Luna (if they are even viable predicate acts for the reasons demonstrated above) are too sporadic to support closed-ended continuity. *See First Capital Asset Mgmt*., 385 F.3d at 181 ("the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern.").

40

**VI.     Plaintiff's RICO Conspiracy Claim Fails.**

The RICO conspiracy statute makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  Plaintiff's RICO conspiracy claims fail because as stated above, Plaintiff has failed to adequately or properly plead a substantive violation of RICO.  *See First Capital Asset Mgmt., Inc.*, 385 F.3d at 182.

Moreover, to state a claim under § 1962(d), Plaintiff must "plead as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of [that] co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same." *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d at 439 (Rakoff, J.).  Plaintiff's allegations regarding an agreement are circular:  Plaintiff asks the Court to infer that there must be an agreement because otherwise the enterprise Plaintiff pleads could not exist as Plaintiff needs it to. AC ¶¶ 295-96.  But Plaintiff includes no well-pleaded factual allegations to show a conscious agreement among the defendants; instead, Plaintiff relies on conclusory assertions that are devoid of factual support and are not even specific to TFL, LFG, and Mr. Kwon.  *See Picard*, 907 F. Supp. 2d at 400 (Rakoff, J.) (A plaintiff must allege "some factual basis for a finding of a conscious agreement among the defendants." (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir.1990)).  The most Plaintiff's allegations could imply is that the defendants, grouped as a whole, had knowledge of a purported fraudulent scheme, which is not enough to support a RICO conspiracy claim.  *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) ("mere knowledge of a scheme, even coupled, with personal benefit, is not enough to impose liability for a RICO conspiracy").

Plaintiff's RICO conspiracy claim must be dismissed.

**VII.    The Class Claims Asserted in the AC Are Barred By the Anchor Terms of Service.**

Although the AC makes allegations about the Anchor Protocol, it does not state whether Plaintiff staked tokens in the Anchor Protocol.  There is no question that members of the proposed class used the Anchor Protocol:  Patterson, for example, listed Anchor-related tokens in his PSLRA certification.  *See* California Action Compl. at Sched. A, p. 67 (listing "aUST" and "ANC" tokens as among the tokens Patterson held).  TFL, LFG, and Mr. Kwon therefore asked Plaintiff's counsel whether Plaintiff staked tokens in the Anchor Protocol, and were informed by Plaintiff's counsel that Plaintiff did not stake tokens in the Anchor Protocol.  *See* Henkin Decl. Ex. M.

This is relevant because the Terms of Service for the Anchor Protocol (which bind everyone who used the Anchor Protocol) release all claims against TFL and Mr. Kwon, waive the right to pursue class claims, select Singapore law as the governing law, and require claims to be arbitrated in Singapore.  *See* Henkin Decl. Ex. K ¶¶ 14, 15, 17-20.  Even if Plaintiff is not affected by these provisions of the Anchor Terms of Service, the proposed class is:  Plaintiff alleges that 75% of all UST was staked in the Anchor Protocol at its peak.  *See* AC ¶ 110.  This requires that Plaintiff's class claims be dismissed for two reasons.  *First*, by Plaintiff's own allegations, the vast majority of members of the proposed class released all claims against TFL and Mr. Kwon, waived the right to pursue class claims, selected Singapore law as the governing law, and agreed to arbitrate in Singapore.  *See* Henkin Decl. Ex. K ¶¶ 14, 15, 17-20.  That means a class action could not be "superior" as required by Fed. R. Civ. P. 23(b)(3).  *Second*, Plaintiff has demonstrated that, *inter alia*, he is not "typical" as required by Fed. R. Civ. P. 23(a)(3).[17]

---

[17] TFL, LFG, and Mr. Kwon reserve the right to seek dismissal of Plaintiff's claims on these same grounds if information comes to light that Plaintiff did use the Anchor Protocol.

**CONCLUSION**

For all the foregoing reasons, the TFL, Mr. Kwon, and LFG respectfully request that the

Court grant its Motion to Dismiss the AC in its entirety with prejudice.

Dated: December 5, 2022                          Respectfully submitted,

                                                 */s/ Douglas W. Henkin*
                                                 Douglas W. Henkin
                                                 DENTONS US LLP
                                                 1221 Avenue of the Americas
                                                 New York, New York 10020
                                                 Tel: (212) 768-6700
                                                 douglas.henkin@dentons.com

                                                 Stephen J. Senderowitz
                                                 233 S. Wacker Drive
                                                 Chicago, Illinois 60606
                                                 Tel: (312) 876-8141
                                                 stephen.senderowitz@dentons.com

                                                 *Counsel for Defendants Terraform Labs Pte. Ltd.,*
                                                 *Do Kwon, and Luna Foundation Guard Ltd.*