**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW ALBRIGHT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP TRADING, LLC, DELPHI DIGITAL CONSULTING INC., DO KWON, NICHOLAS PLATIAS, LUNA FOUNDATION GUARD LTD., JOSE MACEDO, KANAV KARIYA, and REMI TETOT,<br><br>Defendants. | Case No. 1:22-cv-07281-JSR |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS JUMP TRADING, LLC AND KANAV KARIYA'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF RELEVANT ALLEGATIONS .................................................. 3

ARGUMENT ............................................................................................................ 5

   I.   Plaintiff Does Not State A RICO Claim Because He Does Not Sufficiently Allege The Jump Defendants Committed A Single Predicate Act Of Mail Or Wire Fraud, Money Laundering, Or Obstruction Of Justice ............................................................. 6

     A.   Plaintiff Fails To Allege That The Jump Defendants Committed Mail Or Wire Fraud Because He Does Not Allege They Made A False Statement Of Fact Or Acted With Scienter ........................................................................................................ 7

     B.   Plaintiff Does Not Adequately Allege Money Laundering Because He Fails To Plead That The Jump Defendants Knew Alleged Transactions Included Criminal Proceeds . 13

     C.   Plaintiff's Single-Sentence "Obstruction of Justice" Theory Fails As A Matter Of Law ........................................................................................................ 15

   II.   Plaintiff Does Not Allege A "Pattern" Of Racketeering Conduct By The Jump Defendants Because Their Alleged Conduct All Occurred Within A Single Year .......... 16

   III.   Plaintiff Fails To Plead That His Injury Was Caused By Either Of The Jump Defendants' Alleged RICO Violations ............................................................................ 19

     A.   Plaintiff Does Not Plead Any Specific Facts About The Purported Injury To His "Business Or Property" ...................................................................................... 19

     B.   Plaintiff Does Not Allege That The Jump Defendants' Alleged RICO Violations Were The But-For Or Proximate Cause Of His Injuries ...................................... 20

   IV.   Plaintiff Fails To Plead A RICO Conspiracy Claim Against The Jump Defendants Under 18 U.S.C. § 1962(d) ........................................................................................ 26

   V.   Purported Class Members Subject To Terra Or Anchor Terms Of Service May Not Proceed In This Action ..................................................................................... 29

CONCLUSION ........................................................................................................ 30

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 20, 27

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ............................................................................ 6, 10

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988) ................................................................................................ 21

*Biswas v. City of New York*,
   973 F. Supp. 2d 504 (S.D.N.Y. 2013) ................................................................... 29

*Boritzer v. Calloway*,
   2013 WL 311013 (S.D.N.Y. Jan. 24, 2013) ...................................................... 9, 17

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ................................................................................................ 20

*Calabrese v. CSC Holdings, Inc.*,
   2009 WL 425879 (E.D.N.Y. Feb. 19, 2009) .......................................................... 20

*Chill v. General Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996) ................................................................................... 13

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
   187 F.3d 229 (2d Cir. 1999) ............................................................................... 6, 28

*D'Addio v. L.F. Rothschild Inc.*,
   697 F. Supp. 698 (S.D.N.Y. 1988) ........................................................................ 19

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001) ............................................................................... 6, 17

*Democratic Nat'l Comm. v. Russian Fed'n*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019) ................................................................... 16

*Denney v. BDO Seidman, L.L.P.*,
   412 F.3d 58 (2d Cir. 2005) ..................................................................................... 30

*District 1199P Health & Welfare Plan v. Janssen, L.P.*,
   784 F. Supp. 2d 508 (D.N.J. 2011) ........................................................................ 23

*Empire Merchs., LLC v. Reliable Churchill LLLP,*
    902 F.3d 132 (2d Cir. 2018) ............................................................ 19

*Entretelas Americanas S.A. v. Soler,*
    2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020) ...................................... 14

*First Cap. Asset Mgmt. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004) ...................................... 7, 10, 11, 12, 16, 17, 18, 26, 27

*Flexborrow LLC v. TD Auto Fin. LLC,*
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ............................................... 9

*Flynn v. Cable News Network, Inc.,*
    2022 WL 3334716 (S.D.N.Y. Aug. 12, 2022) ..................................... 7

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC,*
    140 S. Ct. 1637 (2020) ..................................................................... 30

*Hecht v. Commerce Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990) ........................................................... 6, 27

*Hemi Grp., LLC v. City of New York,*
    559 U.S. 1 (2010) ....................................................................... 19, 23

*Holmes v. Securities Inv. Prot. Corp.,*
    503 U.S. 258 (1992) ........................................................ 19, 20, 23, 24

*In re Basic Food Grp., LLC,*
    2016 WL 3677673 (Bankr. S.D.N.Y. July 1, 2016) .......................... 19

*In re Platinum-Beechwood Litig.,*
    427 F. Supp. 3d 395 (S.D.N.Y. 2019) ........................................... 6, 17

*In re Platinum-Beechwood Litig.,*
    2019 WL 2569653 (S.D.N.Y. June 21, 2019) ................................... 18

*In re Rezulin Prods. Liab. Litig.,*
    524 F.Supp.2d 436 (S.D.N.Y. 2007) ................................................ 22

*In re Schering-Plough Corp.,*
    2009 WL 2043604 (D.N.J. July 10, 2009) .................................. 21, 22

*In re Security Cap. Assurance Ltd. Sec. Litig.,*
    729 F. Supp. 2d 569 (S.D.N.Y. 2010) ............................................... 8

*In re Takata Airbag Prod. Liab. Litig.*,
   524 F. Supp. 3d 1266 (S.D. Fla. 2021) .................................................................. 24

*In re Tether and Bitfinex Crypto Asset Litigation*
   576 F. Supp. 3d 55 (S.D.N.Y. 2021) .................................................................... 25

*Kashelkar v. Rubin & Rothman*,
   97 F. Supp. 2d 383 (S.D.N.Y. 2000) .................................................................... 16

*Kinra v. Chicago Bridge & Iron Co.*,
   2018 WL 2371030 (S.D.N.Y. May 24, 2018) ....................................................... 10

*Laydon v. Coöperatieve Rabobank U.A.*,
   51 F.4th 476 (2d Cir. 2022) ................................................................................. 24

*Lopez v. Council on American-Islamic Rels. Action Network, Inc.*,
   657 F. Supp. 2d 104 (D.D.C. 2009) ..................................................................... 29

*Lynch v. Capital One Bank (USA), N.A.*,
   2013 WL 2915734 (E.D. Pa. June 14, 2013) ........................................................ 20

*McLaughlin v. American Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ................................................................................ 22

*Merhej v. I.C.S. Int'l Custody Sys., Inc.*,
   2014 WL 104908 (S.D.N.Y. Jan. 9, 2014) ........................................................... 29

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) .................................................................................. 7

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999) ................................................................................ 24

*Moss v. Morgan Stanley Inc.*,
   719 F.2d 5 (2d Cir. 1983) ............................................................................... 5, 19

*Neder v. United States*,
   527 U.S. 1 (1999) ................................................................................................. 7

*Newman v. L.F. Rothschild, Unterberg, Towbin*,
   651 F. Supp. 160 (S.D.N.Y. 1986) ........................................................................ 8

*Nollah v. New York City*,
   2018 WL 4636847 (S.D.N.Y. Sept. 27, 2018) ..................................................... 29

*Novomoskovsk Joint Stock Co. "Azot" v. Revson,*
  1998 WL 3352 (S.D.N.Y. Jan. 5, 1998) .............................................................. 14

*O'Malley v. New York City Transit Authority*
  896 F.2d 704 (2d Cir. 1990) ............................................................................ 16

*Picard v. Kohn,*
  907 F. Supp. 2d 392 (S.D.N.Y. 2012) .................................................. 5, 6, 18, 26, 27

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,*
  119 F.3d 935 (11th Cir. 1997) ........................................................................ 27

*Rosenheck v. Rieber,*
  932 F. Supp. 626 (S.D.N.Y. 1996) ............................................................ 10, 11, 13

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,*
  682 F.3d 1043 (D.C. Cir. 2012) ...................................................................... 27

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.,*
  2013 WL 12368698 (E.D.N.Y. Feb. 19, 2013) ...................................................... 28

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP,*
  806 F.3d 71 (2d Cir. 2015) ............................................................................ 22

*Sullivan v. Barclays PLC,*
  2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) .......................................................... 6

*Tymoshenko v. Firtash,*
  57 F. Supp. 3d 311 (S.D.N.Y. 2014) .......................................................... 13, 14, 15

*United States ex rel. Foreman v. AECOM,*
  19 F.4th 85 (2d Cir. 2021) ............................................................................ 12

*United States v. Autuori,*
  212 F.3d 105 (2d Cir. 2000) .......................................................................... 12

*United States v. Maher,*
  108 F.3d 1513 (2d Cir. 1997) ........................................................................ 13

*United States v. Wu,*
  419 F.3d 142 (2d Cir. 2005) .......................................................................... 9

*Williams v. Affinion Grp., LLC,*
  889 F.3d 116 (2d Cir. 2018) .......................................................................... 7

## **Statutes**

18 U.S.C. § 1341 ........................................................................................................... 13, 19

18 U.S.C. § 1343 ................................................................................................................. 13

18 U.S.C. § 1503 ........................................................................................................... 15, 16

18 U.S.C. § 1956 ............................................................................................... 5, 13, 14, 15

18 U.S.C. § 1961 ................................................................................................................... 6

18 U.S.C. § 1962 ............................................................................................... 5, 6, 26, 28

18 U.S.C. § 1964 ................................................................................................................... 6

## **Rules**

Fed. R. Civ. P. 8 ................................................................................................................. 10

Fed. R. Civ. P. 9(b) ..................................................................................................... 7, 9, 10

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

Defendants Jump Trading, LLC ("Jump Trading") and Kanav Kariya (together, the "Jump Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss the Amended Complaint, *see* ECF No. 42 (hereafter, "Am. Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The last decade has seen major demand and innovation in the global financial markets due to the power of blockchain technology, which allows for decentralized and "trustless" transactions driven by open-source algorithms that are open to review and inspection by everyone in the world. There is strong public demand in particular for a stable cryptocurrency that acts as an equivalent to a traditional fiat currency, and numerous projects exist to create such a product.  Am. Compl. ¶ 4.  The Jump Defendants, along with others, recognized this demand and were early token purchasers in one such project, TerraUSD ("UST").  As with the advent of the Internet, some new technology will flourish and remake our daily lives.  But these projects involve highly complex processes (*Id.* ¶ 5), and many may fail.  UST failed. That failure, however, was not due to any actions by the Jump Defendants, and it is therefore no surprise that Plaintiff is unable to state a cognizable legal claim against them.

Instead, Plaintiff seeks to convert alleged token purchases by Jump Trading and a handful of benign statements by the Jump Defendants into a federal racketeering case.  But the Jump Defendants are accused of little more than expressing support for a project in which they had some involvement and are not even alleged to have directly caused Plaintiff (or anyone else) harm.  This is plainly insufficient to satisfy the stringent pleading requirements of the civil RICO statute, which permits plaintiffs to recover treble damages only for serious and repeated criminal conduct. Indeed, each count of the Amended Complaint contains multiple glaring deficiencies requiring dismissal in its entirety as against the Jump Defendants.

1

*First*, Plaintiff does not allege any predicate acts of racketeering by the Jump Defendants. With respect to mail and wire fraud, despite the heightened pleading requirements, Plaintiff fails to: (1) identify *any* actionable misstatements by the Jump Defendants; or (2) plead facts giving rise to a "strong inference" that they acted with scienter.  With respect to money laundering, Plaintiff fares no better because he does not allege that the Jump Defendants knew of any wrongdoing or knowingly transacted with criminal proceeds.  And with respect to obstruction of justice, his theory against the Jump Defendants is not supported by a single factual allegation.

*Second*, even assuming Plaintiff alleged that the Jump Defendants committed predicate acts of racketeering activity, he does not come close to alleging a *pattern* of continuous criminal activity.  To allege such a pattern, he must plead, on a defendant-by-defendant basis, criminal activity taking place over at least two years.  Yet, Plaintiff alleges only that Jump Trading and Mr. Kariya tweeted about UST and that Jump Trading provided funding to the Luna Foundation Guard ("LFG") and Terraform Labs ("TFL") over the course of a single year.

*Third*, Plaintiff fails to properly allege either injury or facts suggesting that the Jump Defendants were the "but-for" or proximate cause of any harm he may have suffered.  Although this is a putative class action, Plaintiff must allege that the Jump Defendants' alleged RICO violation caused *him* harm.  However, Plaintiff does not allege the specifics of which tokens he bought, when he bought them, or how the Jump Defendants' limited alleged conduct during the final year of that period caused the harm that he purportedly suffered.  In fact, Plaintiff admits that the value of UST relied on an algorithm that "*depended on forces outside Defendants' control*," a concession that breaks the causal chain between any purported conduct by the Jump Defendants and Plaintiff's injury.  *See* Am. Compl. ¶ 168 (emphasis added).  Thus, Plaintiff at best claims that he and other putative class members were injured "by reason of" the independent actions of

unknown investors who presumably relied on all information disseminated to the market, but such a fraud-on-the-market theory is inapplicable in a RICO case.

*Fourth*, because Plaintiff's substantive RICO claim fails, so too does his RICO conspiracy claim.   In addition, Plaintiff does not assert that Jump Trading or Mr. Kariya consciously or knowingly agreed to be a part of a conspiracy.

*Finally*, to the extent the Terms of Service related to the Terra site and Anchor Protocol interface bind class members, their claims must be arbitrated.

Accordingly, the Amended Complaint must be dismissed against the Jump Defendants.

## STATEMENT OF RELEVANT ALLEGATIONS

The Jump Defendants incorporate by reference the background section in the Motion to Dismiss filed by TFL, LFG and Do Kwon (ECF No. 58, "TFL Motion"), which sets forth relevant alleged history and technology related to the Terra ecosystem.   In addition to that detailed overview, the Jump Defendants summarize below the allegations made against them specifically.[1]

Jump Trading was a third-party investor in the Terra ecosystem and provided funding to its developers, TFL, through its cryptocurrency arm, Jump Crypto.   *See generally* Am. Compl. ¶¶ 26, 123, 125, 138.   Mr. Kariya is alleged to be the President of Jump Crypto, which Plaintiff claims is a "d/b/a" for Jump Trading.   *Id.* ¶¶ 26-27.

Though Plaintiff alleges the Terra Ecosystem began with an April 2019 whitepaper and launched in May 2019, *id.* ¶¶ 51, 62, he does not allege the Jump Defendants did anything whatsoever for the first two years of its existence.   *See generally* Am. Compl.   Rather, the first

---

[1] The Jump Defendants dispute many of the allegations in the Amended Complaint and accept them as true only for the purposes of this motion.

allegations specific to Jump Trading and Mr. Kariya are from May 2021 and September 2021, respectively, and are limited to the following:

1. *Specific Allegations Against Jump Trading*

- Jump "bail[ed] out" UST with "an infusion of money" in May 2021.  *Id.* ¶¶ 26, 123-24.

- "On October 14, 2021, Jump retweeted its partner, Terraform Labs, touting that 'Terra's ecosystem sprint into the end of the year is gonna be a sight to behold.'"  *Id.* ¶ 221.

- On October 19, 2021, Jump (1) tweeted "congratulations" to "[Terraform] and [Wormhole] teams on a big day! We're excited to see the future of cross-chain interoperability when $UST is unleashed in a trust-minimized fashion across the highest value ecosystems," and (2) "retweeted Wormhole and Terraform Labs touting that 'Terra is known for its vibrant ecosystem, #LUNAtic community, and its decentralized stablecoin, $UST.'"  *Id.*

- On November 12, 2021, Jump "retweeted its partner, Terraform Labs, promoting their new website."  *Id.* ¶ 221.

- Jump purchased LUNA tokens in a private sale from the LFG to establish a Bitcoin reserve for UST sometime around February 2022.  *Id.* ¶¶ 26, 136, 138.

- "On February 22, 2022, Jump endorsed [Mr.] Kariya's comments, stating in a tweet: 'As @KariyaKanav has mentioned, the UST Forex Reserve will strengthen confidence in the peg [g]iving users confidence by following central banks that hold a variety of foreign currencies to protect against severe market risks.'"  *Id.* ¶ 140.

- On February 22, 2022, "Jump promoted its relationship with Terraform Labs and the future prospects of UST: 'We're excited to share our latest collaboration with [Terraform Labs]. . . . Our goal is to make DeFi more accessible and meaningful for everyone. . . . By making $UST more accessible we can create the decentralized finance world that keeps us moving forward.'"  *Id.* ¶ 142.

- On unspecified additional dates, "Jump continued to promote its relationship with Terraform labs [sic] by consistently retweeting the Company when it was touting its own ecosystem."  *Id.* ¶ 143.

2. *Specific Allegations Against Mr. Kariya*

- On September 14, 2021, Mr. Kariya tweeted that it was "a real pleasure working with [Do Kwon] and the Terra team over the last couple years."  *Id.* ¶ 218.

- On January 19, 2022, Mr. Kariya retweeted Terraform Labs' announcement of the formation of the LFG.  *Id.* ¶ 126.

- On January 28, 2022, Mr. Kariya tweeted his opinion in response to some "confusion and panic" concerning UST, stating that "[i]t's difficult to imagine a sustained mass exodus to UST given the circumstances," but if that were to occur, "there is potential for UST to be sold/burned and provide some downward pressure on Luna price." *Id.* ¶ 134.  "Defendant Kariya added that a '$450M contraction of the economy (assuming a highly conservative 50% don't find the UST useful anymore) should be manageable over a couple days and not impactful to prospects of the project. Crazily enough, on this 'bearish' day, there has been a net burn of LUNA.'"  *Id.*

- On February 22, 2022, Mr. Kariya tweeted his opinion that a reserve would "further strengthen[] confidence in the peg [because] [i]t can be used to help protect" it and compared this reserve to "how many central banks hold reserves of foreign currencies to back monetary liabilities and protect against dynamic market conditions." *Id.* ¶ 139.

- On March 1, 2022, Mr. Kariya appeared on a talk show with Mr. Kwon and explained how the LFG reserve would be useful, that the LFG planned to increase the reserve, and how Wormhole was in the process of being built.  *Id.* ¶ 146.  Plaintiff also alleges that Mr. Kariya and Mr. Kwon promoted their "long standing relationship . . . dating back to 2019," *id.*, but does not provide additional information about this unspecified relationship.

- "On March 8, 2022, [Mr.] Kariya announced that 'UST is in high demand atm and is generally trading at a premium.'" *Id.* ¶ 147.

- On March 17, 2022, Mr. Kariya "tweeted promoting the Anchor Protocol's 'first birthday' and 'first step to the interchain' powered by Jump backed Wormhole." *Id.* ¶ 154.

Plaintiff only generally alleges that "[s]ince he began with the Enterprise, [Mr.] Kariya had made the false statements," *id.* ¶ 218, and that "Jump and [Mr.] Kariya disseminated numerous false statements concerning the Terra Ecosystem, and the stability and demand for the UST stablecoin and its sister coin LUNA." *Id.* ¶ 222.  Plaintiff never alleges, however, that any specific statement attributed to the Jump Defendants was false, and he does not include any other statements made by the Jump Defendants.

## ARGUMENT

As explained below, Plaintiff fails to plead the requisite elements of a RICO claim under 18 U.S.C. § 1962(c): "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Picard v. Kohn*, 907 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) (Rakoff, J.) (citation omitted); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(a)–

(c)).   In addition, Plaintiff's conclusory assertions against all Defendants in the Amended Complaint fall far short of establishing each element of § 1962(c) as to each defendant individually.  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *Sullivan v. Barclays PLC*, 2017 WL 685570, at *34–35 (S.D.N.Y. Feb. 21, 2017) (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).  Furthermore, Plaintiff is not even eligible to sue, as he has not established both that he was injured in his "business or property by reason of" a violation of § 1962 by the Jump Defendants, *see* 18 U.S.C. § 1964(c), and that the Jump Defendants' alleged "injurious conduct is both the factual and the proximate cause of the injury alleged."  *Picard*, 907 F. Supp. 2d at 396–97 (citation omitted).

Plaintiff also fails to allege any facts showing "a conscious agreement among the defendants" to form a conspiracy.  *See id.* at 400 (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)); *accord Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d Cir. 1999) (a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions") (citation omitted).  As such, Plaintiff does not meet his pleading burden under § 1962(d) as to the Jump Defendants: "[A] plaintiff must plead as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of [that] co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same." *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 439 (S.D.N.Y. 2019) (Rakoff, J.).

## I.   Plaintiff Does Not State A RICO Claim Because He Does Not Sufficiently Allege The Jump Defendants Committed A Single Predicate Act Of Mail Or Wire Fraud, Money Laundering, Or Obstruction Of Justice

While Plaintiff advances three predicate act theories—mail or wire fraud, money laundering, or obstruction of justice—he does not plead the elements of a single one and therefore does not state a claim for a RICO violation.  *See* 18 U.S.C. § 1961(1).

6

### A. Plaintiff Fails To Allege That The Jump Defendants Committed Mail Or Wire Fraud Because He Does Not Allege They Made A False Statement Of Fact Or Acted With Scienter

Plaintiff does not plead predicate acts of mail or wire fraud because he does not plead each of the elements with particularity: (1) a scheme to defraud, (2) to get money or property, (3) furthered by use of interstate mail or wires. *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (citation omitted); Fed. R. Civ. P. 9(b). To plead a "scheme to defraud," Plaintiff must allege that a particular defendant made "a material misrepresentation." *See Williams*, 889 F.3d at 124 (citing *Neder v. United States*, 527 U.S. 1, 25 (1999)). Generalized accusations cannot satisfy that requirement. Instead, Plaintiff must describe "the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 124–25 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "In addition to alleging the particular details of a fraud, [plaintiff] 'must allege facts that give rise to a *strong* inference of fraudulent intent.'" *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004); *accord Mills*, 12 F.3d at 1176.

### 1. Plaintiff Does Not Plead Any Material Misrepresentations By The Jump Defendants

First, except for arguably two tweets addressed below, none of the tweets attributed to the Jump Defendants in the Amended Complaint even contains a statement of fact. Instead, Plaintiff alleges tweets by "Jump Crypto" and Mr. Kariya that merely express enthusiasm for the development of the Terra Ecosystem, predict that the creation of a reserve for the UST system would increase user "confidence in the peg," or describe goals for the future of the DeFi space.[2]

---

[2] Nor does Plaintiff allege that the Jump Defendants' mere retweets of the statements of others (1) are false or (2) constitute adoption by the Jump Defendants of those statements. *See* Am. Compl. ¶¶ 126, 143, 221; *Flynn v. Cable News Network, Inc.*, 2022 WL 3334716, at *5 (S.D.N.Y. Aug. 12, 2022) ("a retweet is not necessarily an endorsement of the original tweet" and "[t]here are many reasons that someone might retweet a statement").

*See, e.g.*, Am. Compl. ¶¶ 134, 140, 142–43, 146–47, 154, 218, 221.  However, neither predictions about the future nor expressions of optimism such as those in the tweets are actionable statements of fact.  *See In re Security Cap. Assurance Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 597 (S.D.N.Y. 2010); *Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 163 (S.D.N.Y. 1986) ("When a broker calls a bond 'marvelous,' or says a stock is so 'red hot' that the investor 'could not lose,' or claims that his primary purpose is to make money for the customer, the reasonable investor is presumed to understand that this is nothing more than 'the common puff of a salesman,' not a material factual misstatement.") (citations omitted).  Here, the Jump Defendants' tweets supporting the project are nothing more than the predictable enthusiasm of alleged token purchasers and fall short even of the "could not lose" rhetoric that the *Newman* court found to be non-actionable.  *Id.*

        With respect to the two tweets that come closest to expressing a statement of fact—Mr. Kariya's alleged January 28, 2022 tweet, "[c]razily enough, on this 'bearish' day, there has been a net burn of LUNA," Am. Compl. ¶ 134, and March 8, 2022 tweet, "UST is in high demand atm and is generally trading at a premium," Am. Compl. ¶ 147— neither tweet is alleged to be false, nor are they alleged to be material to the purported fraud described in the Amended Complaint.  In other words, even assuming UST was not in high demand or trading at a premium at the time, or there was not a net burn of LUNA,[3] both tweets (1) are alleged to be dated years after the creation and promotion by others of the Terra ecosystem; and (2) were made by a person who, like the broker in *Newman*, was clearly an enthusiast of the project such that the tweets would be understood by a reasonable person as those of an advocate endorsing a product.  Accordingly,

---

[3] Plaintiff's failure to allege these two tweets are false is not an oversight on his part.  He cannot allege they are false because, in fact, they are true, which any Rule 11 investigation would have revealed.

neither tweet would have had "a natural tendency to influence" a reasonable investor to take any particular action. *See United States v. Wu*, 419 F.3d 142, 144 (2d Cir. 2005) ("a falsehood is material if it has a natural tendency to influence the decisions of the decision maker"). They are, therefore, immaterial as a matter of law. *See id.*

Second, Plaintiff does not actually allege that *any* of the tweets attributed to the Jump Defendants (all listed on pages 4-5) are false. Plaintiff merely asserts generally that "[s]ince he began with the Enterprise, Defendant Kariya had made the [*sic*] false statements," Am. Compl. ¶ 218, and that "Jump and Kariya disseminated numerous false statements concerning the Terra Ecosystem, and the stability and demand for the UST stablecoin and its sister coin LUNA." *Id.* ¶ 222. But he never alleges that any of the specific statements attributed to the Jump Defendants are false, nor does he explain in what ways they are false. This plainly does not meet the specificity requirements of Rule 9(b).

Accordingly, Plaintiff fails to allege a civil RICO claim based on a predicate act of mail or wire fraud. *See Boritzer v. Calloway*, 2013 WL 311013, at *9 (S.D.N.Y. Jan. 24, 2013) (holding "Plaintiffs' pleadings of the RICO predicate acts of fraud are insufficient as a matter of law"); *Williams*, 889 F.3d at 126 (affirming dismissal of civil RICO claims: "Neither the complaint's specific discussion of [Defendants'] allegedly deceptive tactics, nor its conclusory references to [Defendants'] fraudulent scheme, set forth a material misrepresentation with the requisite particularity."); *see also Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 420–24 (E.D.N.Y. 2017) (granting motion to dismiss RICO claim because "plaintiffs have failed to plead their predicate mail and wire fraud claims with particularity").

### 2. *Plaintiff Does Not Plead That The Jump Defendants Acted with Scienter*

Plaintiff also fails to plead the required *mens rea* element of mail or wire fraud because he does not assert a single, non-conclusory allegation about the Jump Defendants' intent and offers

9

no facts from which this Court could draw a "strong inference" of scienter.  Instead, Plaintiff repeatedly claims, without supporting factual allegations, that unspecified "Defendants" "knew" the Terra ecosystem was "unsustainable" and doomed to fail.  *See, e.g.*, Am. Compl. ¶ 7 ("Defendants knew" that "the UST coin, and the Terra Ecosystem more broadly (including Luna), were destined to fail from the start"), *id.* ¶ 9 (same), *id.* ¶ 18 ("Defendants knew that the Terra Ecosystem would fail"), ¶ 174 ("Defendants knew the Terra ecosystem was unsustainable").  But repetition does not make particularity.  These conclusory allegations fail to satisfy Plaintiff's obligation to plead scienter for two reasons.

First, Plaintiff's threadbare allegations that "Defendants knew" that the Terra ecosystem was unsustainable fail even under the lower pleading standard of Federal Rule of Civil Procedure 8 (let alone the heightened pleading requirements of Rule 9(b)) because he improperly lumps all Defendants together.  *See Atuahene*, 10 F. App'x at 34 (affirming dismissal under Rule 8 because plaintiff "lump[ed] all the defendants together" and "provid[ed] no factual basis to distinguish their conduct"); *Kinra v. Chicago Bridge & Iron Co.*, 2018 WL 2371030, at *6 (S.D.N.Y. May 24, 2018) ("Scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading.") (citation omitted).

Second, the bald assertion that Jump Trading or Mr. Kariya "knew" Terra was "unsustainable" does not meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  *See First Cap. Asset Mgmt.*, 385 F.3d at 179.  Rather, Plaintiff must allege facts giving rise to a "*strong* inference" that a particular Defendant had fraudulent intent.  *See id.*; *Rosenheck v. Rieber*, 932 F. Supp. 626, 628 (S.D.N.Y. 1996) (Rakoff, J.) (dismissing RICO claims: "the Complaint fails to allege any particulars from which a reasonable person could deduce that

[defendant] had such actual knowledge of falsity, let alone factual circumstances giving rise to a strong inference that she had the requisite fraudulent intent").  Plaintiff fails to do so.

Plaintiff's apparent attempt to rely on a 2022 blog post by Remi Tetot (a person who is not alleged to be associated with the Jump Defendants) for this purpose is misplaced and misrepresentative.  *See* Am. Compl. ¶ 18.  Plaintiff alleges that Mr. Tetot's blog post states the following:

> Despite their many statements in support of UST, the Anchor Protocol, and the entire Terra Ecosystem, Defendants knew that the Terra Ecosystem would fail.  In a stunning blog post describing the collapse, Defendant Tetot, a Governing Council member of the Luna Foundation Guard admitted that: "***we knew it wasn't sustainable***."

*Id.*  As an initial matter, the full quote makes clear that the phrase "we knew it wasn't sustainable" refers to the long term sustainability of the Anchor Protocol's 20% yield, *not* the viability of the whole ecosystem.  *See* Am. Compl. ¶¶ 169–71 (including Tetot's actual statement that the Anchor Protocol's "20% yield was essentially the marketing budget and the cost of customer acquisition, we knew it wasn't sustainable but I think it was acceptable for the time being, yield should have been dynamic as the system gr[e]w").  Plaintiff, however, does not allege the Jump Defendants made any statements about the Anchor Protocol yield.

Moreover, and in any event, this allegation does not give rise to a "strong inference" that the Jump Defendants acted with scienter.  *See First Cap. Asset Mgmt.,* 385 F.3d at 179; *Rosenheck*, 932 F. Supp. at 628.  While Mr. Kariya allegedly served on the Governing Council of the LFG along with Mr. Tetot, *see* Am. Compl. ¶ 132, it does not follow that Mr. Kariya or Jump Trading shared Mr. Tetot's knowledge or opinions.  In fact, although Plaintiff's selective quotation of Mr. Tetot's blog post conveniently ignores it, Mr. Tetot explicitly states in the first sentence of that

blog post that he was not purporting to speak about what others knew or intended.[4]  Other than this deficient, misleading reference to Mr. Tetot's assertion, the Amended Complaint is entirely devoid of a single specific allegation that the Jump Defendants had knowledge of any alleged falsity.

Similarly, Plaintiff's allegations with respect to Jump Trading's "bail out" of UST in 2021, *see* Am. Compl. ¶¶ 123–25, do not give rise to an inference that any of the Jump Defendants' alleged statements were made with scienter.  Plaintiff alleges that after UST lost its peg in May 2021, Mr. Kwon sought and received an investment from Jump Trading, that Jump Trading's investment (and not organic demand) is what caused UST thereafter to stabilize, and that Jump Trading's investment was not disclosed to the public.  Even if true, however, those allegations do not help Plaintiff here because he does not claim that the Jump Defendants ever said anything to the contrary or had a duty to disclose the investment.  *See United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000) (explaining duty to disclose arises only if a fiduciary duty exists or if there are "partial or ambiguous statements [by Defendant] that require further disclosure in order to avoid being misleading").

Lastly, general allegations "of motive and opportunity" by a defendant do not suffice to allege scienter.  *First Cap. Asset Mgmt.*, 385 F.3d at 179–80.  Plaintiff's conclusory assertion that Mr. Kariya had a "motive to funnel profits directly to himself and opportunity to commit this

---

[4] The Court may consider the entirety of the blog post because Plaintiff relies heavily on it, and therefore, it is "integral" to the complaint.  *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  Plaintiff conveniently leaves out: "**Before going into this, I want to clarify that this is my personal opinion**; I am trying to be as clear as possible, but my emotions are strong, so it might feel messy sometimes; I apologize for this in advance if this is the case. **This article is meant to acknowledge why own [sic] mistakes along the Luna journey, not to put the blame on anyone or analyze TFL or LFG actions during the collapse.**"  Remi Tetot, *Luna—The fall of a giant*, Medium (June 2, 2022), https://medium.com/@remi.tetot/luna-the-fall-of-a-giant-af0244cce8e5 (emphasis added).

fraud," Am. Compl. ¶ 218, is insufficient to plead that he acted with the intent required to state a

RICO claim against him.  *See id.*; *see also Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir.

1996) (holding, in the securities fraud context, that "a generalized motive, one which could be

imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of

inferring scienter" and "does not support a strong inference of fraudulent intent").

In sum, because Plaintiff has failed to allege any facts giving rise to a strong inference of

scienter with respect to Jump Trading or Mr. Kariya, he cannot establish a predicate act of mail or

wire fraud.  *See Rosenheck*, 932 F. Supp. at 628 (Rakoff, J.) (dismissing RICO claim for failure to

allege factual circumstances giving rise to a strong inference of fraudulent intent).

### B. Plaintiff Does Not Adequately Allege Money Laundering Because He Fails To Plead That The Jump Defendants Knew Alleged Transactions Included Criminal Proceeds

Plaintiff's attempt to predicate his RICO claim on money laundering also fails.  Assuming

Plaintiff intended to allege violations of the money laundering statute, 18 U.S.C. § 1956, rather

than violations of 18 U.S.C. §§ 1341, 1343,[5] Plaintiff must first show: "(1) that the defendant

conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified

unlawful activity as defined in § 1956(c)(7); [and] (3) that the defendant knew that the property

involved in the financial transaction represented the proceeds of some form of unlawful activity."

*Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 322 (S.D.N.Y. 2014) (quoting *United States v. Maher*,

108 F.3d 1513, 1527–28 (2d Cir. 1997)).  Plaintiff must then make one of two additional showings:

(a) that Defendants knew "the transaction was designed in whole or in part . . . to conceal or

---

[5] Oddly, Plaintiff alleges money laundering "in [v]iolation of 18 U.S.C. §§ 1341, 1343," which are the mail and wire fraud statutes, instead of the money laundering statute, 18 U.S.C. § 1956.  *See* Am. Compl. ¶¶ 282–287.  If intentional, the money laundering allegations should not be considered as predicate acts for the additional reason that the RICO statute's definition of "racketeering activity" enumerates "laundering" in violation of § 1956, not the fraud statutes.

disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," or (b) that the Defendant conducted or attempted to conduct the transaction "with the intent to promote the carrying on of specified unlawful activity." *Id.* at 322 (citing 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i)).

The Amended Complaint does not satisfy these elements. Plaintiff claims that unspecified "Defendants" committed money laundering by "engag[ing] in numerous financial transactions" related to mail and wire fraud and "siphoning funds away from the Terra Ecosystem" for their own profit. *See, e.g.*, Am. Compl. ¶¶ 282–85.[6] However, he never specifies which of the "Defendants" participated in these actions, nor what each Defendant did specifically. Even if the Jump Defendants are the "Defendants" to which Plaintiff refers, he never alleges that Jump Trading or Mr. Kariya specifically *knew* that any supposed transactions constituted the proceeds of a crime, were meant to conceal a crime, or were designed to promote unlawful activity. *See Tymoshenko*, 57 F. Supp. 3d at 322–23. Plaintiff conclusorily asserts that "Defendants knew that the property involved in these financial transactions represented the proceeds of unlawful activities, namely, mail and wire fraud," Am. Compl. ¶ 285, but does not include any facts particular to Jump Trading or Mr. Kariya to support this allegation. This is deficient as a matter of law. *See Entretelas Americanas S.A. v. Soler*, 2020 WL 9815186, at *10 (S.D.N.Y. Feb. 3, 2020) (dismissing RICO money laundering claim: "the Complaint does not allege that Soler knew that the monies he

---

[6] Additionally, any money laundering allegations fall with Plaintiff's mail or wire fraud claim because they necessarily depend on Plaintiff showing that the funds at issue were the proceeds of unlawful activity. *See Tymoshenko*, 57 F. Supp. 3d at 322–23. However, as detailed above and in TFL's Motion, Plaintiff has not pled a mail or wire fraud claim, and thus any funds at issue are not "derived from or obtained or retained, directly or indirectly" from wire fraud or other unlawful activity. *See Novomoskovsk Joint Stock Co. "Azot" v. Revson*, 1998 WL 3352, at *2 (S.D.N.Y. Jan. 5, 1998) (Rakoff, J.) (denying reconsideration of dismissal of RICO claim because none of the "alleged acts of money laundering . . . relates to the surviving fraud allegations" and thus "none of the proceeds . . . could constitute the 'proceeds of unlawful activity'").

supposedly transferred to American banks were the product of illegal activity, or that Soler knew that his transfer would conceal the illegal monies"), *aff'd*, 840 F. App'x 601 (2d Cir. 2020).

Moreover, Plaintiff does not allege facts that can meet either of the two additional required showings.  *See Tymoshenko*, 57 F. Supp. 3d at 322 (citing 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i)).  As explained in detail above in Section I(A)(2), Plaintiff does not adequately allege either defendant acted with scienter with respect to the alleged transactions, *i.e.*, that the Jump Defendants knew "the transaction [was] designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," or that they conducted or attempted to conduct the transaction "with the intent to promote the carrying on of specified unlawful activity."  18 U.S.C. § 1956.  Thus, Plaintiff fails to plead the *mens rea* required for money laundering and cannot assert it as a predicate act.  *See Tymoshenko*, 57 F. Supp. 3d at 323 (plaintiff failed to plead predicate act of money laundering because the complaint "d[id] not allege—or justify an inference—that the defendants involved acted with the intent required by 18 U.S.C. § 1956").

## C.  Plaintiff's Single-Sentence "Obstruction of Justice" Theory Fails As A Matter Of Law

Plaintiff's one-sentence attempt to plead predicate acts of "obstruction of justice" pursuant to 18 U.S.C. § 1503 also falls short, for two reasons.  First, although Plaintiff suggests in a header that Defendants obstructed justice in "multiple instances," Am. Compl. ¶ 289, he does not actually specify a single concrete instance.  Rather, in the sole sentence devoted to this theory, he generally asserts only that "Defendants have unlawfully obstructed justice by hiding their criminal scheme from law enforcement, including the SEC, and international law enforcement authorities, including without limitation, Interpol."  *Id.*  No further detail is alleged.

Second, Plaintiff does not claim that alleged obstruction took place *during* the operation of

15

the alleged criminal enterprise or in connection with a federal court proceeding, as the law requires. As the Second Circuit explained in *O'Malley v. New York City Transit Authority*, the RICO statute defines "racketeering activity" to include obstruction of justice only under 18 U.S.C. § 1503, evidencing "clear indicia of congressional intent to limit RICO's obstruction of justice to ***federal court proceedings***." *See* 896 F.2d 704, 707–08 (2d Cir. 1990) (emphasis added); *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019) (explaining alleged acts of concealment done after the conspiracy objectives have been attained are not considered part of RICO conspiracy). Plaintiff does not allege that the Jump Defendants did anything to interfere with an ongoing federal court proceeding during the supposed conspiracy.

Accordingly, this allegation fails as a matter of law. *Id.* at 444 ("Here, the alleged acts of concealment were all done allegedly to cover the defendants' tracks after the goal of the alleged conspiracy had been attained. Therefore, they cannot be found to be predicate acts for the purposes of the DNC's RICO claim."); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000) (plaintiff's claim failed as a matter of law "because the federal obstruction of justice statute only applies to proceedings in federal court" (citing *O'Malley*, 896 F.2d at 707)), *aff'd*, 1 F. App'x 7 (2d Cir. 2001).

## II.   Plaintiff Does Not Allege A "Pattern" Of Racketeering Conduct By The Jump Defendants Because Their Alleged Conduct All Occurred Within A Single Year

Even if Plaintiff had adequately alleged the predicate acts described above, he does not come close to alleging a *pattern* of related conduct because he does not allege either Jump Trading or Mr. Kariya "individually" committed related predicate acts "over a substantial period of time." *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004). To establish a "pattern," Plaintiff must show that predicate acts of racketeering activity by a particular Defendant are related and that there is "continuity" of criminal activity over at least ***two years***. *See*

*In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 438–39 (S.D.N.Y. 2019) (Rakoff, J.); *First Cap. Asset Mgmt.*, 385 F.3d at 181 ("Notably, this Court has never found a closed-ended pattern where the predicate acts spanned fewer than two years.") (collecting cases). "In analyzing the issue of continuity," the Court "assum[es] arguendo that the alleged predicate acts constituting the pattern were adequately pled," and must "evaluate the RICO allegations with respect to *each defendant individually*." *First Cap. Asset Mgmt.*, 385 F.3d at 180 (emphasis added) (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). Closed-ended continuity[7] is demonstrated by predicate acts that "amount to continued criminal activity . . . over a substantial period of time" of at least two years by a particular defendant. *DeFalco*, 244 F.3d at 321–22 (plaintiff did not establish closed-ended continuity by certain defendants because predicate acts occurred over a "period of approximately a year and a half."); *First Cap. Asset Mgmt.*, 385 F.3d at 181; *Boritzer v. Calloway*, 2013 WL 311013, at *11 (S.D.N.Y. Jan. 24, 2013).

Plaintiff fails to allege a pattern as to the Jump Defendants because, even assuming that the conduct attributed to them constituted predicate acts, all that conduct is alleged to have occurred over the course of less than a single year—between May 2021 and March 2022—and, thus, did not occur over a "substantial period of time." *See First Capital Asset Mgmt.,* 385 F.3d at 181; *Boritzer,* 2013 WL 311013, at *11. The first act attributed to Jump Trading is a "cash infusion into Terraform Labs" in May 2021, and the last acts are tweets from February 22, 2022, amounting to a span of nine months. *See* Am. Compl. ¶¶ 26, 123–24, 136, 138, 140, 142, 146. The first

---

[7] Plaintiff cannot establish "open-ended continuity" because there is no alleged "threat of continued criminal activity" now that UST and LUNA have collapsed. *See First Cap. Asset Mgmt.,* 385 F.3d at 180–81; *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d at 438–39 (explaining difference between "closed period of repeated conduct" and "past conduct that by its nature projects into the future with a threat of repetition"). Moreover, if, as Plaintiff repeatedly alleges, Defendants knew that the collapse of UST and LUNA "would inevitably occur," *see* Am. Compl. ¶¶ 44, 187, this precludes a threat of continued conduct.

predicate act attributed to Mr. Kariya is a September 14, 2021 tweet, and the last is a March 17, 2022 tweet, amounting to a span of six months. *See id.* ¶¶ 154, 218. While Plaintiff alleges that in September 2021 both Mr. Kariya tweeted that it was "a real pleasure working with [Do Kwon] and the Terra team over the last couple years," *id.* ¶ 218, and Terraform Labs tweeted about Jump having "quietly played a pivotal role in the Terra ecosystem" (with no specific timeframe), *id.* ¶ 220, these tweets alone say nothing about the nature of the working relationship between Mr. Kariya and Mr. Kwon or Jump and Terraform Labs prior to September 2021 and certainly do not spell out any predicate act during that time. Similarly, Plaintiff alleges that Mr. Kariya and Mr. Kwon appeared live together on a "twitter spaces talk show" to promote their "long standing relationship . . . dating back to 2019." *Id.* ¶ 146. Again, this general allegation that Mr. Kariya and Mr. Kwon had some unspecified working relationship in the past is patently insufficient to establish with the requisite specificity that Mr. Kariya committed any predicate act during that time. *See supra* Section I(A)–(B) (explaining that predicate acts involving fraud must be pled with particularity and must give rise to a strong inference that a defendant acted with scienter).

The facts in the Amended Complaint are insufficient to allege closed-ended continuity and therefore fail to establish a "pattern," warranting dismissal of all RICO claims against the Jump Defendants. *See In re Platinum-Beechwood Litig.*, 2019 WL 2569653, at *5 (S.D.N.Y. June 21, 2019) (plaintiff alleged acts spanning 22 months and thus failed to charge certain defendants "with enough predicate acts over a sufficient period of time to state a RICO claim" (citing *First Cap. Asset Mgmt.*, 385 F.3d at 182)); *First Cap. Asset Mgmt.*, 385 F.3d at 182 (dismissing RICO claim against defendant because the alleged predicate acts attributed to defendant "which span barely seven months, do not extend over a sufficiently long period of time to satisfy the requirements of closed-ended continuity"); *see also Picard v. Kohn*, 907 F. Supp. 2d 392, 400–01 (S.D.N.Y. 2012)

(Rakoff, J.) (noting failure to plead facts supporting "pattern" of activity).

### III.   Plaintiff Fails To Plead That His Injury Was Caused By Either Of The Jump Defendants' Alleged RICO Violations

Plaintiff fails to plead causation because: (a) he does not adequately allege what his injury was; and (b) does not demonstrate that the Jump Defendants' alleged RICO violations were the but-for, let alone proximate, cause of his injury.  To plead a RICO claim, Plaintiff must allege that he was "injured in his business or property *by reason of* a violation of section 1962."  *See Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting U.S.C. § 1964(c)).  That requires pleading "that a RICO predicate offense 'not only was a 'but for' cause of [plaintiff's] injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Plaintiff does neither.

#### A.   Plaintiff Does Not Plead Any Specific Facts About The Purported Injury To His "Business Or Property"

The Amended Complaint makes only one threadbare reference to purchase or sale activity or losses by Plaintiff:

> Plaintiff Albright purchased Luna coins and UST coins, during the Class Period, and suffered losses as a result of Defendants' conduct.

*See* Am. Compl. ¶ 22.  That is not enough.  Rather, Plaintiff must "state in [his] complaint how and to what extent []he was 'injured in [his] business or property by reason of a violation' by [defendant] of RICO."  *See, e.g.*, *D'Addio v. L.F. Rothschild Inc.*, 697 F. Supp. 698, 706 (S.D.N.Y. 1988) (noting plaintiff identified no transaction or money lost); *see also In re Basic Food Grp., LLC*, 2016 WL 3677673, at *15 (Bankr. S.D.N.Y. July 1, 2016) (finding failure to plead "clear and definite damages" and "to quantify the loss, or even suggest a methodology for doing so"); *cf. Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).   This defect alone requires dismissal of the RICO claims.

### B.  Plaintiff Does Not Allege That The Jump Defendants' Alleged RICO Violations Were The But-For Or Proximate Cause Of His Injuries

Even if Plaintiff pled an injury to his "business or property," his RICO claim must be dismissed because he relies on a causal theory inapplicable to RICO claims and otherwise does not allege facts that satisfy RICO causation requirements.   First, Plaintiff's entire theory of harm appears to be nothing more than a thinly veiled attempt to inject a fraud-on-the-market theory of reliance into the case to demonstrate causation, but that theory is inapplicable to RICO claims. Second, without the benefit of that theory, Plaintiff fails to plead any indicia that the Jump Defendants' conduct altered his (or anyone else's) conduct such that it was the but-for cause of any injuries.   And third, similar to another cryptocurrency case in this district, the Jump Defendants' alleged conduct is too remote from Plaintiff's alleged injury in the causal chain to constitute the proximate cause of that injury.

#### 1.  The "Fraud-on-The-Market" Theory Cannot Be Used to Demonstrate RICO Causation

Plaintiff does not allege a cognizable theory of causation.   Where, as here, a RICO action is predicated on alleged fraud, Plaintiff must show that "someone relied on the defendant's misrepresentations" to prove causation.   *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) ("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."); *Calabrese v. CSC Holdings, Inc.*, 2009 WL 425879, at *12 n.19 (E.D.N.Y. Feb. 19, 2009) (noting that "in the context of a RICO claim predicated on any kind of fraud, 'reasonable reliance' is essential to the showing of 'proximate causation' for a RICO injury that the Supreme Court found to be required in *Holmes*"); *Lynch v. Capital One Bank (USA), N.A.*, 2013 WL 2915734, at *3 (E.D. Pa. June 14, 2013) (discussing *Bridge* and other case law; stating,

"some form of reliance on the defendant's misrepresentation is necessary to properly establish proximate cause for a RICO violation based on mail or wire fraud").

Here, Plaintiff does not even attempt to show he or someone else relied on the Jump Defendants alleged misrepresentations. Instead, he appears to rely improperly on a "fraud-on-the-market" theory to attempt to allege reliance by investors on "public statements" by the Defendants that purportedly inflated the price of LUNA and UST and caused his injuries. *See, e.g.*, Am. Compl. ¶¶ 1, 19. Specifically, he alleges that Defendants' supposed lies artificially inflated the price of UST or LUNA, and, as a result, Plaintiff lost money when the market for those tokens eventually collapsed. *See* Am. Compl. ¶ 1 (claiming class-wide reliance "upon the public statements made by the Defendants . . . including public statements and publications on Terraform Labs' stablecoin UST and its 'sister coin', Luna."); *Id.* ¶ 251 ("Defendants conspired to artificially inflate the price of UST and Luna and then sell the same to unsuspecting users"). But that theory of reliance and causation is not available under RICO.

"The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the statements." *Basic, Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988) (citation omitted). Plaintiff's allegations are quintessential fraud-on-the-market theory allegations. *See, e.g., In re Schering-Plough Corp.*, 2009 WL 2043604, at *22 (D.N.J. July 10, 2009) (noting that "[t]he gravamen of Plaintiffs' theory of injury is that they suffered economic loss where the price of the Subject Drugs increased as a result of misrepresentations made by [defendant] in the . . . promotion of [the drugs]," and that "[t]his is, by definition, a fraud-on-the-market theory").

However, this theory is not recognized in the RICO context and thus is not a viable theory of reliance or causation here. *See, e.g.*, *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 230 (2d Cir. 2008) (refusing to apply fraud-on-the-market presumption to RICO claims); *Schering-Plough*, 2009 WL 2043604, at *20 (noting that fraud-on-the-market theory "is not cognizable under RICO" and that it "has been resoundingly rejected outside the context of federal securities fraud litigation") (collecting cases); *In re Rezulin Prods. Liab. Litig.*, 524 F.Supp.2d 436, 441 (S.D.N.Y. 2007) (noting that the Second Circuit has confined the fraud-on-the-market theory to the well-developed securities market). This is especially significant in the case since Plaintiff explicitly takes the position that the tokens at issue are not securities. *See* Am. Compl. ¶ 201-05.

2. *Plaintiff Fails To Plead "But-For" Causation Because He Does Not Allege That He (Or Anyone Else) Relied On The Jump Defendants' Purported Misrepresentations*

Without the benefit of the fraud-on-the-market theory to establish market-wide reliance and causation, the remaining facts alleged in the Amended Complaint do not even suggest that Plaintiff or anyone else would have acted differently but for the Jump Defendants' alleged statements. By definition, that means the Jump Defendants' conduct was not a "but-for" cause of Plaintiff's harm. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) (noting that "in most RICO mail-fraud cases . . . reliance will typically be a necessary step in the causal chain" because "if the person who was allegedly deceived by the misrepresentation (plaintiff or not) ***would have acted in the same way regardless of the misrepresentation***, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury" (emphasis added)).

Plaintiff asserts that other Defendants timed the launch of UST to generate demand and committed other predicate acts over two years prior to any alleged act by the Jump Defendants, which suggests that Plaintiff (and other class members) likely bought UST or LUNA prior to the

Jump Defendants' alleged predicate acts.  *See, e.g.*, Am. Compl. ¶ 71.  Even if the Jump Defendants' statements, however, precede any of Plaintiff's (unspecified) token purchases, no specific allegations establish the factual basis to conclude that Plaintiff (or anyone else) was even aware of the Jump Defendants' statements, let alone that he (or they) relied on those statements in making token purchases or sales.  *Cf. District 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 524–25 (D.N.J. 2011) (stating that "Plaintiffs may not aver 'causation by way of generalized allegations and aggregate proof,'" and adding that "without sufficient allegations of direct reliance, Plaintiffs have not properly alleged that Defendants' misrepresentations were the 'but for' cause of their injuries") (citations omitted).

### 3. The Jump Defendants' Alleged Conduct Is Too Remote From Plaintiff's Loss To Constitute A Proximate Cause Of That Loss

Taken as true, the facts alleged show the Jump Defendants' conduct did not proximately cause Plaintiff's "losses" because, as Plaintiff admits, his alleged loss came after, and as a result of, the combination of both a broader downturn in the cryptocurrency market and the actions of multiple, independent, third-party UST traders.  *See, e.g.*, Am. Compl. ¶¶ 13, 162, 168.  In other words, even if the Jump Defendants' tweets or other alleged conduct were fraudulent (which they were not), those actions were far too attenuated from Plaintiff's supposed loss to establish proximate cause.

A RICO claim requires Plaintiff to allege proximate cause, *i.e.*, a "*direct* relation between the injury asserted and the injurious conduct alleged."  *Holmes*, 503 U.S. at 259 (emphasis added). It is well established that a plaintiff may not recover damages unless his injury occurs at the "first step" in the proximate cause inquiry; relief is foreclosed when there are "independent factors" between the alleged wrongdoing and the alleged harm.  *See Hemi Grp.,* 559 U.S. at 10, 15 (denying recovery where the "theory of causation requires us to move well beyond the first step"); *Holmes*,

23

503 U.S. at 269, 271; *see also Laydon v. Coöperatieve Rabobank U.A.*, 51 F.4th 476, 491 (2d Cir.

2022) ("Plaintiff's alleged injury does not flow directly from the first step in the causal chain.");

*see also Moore v. PaineWebber, Inc.*, 189 F.3d 165, 179 (2d Cir. 1999) (Calabresi, J., concurring)

("In practice, our cases have held RICO plaintiffs to a more stringent showing of proximate cause

than would be required at common law."). This limitation exists because "the less direct an injury

is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the

violation." *Holmes*, 503 U.S. at 269.

Plaintiff does not suggest that he had "any direct dealings with" the Jump Defendants. *See*

*Laydon*, 51 F.4th at 491.[8]  Instead, the Court would have to count several links in the causal chain

before arriving at Plaintiff's (yet unquantified) injury. Indeed, Plaintiff acknowledges that any

"losses" came from the market's collapse rather than from the Jump Defendants' alleged RICO

violations. Am Compl. ¶¶ 162–65. And Plaintiff admits that this collapse depended on the actions

of third parties which influenced the algorithm central to the Terra blockchain:

> That algorithm, in turn, ***depended on forces outside of Defendants' control,***
> ***namely demand for UST, public willingness to perform stabilizing arbitrage, and***
> ***reliable price information.*** But it only took one large withdrawal to knock UST
> off its peg, prompting a death spiral that led to the coin's—and the Terra
> Ecosystem's—demise.

*See id.* ¶ 168 (emphasis added). In other words, Plaintiff acknowledges the UST market was

created (and destroyed) by market supply and demand (including "one large withdrawal"), which

---

[8] And if Plaintiff claims his injury is that he "overpaid" for tokens on the secondary market that he
purchased from others who dealt directly with Defendants, this not only violates the prohibition
on using the fraud-on-the-market theory under RICO, but his injury—if any—is derivative of those
direct investors and purchasers of the initial tokens. *Cf. In re Takata Airbag Prod. Liab. Litig.*,
524 F. Supp. 3d 1266, 1284–85 (S.D. Fla. 2021) (finding no proximate cause where the "direct
victims of the Defendants' actions are the consumers who bought cars from Defendants" and
noting that any overpayments "for vehicles on the secondary or tertiary market . . . [were]
derivative of the [c]onsumers' harm").

is driven by the independent decision-making of market participants for a litany of unspecified reasons.  And the Amended Complaint indicates that the most direct cause of the collapse was a broader downturn in the cryptocurrency market.  *See, e.g.*, *id.* ¶ 13 (noting "serious market headwinds" and a "significant softening in demand for cryptocurrencies" as a cause of the collapse); *id.* ¶ 162 (noting "the broader crypto market experienced a sharp downturn" which led to the collapse).

Because Plaintiff admits that "forces outside of Defendants' control" and a broader downturn were the most *direct* cause of any "losses," this case falls squarely into the type of injury that the court found too attenuated to support a RICO claim in *In re Tether and Bitfinex Crypto Asset Litigation* ("*Bitfinex*").  *See* 576 F. Supp. 3d 55, 114–27 (S.D.N.Y. 2021)*.*  The *Bitfinex* plaintiffs claimed that defendants stated that their stablecoin, Tether ("USDT"), was backed by U.S. dollars on a 1:1 ratio but fraudulently used "unbacked" USDT "simulat[ing] organic demand, thus creating artificial price floors."  *See id.* at 118.  When those price floors collapsed, plaintiffs sued.  In finding that plaintiffs had failed to plead proximate cause, the *Bitfinex* Court recognized that "the market—and independent buyers and sellers in the market—responded to the stimulus of the unbacked USDT that the . . . Defendants repeatedly injected into the cryptocommodity market," but observed the "establishment of a price floor is not a unilateral action and necessarily requires the independent action of other market participants, which participants may choose to buy or not buy cryptocommodities for any number of reasons."  *Id.*  Here, taking Plaintiff's allegations to be true, and assuming the Jump Defendants' words or actions purportedly created "artificial" demand like that addressed in *Bitfinex*, this "necessarily requires the independent action of other market participants" and thus breaks the causal chain.  *See id.*

In addition, this Court would be hard-pressed to attribute damages to the alleged RICO violations by Jump Trading or Mr. Kariya particularly, as they allegedly occurred well after the first purported misrepresentation by other Defendants.  Plaintiff's first allegations against Jump Trading and Mr. Kariya date to May and September 2021, respectively, two years after the first purported misrepresentation by other Defendants in April 2019.  *See* Am. Compl. ¶ 60 (citing the April 2019 Terra whitepaper).  Indeed, this Court found no proximate cause in a case where, similarly, conduct was alleged to have further sustained an allegedly fraudulent scheme.  *See Picard v. Kohn*, 907 F. Supp. 2d 392, 397 (S.D.N.Y. 2012) (Rakoff, J.).  Like in that case, it would be almost impossible here to determine "how much damage [UST] would have caused if it had not allegedly received [assistance in the form of marketing misstatements] from [the Jump Defendants]."  *Id.*  As this Court concluded previously, "[b]ecause the injury . . . investors suffered 'could have happened independently' of the 'flood of cash' by which defendants merely 'facilitated' . . . operations, the [plaintiff] has failed to plead proximate cause."  *Id.* at 397.

## IV.    Plaintiff Fails To Plead A RICO Conspiracy Claim Against The Jump Defendants Under 18 U.S.C. § 1962(d)

Plaintiff's RICO conspiracy claim fails because: (1) he fails to plead a substantive RICO violation by any Defendant; (2) he does not allege the Jump Defendants agreed to join a conspiracy; and (3) no alleged conduct by other Defendants from before May 2021 can be attributed to the Jump Defendants in order to establish the continuity needed to show a pattern of racketeering acts since the allegations cannot establish a pre-existing conspiracy.

First, because Plaintiff fails to adequately plead a substantive RICO violation by any Defendant, his conspiracy claim fails as a matter of law.  *See supra*; TFL Motion; *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("[B]ecause [the] [p]laintiffs did not adequately allege a substantive violation of RICO . . . the District Court properly

dismissed . . . a RICO conspiracy in violation of 18 U.S.C. § 1962(d)"); *Picard v. Kohn*, 907 F. Supp. 2d 392, 401 (S.D.N.Y. 2012) (dismissing RICO conspiracy claim because plaintiff failed to plead elements of underlying RICO claim (quoting *First Cap.*, 385 F.3d at 182)).

Second, Plaintiff fails to allege that Jump Trading or Mr. Kariya "conscious[ly] agree[d]" to join a conspiracy, which is the key component of a § 1962(d) claim. *See Picard*, 907 F. Supp. 2d at 401 (plaintiff failed to provide "some factual basis for a finding of a conscious agreement among the defendants") (citation omitted); *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21, 25 (2d Cir. 1990) (noting "the core of a RICO civil conspiracy is an agreement to commit [at least two] predicate acts," and thus plaintiffs "must allege specifically such an agreement").  At no point in the Amended Complaint does Plaintiff allege any objective manifestation of the Jump Defendants' agreement to participate in a RICO enterprise through the commission of predicate acts.  Defendants' alleged "close business relationships" and "coordination" in connection with their transactions, Am. Compl. ¶ 294, does not establish an agreement for purposes of a civil conspiracy claim, especially where Jump Trading's actions are at least as consistent with its ordinary business operations.  *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048, 1051 (D.C. Cir. 2012) (finding that allegations failed to establish law firm's knowledge of or agreement to participate in RICO conspiracy and firm's representation of bad actor was "'more likely explained by' its normal business practice of providing legal services"); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A*., 119 F.3d 935, 949–51 (11th Cir. 1997) (allegations of actions taken in course of normal business conduct, and of affiliation between corporate defendants, fail to establish RICO conspiracy claim); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (noting that even where conduct "[i]s consistent with an unlawful agreement," "it d[oes] not plausibly suggest an illicit accord" to the extent "it [i]s not only compatible with, but

indeed [i]s more likely explained by, lawful" economic behavior).  As for Mr. Kariya, Plaintiff's allegations that Mr. Kariya voiced enthusiasm for UST in six tweets spanning from September 2021 through March 2022, Am. Compl. ¶¶ 126, 134, 139, 147, 154, 218, and built a good relationship with Mr. Kwon over time, *id.* at ¶¶ 146, 218, do not support an inference that he consciously agreed to join a conspiracy and are at least as likely explained by lawful behavior.

Third, even if any other Defendant violated § 1962(c), neither Jump Trading nor Mr. Kariya were alleged to have done more than associate with other Defendants prior to May 2021.  "To establish the existence of a RICO conspiracy," Plaintiff must prove that "if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244–45 (2d Cir. 1999); *accord Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 2013 WL 12368698, at *13 (E.D.N.Y. Feb. 19, 2013) (noting that plaintiffs failed to allege RICO conspiracy because "they did not adequately allege the requisite continuity necessary to sustain such a RICO violation" (citing *Cofacredit, S.A.*, 187 F.3d 244–45)).  Thus, even if the Jump Defendants agreed to a scheme to commit a RICO violation beginning in May 2021, the § 1962(d) claim would still fail due to the lack of continuity sufficient to satisfy the required pattern of racketeering.

Notably, in any event, Plaintiff fails to plead the existence of any pre-existing conspiracy prior to May 2021 that the Jump Defendants could have agreed to join.  Critically, this means that no other Defendant's prior conduct could be attributed to either of the Jump Defendants to demonstrate continuity of the alleged scheme.

A conspiracy requires an agreement between two or more persons, and until Jump Trading's alleged involvement in May 2021, TFL and its employees, Kwon and Platias, were the only alleged participants in the scheme.  *See* Am. Compl. ¶¶ 2, 25.  But under the intracorporate

conspiracy doctrine, Kwon and Platias could not, as a matter of law, conspire with TFL while promoting its algorithmic stablecoin. *See Merhej v. I.C.S. Int'l Custody Sys., Inc.*, 2014 WL 104908, at \*4 (S.D.N.Y. Jan. 9, 2014); *Nollah v. New York City*, 2018 WL 4636847, at \*4 (S.D.N.Y. Sept. 27, 2018) ("The intra-corporate conspiracy doctrine prohibits claims against the employees of the same entity acting within the scope of their employment, because they 'are considered a single entity and are legally incapable of conspiring with each other'" (quoting *Biswas v. City of New York*, 973 F. Supp. 2d 504, 534 (S.D.N.Y. 2013))).

Thus, the Jump Defendants could not have joined a pre-existing conspiracy in May 2021, so no acts that occurred prior to May 2021 can be attributed to them. *See Lopez v. Council on American-Islamic Rels. Action Network, Inc*., 657 F. Supp. 2d 104, 113 (D.D.C. 2009) (concluding no conspiracy existed where alleged scheme included only one perpetrator and "[a]s a result, the prior predicate acts of mail and wire fraud by Days, which led to the plaintiffs' monetary losses, cannot be attributed to the RICO Defendants through a conspiracy theory.") (citations omitted), *aff'd*, 383 F. App'x 1 (D.C. Cir. 2010).

In sum, Plaintiff simply does not make specific factual allegations from which it can be inferred that Jump Trading or Mr. Kariya consciously agreed to commit predicate acts with knowledge of the scope of the enterprise and intent to further its affairs through two or more predicate acts. Thus, Plaintiff's RICO conspiracy claim against them must be dismissed.

## V.   Purported Class Members Subject To Terra Or Anchor Terms Of Service May Not Proceed In This Action

The Jump Defendants incorporate by reference the arguments in TFL's Motion concerning certain proposed class members' release of claims, agreement to arbitrate, and waiver of the right to pursue class claims. *See* TFL Motion at 42.

To the extent that Plaintiff is subject to the Terms of Service for either the Anchor Protocol or the Terra.Money website (or other protocols or sites in the Terra ecosystem that have such terms), he must arbitrate his claims and cannot allege class action claims.  The Jump Defendants can enforce any such arbitration provisions because the factual allegations here are "intertwined with the agreement that the estopped party has signed" and Plaintiff alleges a close relationship between the Defendants.  *See Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) (holding because RICO plaintiffs alleged "defendants acted in concert to defraud plaintiffs . . . plaintiffs cannot now escape the consequences of those allegations by arguing that . . . defendants lack the requisite close relationship"); *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643–44 (2020) (recognizing nonsignatories may enforce agreements to arbitrate on various state law grounds).

## CONCLUSION

For all the foregoing reasons, the Jump Defendants respectfully request that the Court dismiss the Amended Complaint as to Mr. Kariya and Jump Trading.


Dated:  New York, New York
        December 5, 2022

Respectfully submitted,

KOBRE & KIM LLP

/s/Jonathan Cogan
Jonathan Cogan
Steven W. Perlstein
Amanda Tuminelli
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Email: steven.perlstein@kobrekim.com
Email: jonathan.cogan@kobrekim.com
Email: amanda.tuminelli@kobrekim.com
*Attorneys for Defendant Jump Trading, LLC*

ZUCKERMAN SPAEDER LLP

/s/Aitan Goelman
Aitan Goelman
Nell Z. Peyser
1800 M Street, NW, Suite 1000
Washington, DC 20036
Telephone: (212) 778-1800
Email: agoelman@zuckerman.com
Email: npeyser@zuckerman.com

*Attorneys for Defendant Kanav Kariya*