# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW ALBRIGHT, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>-against-<br><br>TERRAFORM LABS, PTE. LTD., JUMP TRADING LLC, DELPHI DIGITAL CONSULTING, INC., DO KWON, NICHOLAS PLATIAS, LUNA FOUNDATION GUARD LTD., JOSE MACEDO, KANAV KARIYA, and REMI TETOT,<br><br>               Defendants. | Case No. 1:22-cv-07281-JSR<br><br>Hon. Jed S. Rakoff<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DELPHI DIGITIAL CONSULTING, INC.'S MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF ALLEGATIONS ......................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.        STANDARD OF REVIEW .................................................................................... 5

II.       PLAINTIFF FAILS TO ALLEGE A RICO VIOLATION AGAINST DELPHI ............. 6

          A.        Plaintiff Fails to Allege that Delphi Engaged in Racketeering Activity ................ 7

                    1.        Allegations of Mail and Wire Fraud Fail ...................................... 7

                    2.        Allegations of Money Laundering Fail ...................................... 11

                    3.        Allegations of Obstruction of Justice Fail. ................................ 13

          B.        Plaintiff Fails to Allege a Pattern of Racketeering Against Delphi ..................... 14

          C.        Plaintiff Fails to Allege Delphi Proximately Caused His Purported Injuries ....... 18

III.      PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THAT DELPHI CONSPIRED TO
          VIOLATE RICO .................................................................................................... 20

IV.       THE CLASS CLAIMS SHOULD BE DISMISSED .................................................. 22

CONCLUSION ........................................................................................................................ 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
   771 F. App'x 498 (2d Cir. 2019) ............................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................5, 6, 17

*Beck v. Mfgs. Hanover Trust Co.*,
   820 F.2d 46 (2d Cir. 1987) ..................................................................................9, 10

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ...............................................................................................18

*Chandradat v. Navillus Tile*,
   No. 03 CIV. 10093 (RJH), 2004 WL 2186562 (S.D.N.Y. Sept. 28, 2004) ..............6, 7, 18, 20

*In re Citigroup Auction Rate Sec. Litig.*,
   700 F. Supp. 2d 294 (S.D.N.Y. 2009) ...................................................................22

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
   187 F.3d 229 (2d Cir. 1999) ..........................................................................15, 17, 21

*Dale v. Banque SCS Alliance S.A.*,
   No. 02 Civ. 3592 (RCC)(KNF), 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) ....................11

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001) ...................................................................................6

*Entretelas Americanas S.A. v. Soler*,
   No. 19 Civ. 03658 (LAK)(RWL), 2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020) ....................12

*First Cap. Asset Mgmt. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ...................................................................................9

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
   67 F.3d 463 (2d Cir. 1995) ...................................................................................17

*Goldfine v. Sichenzia*,
   118 F. Supp. 2d 392 (S.D.N.Y. 2000) ...................................................................7

*Grant v. N.Y. Times Co.*,
   No. 16 CV 3175 (PKC), 2017 WL 4119279 (S.D.N.Y. Sept. 14, 2017) ...........................22

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ..................................................................................19

*Hecht v. Commerce Clearing House*,
    897 F.2d 21 (2d Cir.1990) ........................................................................................18, 21

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ...................................................................................................................19

*Hoatson v. New York Archdiocese*,
    No. 05 CIV 10467 (PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) ...................................9

*Jus Punjabi, LLC v. Get Punjabi US, Inc.*,
    640 F. App'x 56 (2d Cir. 2016) ............................................................................................12

*Laydon v. Coöperatieve Rabobank U.A.*,
    Nos. 20-3626 (L), 20-3775 (XAP), 2022 WL 17491341 (2d Cir. Dec. 8, 2022) ...................20

*McBrearty v. Vanguard Grp., Inc.*,
    No. 08 CIV. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009) ...................................18

*McLaughlin v. Andersen*,
    962 F.2d 187 (2d Cir. 1992) ...........................................................................................6, 8, 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 CIV. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .......................... *passim*

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 CIV. 2923 (CSH), 1996 WL 383135 (S.D.N.Y. July 9, 1996) ...................................14

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ...........................................................................................8, 10

*Morin v. Trupin*,
    711 F. Supp. 97 (S.D.N.Y. 1989) .......................................................................................21, 22

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC*,
    No. 11 CIV. 1134 (WHP), 2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012)...................6, 15, 16

*O'Malley v. New York City Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990) ..................................................................................................14

*Picard v. Kohn*,
    907 F. Supp. 2d 392 (S.D.N.Y. 2012) .................................................................................6, 21

*In re Platinum & Palladium Commodities Litig.*,
    828 F. Supp. 2d 588 (S.D.N.Y. 2011).................................................................................12

*In re Platinum-Beechwood Litig.*,
    377 F. Supp. 3d 414 (S.D.N.Y. 2019) ....................................................7, 15, 16, 17

*In re Platinum-Beechwood Litig.*,
    427 F. Supp. 3d 395 (S.D.N.Y. 2019) ...........................................................................21

*Prichard v. 164 Ludlow Corp.*,
    390 F. Supp. 2d 408 (S.D.N.Y. 2005) ..........................................................................17

*Rosenheck v. Rieber*,
    932 F. Supp. 626 (S.D.N.Y. 1996) ..........................................................................7, 10

*Segarra v. Messina*,
    153 F.R.D. 22 (N.D.N.Y. 1994)....................................................................................14

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)....................................................................................15, 16

*Tymoshenko v. Firtash*,
    57 F. Supp. 3d 311 (S.D.N.Y. 2014)............................................................................11

*United States v. Aulicino*,
    44 F.3d 1102 (2d Cir.1995)...........................................................................................15

*United States v. Quattrone*,
    441 F.3d 153 (2d Cir. 2006).........................................................................................13

*West 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
    No. 03 Civ. 8606 (RWS), 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004)..............11

*Wexner v. First Manhattan Co.*,
    902 F.2d 169 (2d Cir. 1990).........................................................................................10

*Williams v. Affinion Grp., LLC*,
    889 F.3d 116 (2d Cir. 2018)............................................................................................8

*Zigman v. Giacobbe*,
    944 F. Supp. 147 (E.D.N.Y. 1996) ..............................................................................13

**Statutes**

18 U.S.C. § 1341 ....................................................................................................................7

18 U.S.C. § 1343 ....................................................................................................................7

18 U.S.C. § 1503 ........................................................................................................7, 13, 14

18 U.S.C. § 1956........................................................................................................7, 11, 12

18 U.S.C. § 1962 ................................................................................................................6, 20

**Other Authorities**

Fed. R. Civ. P. 8(a) .................................................................................................................12

Fed. R. Civ. P. 9(b) ..........................................................................................................6, 8, 12

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 5, 17

Delphi Digital Consulting, Inc. ("Delphi") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Class Action Complaint for Violation of the Federal Racketeering Laws [ECF No. 42] (the "Amended Complaint" or "Am. Compl."), with prejudice, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Matthew Albright (the "Plaintiff") brings this putative class action asserting claims against nine defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on alleged conduct in connection with Terraform Labs' cryptocurrency "ecosystem" (the "Terra Ecosystem"). With respect to Delphi, however, Plaintiff has woefully failed to allege any misconduct whatsoever, let alone conduct constituting a RICO violation. In fact, Delphi's inclusion as a defendant in this action appears to be an afterthought. Delphi was not named as a defendant in Plaintiff's original Complaint and, out of the 298 paragraphs of the Amended Complaint, only 14 paragraphs specifically allege conduct by Delphi.[1]

In the few instances where Delphi is specifically identified in the Amended Complaint, the allegations are either entirely conclusory or pertain to innocuous conduct, like purchasing tokens from the Terra Ecosystem. These allegations are, quite simply, insufficient to sustain any RICO claim against Delphi. Indeed, the most plausible inference to be drawn from the allegations concerning Delphi in the Amended Complaint is that Delphi, like Plaintiff, unwittingly invested in the Terra Ecosystem and suffered a loss when the ecosystem collapsed in May 2022. Taken at face value, the Amended Complaint alleges Delphi is the victim of, not a knowing participant in,

---

[1] Paragraphs referencing Defendant Jose Macedo "of Delphi" or "through his position of authority at Delphi" are not included in this figure, as Jose Macedo is alleged to be "a Founding Partner at Delphi Ventures, Head of Delphi Labs" and is not alleged to have any position at Delphi Digital Consulting, Inc. *See* Am. Compl. at ¶ 31.

the fraudulent scheme alleged by Plaintiff. Delphi, accordingly, is not a proper target for Plaintiff's RICO claims.

As further outlined below, Plaintiff's claims against Delphi are infirm in multiple respects warranting dismissal. *First*, Plaintiff fails to allege *any* predicate act by Delphi despite offering three separate theories – mail and wire fraud, money laundering, and obstruction of justice. With respect to mail and wire fraud, Plaintiff fails to identify *any* specific statement – let alone any actionable misstatement – by Delphi and, relatedly, fails to plead any facts, let alone facts giving rise to a "strong inference," that Delphi acted with the requisite intent to defraud. With respect to money laundering, Plaintiff does not allege that Delphi transacted, let alone knowingly, with any ill-gotten proceeds. Finally, with respect to obstruction of justice, Plaintiff's charge against Delphi is not supported by a single specific factual allegation.

*Second*, Plaintiff fails to allege Delphi engaged in a pattern of racketeering under either open-ended or closed-ended continuity concepts. Setting aside the fact that Plaintiff has not alleged any wrongful conduct by Delphi, the only conduct by Delphi that Plaintiff does allege took place over, at most, a ten-month period, which is far less than the two-year minimum required by the Second Circuit to establish closed-ended continuity. Additionally, Plaintiff alleges that the Terra Ecosystem collapsed in May 2022 and defines the Class Period as ending in June 2022. The alleged scheme is, thus, by Plaintiff's own allegations, an "inherently terminable" one which does not pose the requisite threat of continuing criminal activity necessary to establish open-ended continuity.

*Third*, Plaintiff has failed to allege any causal link between Delphi's conduct and his alleged harm. Not only does Plaintiff fail to allege any misconduct by Delphi, Plaintiff fails to even allege when or how much he invested in the Terra Ecosystem, which was established years before any of Delphi's alleged conduct occurred. The Amended Complaint is, thus, bereft of any

alleged connection between any action Plaintiff took with respect to the Terra Ecosystem and Delphi.

*Finally*, Plaintiff has failed to allege that Delphi conspired to violate RICO. The Amended Complaint includes a rote recitation of the elements of a RICO conspiracy by the "Defendants," without any specific factual allegations concerning the alleged agreement among the Defendants or Delphi's knowing acquiescence or participation therein.

As a result of the foregoing pleading deficiencies, Plaintiff's claims against Delphi for violation of RICO and conspiracy to violate RICO, and those of the class Plaintiff purports to represent, should be dismissed.

## SUMMARY OF ALLEGATIONS

Plaintiff initiated this putative class action by the filing of a complaint [ECF No. 1] (the "Complaint") on August 25, 2022. Plaintiff's original Complaint did not name Delphi or Jose Macedo ("Macedo"), who is alleged to be a "Founding Partner at Delphi Ventures, Head of Delphi Labs" (Am. Compl. at ¶ 31), as defendants. On October 31, 2022, the civil case management plan for the action was entered, which provided, *inter alia*, that: amended pleadings be filed by November 11, 2022; and motions to dismiss be served by November 14, 2022 [ECF No. 36]. That same day, Plaintiff filed a notice of voluntary dismissal of Defendants Republic Capital, Republic Maximal, LLC and DeFinance Capital/DeFinance Technologies Oy [ECF No. 35].

Plaintiff filed the Amended Complaint on November 11, 2022 asserting claim against defendants Do Kwon ("Kwon"), Nicholas Platias ("Platias"), Terraform Labs Pte. Ltd. ("Terraform Labs"), Luna Foundation Guard Ltd. ("Luna Foundation"), Jump Trading LLC ("Jump"), Kanav Kariya ("Kariya"), Delphi, Macedo, and Remi Tetot ("Tetot") (collectively, the "Defendants" and each a "Defendant") on behalf of a proposed class of individuals who purchased Terraform Lab's stablecoin, TerraUSD ("UST"), or its "native token," the Luna coin ("Luna"),

between May 1, 2019 and June 15, 2022 inclusive (the "Class Period"). While Plaintiff alleges that he "purchased Luna coins and UST coins, during the Class Period" (Am. Compl. at ¶ 22), Plaintiff does not allege when he made such purchases or how much he invested.

Plaintiff alleges three components of "the Terraform Labs fraud: an algorithmic 'stablecoin' (UST) . . . , a 'bank' (the 'Anchor Protocol') . . . , and the overarching Luna coin market, which was directly fed by and indirectly promoted by UST and the Anchor Protocol." Am. Compl. at ¶ 3. Plaintiff alleges that, "[w]hen cracks in the scheme began to develop, Defendant Kwon and other Defendants . . . establish[ed] a reserve fund (run by the 'Luna Foundation Guard') designed to shore up consumer confidence . . . ." *Id.*

According to the Amended Complaint, the Terra Ecosystem was launched in April 2019 through a white paper authored by Defendants Kwon and Platias (and two nonparties). *Id.* at ¶ 51. Defendant Kwon and other employees at Terraform Labs are alleged to have designed the algorithm underlying the Terra Ecosystem, which Plaintiff contends was "inherently unsustainable and destined to fail." *See, e.g.*, *id.* at ¶¶ 9, 74. In particular, Plaintiff alleges the algorithm "depended on forces outside Defendants' control, namely demand for UST, public willingness to perform the stabilizing arbitrage, and reliable price information." *Id.* at ¶ 168. The Anchor Protocol, disclosed in a June 2020 white paper released by Defendant Platias, launched in the Terra Ecosystem in March 2021. *Id.* at ¶¶ 95-96. When Defendant Kwon's UST-Luna algorithm "did not work," Defendants Kwon, Platias, Kariya, Terraform Labs, and Jump allegedly created the Luna Foundation Guard, which was originally funded with a gift of 50 million Luna coins from Terraform Labs. *Id.* at ¶¶ 123-27. Terraform Labs announced the Luna Foundation Guard on January 19, 2022. *Id.* at ¶ 126. Plaintiff alleges the Luna Foundation Guard was "overseen and operated by a 'Governing Council,' initially comprised of" Defendants Kwon, Platia, Kariya,

Tetot, and Macedo (and nonparty Jonathan Caras). *Id.* at ¶ 132. But, in May 2022, the Terra Ecosystem collapsed and, "[w]ithin days, both Luna and UST were essentially worthless." *Id.* at ¶¶ 161-64.

Delphi's only specifically alleged involvement in the foregoing events is: "commit[ing]," with other "major investors," to a \$150 million fund "to drive growth and development of projects building on [Terraform Lab's] rapidly growing ecosystem" (*id.* at ¶ 237);[2] funding the UST reserve fund by the purchase of Luna tokens in a private sale from the Luna Foundation Guard in February 2022 (*id.* at ¶¶ 138, 141, 238); and hosting a podcast called "Terra Autumn," on an undisclosed date, where Defendants Kwon and Macedo discussed the Terra Ecosystem and, specifically the May 2021 "de-pegging" of UST (*id.* at ¶ 238). The remaining allegations of the Amended Complaint concerning Delphi, in particular, are entirely conclusory and unsupported by any specific factual allegations. *See, e.g.*, *id.* at ¶¶ 236, 239. All other allegations of the Amended Complaint that could arguably refer to Delphi allege conduct by "Defendants" generally. *See, e.g.*, *id.* at ¶¶ 110, 174, 187.

## ARGUMENT

### I.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (finding that the pleading standard "demands more than

---

[2] Notably, Plaintiff does not allege how much Delphi committed or whether such commitment was ever fulfilled.

an unadorned, the-defendant-unlawfully-harmed-me accusation"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In addition, where, as here, a complaint alleges a civil RICO claim sounding in fraud, the complaint must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC*, No. 11 CIV. 1134 (WHP), 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012). Rule 9(b) requires plaintiffs to "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin v. Andersen*, 962 F.2d 187, 191 (2d Cir. 1992).

## II.     PLAINTIFF FAILS TO ALLEGE A RICO VIOLATION AGAINST DELPHI

Plaintiff asserts that Delphi is liable under 18 U.S.C. § 1962(c). "To establish a violation of 18 U.S.C. § 1962(c) . . . a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also Picard v. Kohn*, 907 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) (Rakoff, J.). "The requirements of section 1962(c) must be established as to each individual defendant." *Id.* Further, "[t]o demonstrate standing under RICO, a plaintiff must plead, at a minimum, (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Chandradat v. Navillus Tile*, No. 03 CIV. 10093 (RJH), 2004 WL 2186562, at *4 (S.D.N.Y. Sept. 28, 2004) (internal citations omitted). "The Second Circuit has carefully addressed the 'causation'

element due to the proliferation of 'creative pleading' by plaintiffs who seek to take advantage of

RICO's generous remedies." *Id.*  For these reasons, "[t]his Court looks with particular scrutiny at

Civil RICO claims to ensure that the Statute is used for the purposes intended by Congress."

*Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000). Plaintiff's RICO claims against

Delphi fail because Plaintiff fails to sufficiently allege that Delphi engaged in a pattern of

racketeering activity or that Delphi proximately caused any purported harm to Plaintiff.

### A.      Plaintiff Fails to Allege that Delphi Engaged in Racketeering Activity

"To plead a RICO violation, a plaintiff must allege that the defendant engaged in at least

two predicate acts of 'racketeering activity,' where 'racketeering activity' is defined to include a

host of state and federal offenses." *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d 414, 424

(S.D.N.Y. 2019) (Rakoff, J.).  While Plaintiff bases his RICO claims on three types of racketeering

activity – mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, money laundering in

violation of 18 U.S.C. § 1956, and obstruction of justice in violation of 18 U.S.C. § 1503 – Plaintiff

fails to allege that Delphi engaged in <u>a single</u> predicate act of racketeering activity. For that reason

alone, Plaintiff's claims against Delphi should be dismissed. *See Rosenheck v. Rieber*, 932 F. Supp.

626, 627 (S.D.N.Y. 1996) (Rakoff, J.) ("But the Complaint still fails to allege a RICO claim,

because on no reasonable reading can it be read to allege that any of the nine defendants personally

committed predicate acts of racketeering activity, as the Act requires.").

### 1.      Allegations of Mail and Wire Fraud Fail

"To plead predicate acts of mail or wire fraud, plaintiff must allege (1) the defendant

devised a scheme to defraud; (2) the defendant used the United States mails or interstate wires to

further the fraudulent scheme; and (3) the defendant did so with the specific intent to defraud."

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CIV. 2923 (CSH), 1994 WL 88129,

at *8 (S.D.N.Y. Mar. 15, 1994). "Without question, RICO predicate acts premised on fraud must

be pleaded according to the strictures of Rule 9(b)." *Id.* Where, as here, "there are multiple defendants, plaintiff[] must identify with particularity the roles of the individual defendants in the mail fraud." *Id.* at *20 (quoting *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 623 (S.D.N.Y. 1990)).

*First*, the Plaintiff does not sufficiently allege Delphi devised a "scheme to defraud" Plaintiff. "A 'scheme to defraud' is 'a plan to deprive a person of something of value by trick, deceit, chicane or overreaching.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (quoting *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 200)). Accordingly, to plead a "scheme to defraud," Plaintiff must allege that Delphi made "a material misrepresentation," *see Williams*, 889 F.3d at 124 (citing *Neder v. United States*, 527 U.S. 1, 25 (1999)), and allege "the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 124–25 (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, Plaintiff fails to allege that Delphi made *any* specific statements about UST, Luna, the Luna Foundation Guard, or the Terra Ecosystem at all. The Amended Complaint includes general and conclusory allegations about Delphi "making public statements" about the Luna Foundation Guard (*see, e.g.,* Am. Compl. at ¶¶ 235, 238); but, it is bereft of any specific factual allegations concerning the content, time, or place of the alleged "public statements." Plaintiff does allege specific statements made *by others* – namely, Defendants Kwon and Macedo – on a podcast "hosted" by Delphi on some undisclosed date. *See, e.g.,* Am. Compl. ¶ 238. Plaintiff, however, alleges no basis upon which the words of Defendants Kwon or Macedo could be imputed to Delphi, and, in any event, does not describe the circumstances of these statements with the requisite particularity to satisfy Rule 9(b). *See McLaughlin*, 962 F.2d at 191 (requiring "particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the

statements were made, and identify those responsible for the statements"). These allegations are decidedly *not enough* to adequately plead Delphi engaged in mail and wire fraud. *See Hoatson v. New York Archdiocese*, No. 05 CIV 10467 (PAC), 2007 WL 431098, at *5 (S.D.N.Y. Feb. 8, 2007), *aff'd*, 280 F. App'x 88 (2d Cir. 2008) (dismissing RICO claim predicated on mail and wire fraud where plaintiff failed to allege any specific misrepresentations made by defendant); *Young*, 1994 WL 88129, at *25 (dismissing mail and wire fraud claim against defendant where complaint "contains not one communication which on its face implicates [that defendant]").

*Second*, Plaintiff fails to allege how Delphi used the United States mails or interstate wires to further the alleged fraudulent scheme. All Plaintiff alleges is that Delphi made a funding commitment to Terraform Labs and "purchased Luna tokens in a private sale from the Luna Foundation Guard." Am. Compl. at ¶¶ 138, 237. But, Plaintiff does not, as he must, allege how Delphi's alleged investment in Terraform Labs and/or Luna Foundation Guard was in furtherance of a fraudulent scheme. *See McLaughlin*, 962 F.2d at 191 (affirming district court's decision not to consider pre-bid mailings because plaintiff did not allege how such mailings furthered a fraudulent scheme and "the mail fraud statute punishes only mailings that have a place in a fraudulent scheme"). Delphi's alleged investment, standing alone, cannot support an inference that Delphi furthered an alleged fraudulent scheme. By this logic, Plaintiff's own investment in Luna and UST coins (*id.* at ¶ 22) would render him a contributor to, rather than victim of, the allegedly fraudulent scheme.

*Finally*, Plaintiff does not allege any specific facts giving rise to a "strong inference" that Delphi possessed the requisite fraudulent intent. *See Beck v. Mfgs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988). "In addition to alleging the particular details of a fraud, [plaintiff] 'must allege facts that give rise to a *strong* inference of fraudulent intent.'" *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (quoting *Moore v.*

*PaineWebber, Inc.*, 189 F.3d 165, (2d Cir. 1999)); *accord Mills*, 12 F.3d at 1176. Indeed, even if a complaint adequately alleges fraudulent statements (which the Amended Complaint here does not), a complaint may "yet still fail Rule 9(b) scrutiny if the complaint does not allege circumstances giving rise to a strong inference that defendant knew the statements to be false . . . and intended to defraud plaintiff." *Young*, 1994 WL 88129, at *7 (citing *Wexner v. First Manhattan Co.,* 902 F.2d 169, 173 (2d Cir. 1990)).

Where, as here, Plaintiff has failed to even allege that Delphi made any statements, let alone fraudulent ones, Plaintiff has necessarily failed to allege any knowledge or intent to defraud. Moreover, Plaintiff does not allege *any* communication among Delphi and the other Defendants at all, let alone communications that could support an inference that Delphi had any knowledge of the alleged fraudulent scheme or intentionally participated in such alleged scheme. *See Rosenheck*, 932 F. Supp. at 628 (dismissing the RICO claim where "Complaint fails to allege any particulars from which a reasonable person could deduce that [defendant] had such actual knowledge of falsity, let alone factual circumstances giving rise to a strong inference that she had the requisite fraudulent intent."). Further, Plaintiff fails to allege what Delphi could have possibly stood to gain from the alleged fraudulent scheme. *See Wexner*, 902 F.2d at 173 (finding allegations "do not provide a factual basis from which an inference of fraud can be drawn" where plaintiff provided no "explanation of what [defendant] was to gain . . . as a consequence of defrauding [the plaintiff]"). In fact, taking Plaintiff's allegations at face value, Delphi, like Plaintiff, invested in Luna and the Terra Ecosystem (*see, e.g.*, Am. Compl. at ¶¶ 22, 138, 237) and, thus, would have (and did) suffer a loss as a result of the alleged fraud. *See Beck*, 820 F.2d at 50 (finding plaintiffs failed to allege defendants' fraudulent motive where "[t]hey conced[ed] that defendants did not

stand to gain financially from the allegedly fraudulent transactions"). No strong inference of fraudulent intent can be drawn from such allegations.

Quite simply, Plaintiff has not sufficiently alleged Delphi engaged in the predicate act of mail and wire fraud, because Plaintiff identifies no statement by Delphi and no facts raising an inference, let alone a strong one, that Delphi knew or should have known of the alleged fraud or had any motive or intent to defraud the Plaintiff. What Plaintiff has alleged, is that Delphi, like Plaintiff, is a victim of the alleged fraud perpetrated by Defendants Terraform Labs, Kwon, and others.

### 2.    Allegations of Money Laundering Fail

To establish a violation of the money laundering statute, 18 U.S.C. § 1956:

> [A] plaintiff must first show "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in § 1956(c)(7); [and] (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity."

*Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 322 (S.D.N.Y. 2014) (quoting *United States v. Maher*, 108 F.3d 1513, 1527–28 (2d Cir.1997)); *Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592 (RCC)(KNF), 2005 WL 2347853, at *5 n.2 (S.D.N.Y. Sept. 22, 2005). The "specified unlawful activity" that Plaintiff relies on to base his money laundering allegation is mail and wire fraud. Thus, because, as set forth *supra*, Plaintiff has failed to sufficiently plead mail and wire fraud against Delphi, Plaintiff's money laundering allegations against Delphi also fail. *See West 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606 (RWS), 2004 WL 2187069, at *10 (S.D.N.Y. Sept. 29, 2004) ("In the absence of adequate allegations as to the existence of a specified unlawful activity, [plaintiff] has failed to adequately plead money laundering as a predicate racketeering activity with regard to its civil RICO claim").

Further, Plaintiff's money laundering allegations are not specific to Delphi, but refer to "Defendants" generally. *See, e.g.,* Am. Compl. at ¶¶ 282, 283 (alleging "Defendants" engaged in unspecified financial transactions constituting money laundering). These general allegations about "Defendants'" conduct are insufficient to satisfy Rule 8(a) pleading requirements, let alone the heightened pleading standard of Rule 9(b). *See, e.g.*, *Young*, 1994 WL 88129, at *20 ("The allegations' impermissible failure to distinguish between [certain] Defendants mandates dismissal under both Rule 9(b) and Rule 8(a)."); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011) (dismissing RICO claim because "Plaintiffs rely impermissibly on group pleading to allege the existence of predicate acts . . . [and] do nothing to differentiate the conduct of the various Defendants").

The only financial transaction Delphi, specifically, is alleged to have engaged in is the purchase of "Luna tokens in a private sale from the Luna Foundation Guard." Am. Compl. at ¶ 138. Setting aside whether the mere purchase of Luna tokens is even an "unlawful activity" under the money laundering statute, Plaintiff has failed to allege that Delphi received any proceeds from that transaction, what Delphi did with any such proceeds, or whether Delphi knew that the property involved in the financial transaction represented the proceeds of some unlawful activity. Plaintiff has, accordingly, failed to plead a predicate act of money laundering with respect to Delphi. *See Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016) (finding plaintiffs failed to allege a violation of 18 U.S.C. § 1956 where "they failed to plausibly plead that the transactions 'involved the proceeds of specified unlawful activity' as defined in § 1956(c)(7), or that 'defendant[s] knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity'" (quoting *United States v. Maher*, 108 F.3d at 1528)); *Entretelas Americanas S.A. v. Soler*, No. 19 Civ. 03658 (LAK)(RWL), 2020 WL 9815186, at *10 (S.D.N.Y. Feb. 3, 2020) (dismissing RICO money laundering claim where "the Complaint does not

allege that [defendant] knew that the monies he supposedly transferred to American banks were the product of illegal activity, or that [defendant] knew that his transfer would conceal the illegal monies"), *aff'd*, 840 F. App'x 601 (2d Cir. 2020), *as amended* (Jan. 7, 2021); *Zigman v. Giacobbe*, 944 F. Supp. 147, 157 (E.D.N.Y. 1996) (finding that plaintiff failed to plead the predicate act of money laundering, where plaintiff failed to allege "what happened with th[e] check" that allegedly constituted proceeds of an unlawful activity). Plaintiff, accordingly, has not plead the predicate act of money laundering with respect to Delphi either.

### 3.    Allegations of Obstruction of Justice Fail.

Nor does Plaintiff adequately plead that Delphi obstructed justice. To prove an obstruction of justice claim under 18 U.S.C. § 1503, a plaintiff must prove:

> (1) that there is a pending judicial or grand jury proceeding constituting the administration of justice, (2) that the defendant knew or had notice of the proceeding, and (3) that the defendant acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding, whether or not the defendant is successful in doing so—that is, that the defendant corruptly intended to impede the administration of that judicial proceeding.

*United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006) (internal citations and quotations admitted).

Plaintiff's allegations that Delphi obstructed justice are the most woefully inadequate. For this predicate act, Plaintiff alleges only that "[o]n information and belief, in multiple instances, Defendants have unlawfully obstructed justice by hiding their criminal scheme from law enforcement, including the SEC, and international law enforcement authorities, including without limitation, Interpol." Am. Compl. at ¶ 289. Again, this type of "group" pleading about "Defendants'" conduct, generally, is not enough to sustain a claim against Delphi. *See, e.g.*, *Young*, 1994 WL 88129, at *20. Moreover, while the Amended Complaint does reference pending judicial proceedings, such proceedings are only alleged to involve Defendants Terraform Labs and Kwon, and Delphi is not specifically alleged to have known or had any notice of such proceedings. *See*

Am. Compl. at ¶¶ 198-200. Nor does the Amended Complaint allege any specific acts that Delphi, in particular, undertook to influence, obstruct, or conceal information in connection with these proceedings.[3] Plaintiff has, thus, also fails to allege the predicate act of obstruction of justice with respect to Delphi. *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CIV. 2923 (CSH), 1996 WL 383135, at *10 (S.D.N.Y. July 9, 1996) (dismissing the obstruction of justice claim because "the Amended Complaint does not identify—with even the threshold specificity required by Rule 8(a)—the individual role of any of the defendants."); *Segarra v. Messina*, 153 F.R.D. 22, 28 (N.D.N.Y. 1994) (dismissing RICO claim based on obstruction of justice where "[t]he complaint [wa]s void of any allegation that the defendant in any way caused any of the acts prohibited by section 1503").

In sum, Plaintiff has failed to sufficiently allege, under any applicable pleading standard, that Delphi committed any of the predicate acts upon which his RICO claim is premised. Plaintiff's RICO claim against Delphi can and should be dismissed on this basis alone. *See, e.g.*, *Young*, 1994 WL 88129, at *20 (dismissing RICO claim against defendants where plaintiff failed to plead defendants participated in any predicate act with the requisite specificity); *Segarra*, 153 F.R.D. at 28 (dismissing RICO claim against defendant where plaintiff failed to allege defendant engaged in any predicate act).

## B.     Plaintiff Fails to Allege a Pattern of Racketeering Against Delphi

Even if, *arguendo*, this Court were to find that Plaintiff has sufficiently alleged that Delphi engaged in at least two predicate acts of racketeering activity (which he has not), Plaintiff's RICO

---

[3] Further, Plaintiff also does not allege that Delphi obstructed *a federal court proceeding*, which is required to sustain a claim under § 1503. *O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 707 (2d Cir. 1990) ("To constitute an offense under this statute, the act must relate to a proceeding in a federal court of the United States.").

claim against Delphi is, nonetheless, subject to dismissal because Plaintiff fails to allege Delphi

engaged in a pattern of racketeering.  As this Court has held:

> In addition to alleging two predicate acts, a RICO plaintiff must plead, among other things,
> continuity to establish that the racketeering activity constitutes a "pattern."  Continuity, in
> turn, "is both a closed- and open-ended concept, referring either to a closed period of
> repeated conduct, or to past conduct that by its nature projects into the future with a threat
> of repetition."

*In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d at 424 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*,

492 U.S. 229, 241 (1989)). "The continuity necessary to prove a pattern can be either 'closed-

ended continuity,' or 'open-ended continuity.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,

187 F.3d 229, 242 (2d Cir. 1999).

"[C]losed-ended continuity is primarily a temporal concept. The relevant period is the time

during which RICO predicate activity occurred, not the time during which the underlying scheme

operated or the underlying dispute took place." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 2012 WL

1142285, at *4 (internal quotations and citations omitted). For close-ended continuity "the Second

Circuit has held that 'predicate acts occurring over less than a two-year period may not be deemed

a pattern.'" *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d at 424–25 (quoting *First Cap. Asset*

*Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 168 (2d Cir. 2004)).

"To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of

continuing criminal activity beyond the period during which the predicate acts were performed."

*Nat'l Union Fire Ins. Co. of Pittsburgh*, 2012 WL 1142285, at *5 (quoting *Cofacredit, S.A.*, 187

F.3d at 242). "This threat is generally presumed when the enterprise's business is primarily or

inherently unlawful." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir.

2008); *see also United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir.1995) ("[W]here the acts of

the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice,

and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement,

the courts generally have concluded that the requisite threat of continuity was adequately established . . . ."). But, where the enterprise conducts a legitimate business, "no presumption of a continued threat arises. In such cases, 'there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.'" *Spool*, 520 F.3d at 185 (quoting *Cofacrèdit, S.A.*, 187 F.3d at 243).

Here, Plaintiff has not alleged Delphi engaged in a pattern of racketeering under either open- or closed-ended continuity. Plaintiff alleges that "Delphi used the Enterprise to engage in a pattern of racketeering since 2021" when "on or about July 16, 2021, Terraform Labs announced a $150 million fund commitment from major investors, including Delphi, to drive growth and development of projects building on its rapidly growing ecosystem." Am. Compl. at ¶ 237.[4] Plaintiff also alleges that the Terra Ecosystem collapsed in May 2022, specifically on or around May 11, 2022. Am. Compl. at ¶¶ 163-167. Taking these allegations as true, Delphi's alleged involvement in racketeering activities spans approximately 10 months – far less than the two-year minimum to establish a pattern under the concept of closed-ended continuity. *See, e.g., Spool*, 520 F.3d at 185 (finding that the alleged predicate acts spanning a period of no more than sixteen months constituted an insufficient length to demonstrate closed-ended continuity); *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d at 426 (dismissing RICO claims where misconduct "alleged to have taken place over 22 months, which is less than the two years required to constitute a 'pattern'

---

[4] Plaintiff alleges that "[t]he scheme at the heart of the Enterprise has been in operation since at least 2018." Am. Compl. at ¶ 264. However, "[t]he relevant period is the time during which RICO predicate activity occurred, *not the time during which the underlying scheme operated or the underlying dispute took place*." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 2012 WL 1142285, at *4 (internal quotations and citations omitted) (emphasis added). Plaintiff alleges that the first predicate act by Delphi occurred in July 2021 (Am. Compl. at ¶ 237) so that is the correct starting date to use for purposes of assessing whether there is a "pattern" of racketeering activity.

for RICO purposes") (citing *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 168); *Prichard v. 164 Ludlow Corp.*, 390 F. Supp. 2d 408, 411 (S.D.N.Y. 2005) (Rakoff, J.) (finding that emails sent over a 13-month period did not last long enough to support a RICO "pattern.").

Plaintiff has also failed to allege open-ended continuity. Here, there is no presumption of the threat of a continuing criminal activity beyond the period in which the predicate acts were performed because the Enterprise's alleged business – cryptocurrency – is not an inherently unlawful one. Further, Plaintiff has alleged that the Terra Ecosystem collapsed in May 2022 and, as a result, the Luna and UST coins lost all their value "and were essentially worthless." Am. Compl. at ¶ 164. Plaintiff even defines the "Class Period" as "the period between May 1, 2019 and June 15, 2022." *Id.* at ¶ 241. Accordingly, the purported scheme is, by Plaintiff's own allegations, an "inherently terminable" one which does not pose a threat of continuing criminal activity. *See Cofacrèdit, S.A.*, 187 F.3d at 244 ("[A]n 'inherently terminable' scheme does not imply a threat of continued racketeering activity."); *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) ("It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot."). Plaintiff's conclusory allegation that "Delphi used the Enterprise to engage in a pattern of racketeering since 2021 and with the substantial threat that the Enterprise's racketeering activities would continue past these acts" (*see* Am. Compl. at ¶ 237) need not be accepted as true on a motion pursuant to Rule 12(b)(6) and, thus, does not change the calculus. *See Iqbal*, 556 U.S. at 678.

Because Plaintiff has failed to allege that Delphi engaged in a pattern of racketeering activity under either open-ended or closed-ended continuity, Plaintiff's RICO claim against Delphi is unsustainable. *See, e.g.*, *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d at 426 (dismissing RICO claim where plaintiff failed to allege pattern of racketeering activity).

17

## C.       Plaintiff Fails to Allege Delphi Proximately Caused His Purported Injuries

Plaintiff's RICO claim against Delphi should also be dismissed because Plaintiff has failed to allege Delphi's conduct was the proximate cause of his alleged damages. To prove causation, "a plaintiff must show that his injury was 'caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts.'" *Chandradat*, 2004 WL 2186562, at *4 (quoting *Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir.1990)). "[T]he plaintiff must demonstrate that the 'injurious conduct is both the factual and proximate cause of the injury alleged.'" *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003)); *see also McBrearty v. Vanguard Grp., Inc.*, No. 08 CIV. 7650 (DLC), 2009 WL 875220, at *2 (S.D.N.Y. Apr. 2, 2009), *aff'd*, 353 F. App'x 640 (2d Cir. 2009). "[T]he RICO pattern or acts must proximately cause plaintiff's injury. By itself, factual causation (*e.g.*, 'cause-in-fact' or 'but for' causation) is not sufficient." *Hecht*, 897 F.2d at 23. "Where the plaintiff fails to adequately plead proximate cause in a civil RICO action, dismissal pursuant to Rule 12(b)(6) is appropriate." *Chandradat*, 2004 WL 2186562, at *4.

As an initial matter, because, as set forth in Section II.A, *supra*, Plaintiff has not adequately alleged Delphi engaged in any predicate acts, Plaintiff also has not sufficiently alleged that a predicate act by Delphi proximately caused his alleged harm.[5] In fact, the Amended Complaint is bereft of any specific factual allegations that establish a causal link, let alone a proximal causal link, between Delphi's alleged conduct and Plaintiff's alleged damages. Plaintiff does allege that

---

[5] While the Supreme Court has held that a party injured by a RICO mail fraud scheme need not show that he or she directly relied on the defendant's misrepresentations, "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008). Here, Plaintiff has failed to allege that Delphi made *any* misrepresentations and, accordingly has failed to allege that he – or anyone – has relied on Delphi's statements. *Id.*

"*Defendants*," generally, "engaged in . . . financial transactions by which the Defendants funneled the proceeds of their scheme from Terraform Labs and the Luna Foundation Guard to their private crypto wallets" (Am. Compl. ¶ 282); but, again, such general allegations that do not distinguish between the various defendants are insufficient to establish a RICO claim. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("In particular, lumping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required.").

Plaintiff does not allege that Delphi, specifically, did *anything* that impacted the Plaintiff at all. Delphi, like Plaintiff, is alleged to have invested in the Terra Ecosystem – that's it. *See* Am. Compl. at ¶¶ 22, 138, 237. Plaintiff does not allege that he had *any* contact with or exposure to Delphi, let alone that he took or refrained from any actions that caused him damage as a result of Delphi's conduct. Plaintiff does not even allege when he invested in the Terra Ecosystem, so he may have invested long before Delphi's alleged investment, which would foreclose any causal link between Delphi's conduct and his harm. *See id.* (alleging Delphi "commitment" in July 2021); *see also id.* at ¶¶ 6, 51 (alleging Terra Ecosystem was launched in 2019).

In fact, Plaintiff alleges specific independent factors, unrelated to Delphi, that contributed to the collapse of the Terra Ecosystem. It is well established that a plaintiff may not recover damages unless his injury occurs at the "first step" in the proximate cause inquiry and that relief is foreclosed when there are "independent factors" between the alleged wrongdoing and the alleged harm. *See Hemi Grp.*, *LLC v. City of New York*, 559 U.S. 1, 10-15 (2010) (denying recovery where the "theory of causation requires us to move well beyond the first step"). Here, Plaintiff alleges that the algorithm underlying the Terra Ecosystem "depended on forces *outside Defendants' control*, namely demand for UST, public willingness to perform the stabilizing arbitrage, and

reliable price information," and that the Terra Ecosystem ultimately collapsed when the "broader crypto market experienced a sharp downturn." *See* Am. Compl. at ¶¶ 13-14, 162, 168 (emphasis added). These independent factors foreclose the causal link between Delphi's alleged conduct and Plaintiff's damages that Plaintiff must allege in order to plead a viable RICO claim. *See Laydon v. Coöperatieve Rabobank U.A.*, Nos. 20-3626 (L), 20-3775 (XAP), 2022 WL 17491341, at *8 (2d Cir. Dec. 8, 2022) (finding no proximate causation for RICO claims where, "[n]ot only does Plaintiff fail to allege any direct dealings with Defendants, but his asserted injury (a change in the value of his domestically traded Euroyen TIBOR futures contract) is several steps removed from Defendants' alleged conduct (sending fraudulent Yen-LIBOR submissions to the BBA)"); *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 771 F. App'x 498, 504 (2d Cir. 2019) (finding no proximate cause where "the injury was directly caused by buy/sell decisions that independent market actors made").

Plaintiff fails to allege any causal link whatsoever between Delphi's alleged conduct and Plaintiff's alleged harm; and Plaintiff actually, alleges events that undercut any alleged causal link. Dismissal of Plaintiff's RICO claim against Delphi is, thus, warranted on this additional basis. *See Chandradat*, 2004 WL 2186562, at *4 (dismissing RICO claim, finding that "the connection between [plaintiff's] injury and defendants' alleged RICO activity, which obscured their financial status, is 'far too attenuated to meet the requirement of proximate cause' and thus, the complaint fails to state a RICO claim").

## III.   PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THAT DELPHI CONSPIRED TO VIOLATE RICO

Plaintiff also asserts a conspiracy to violate RICO claim against Delphi under 18 U.S.C. § 1962(d). Am. Compl. at ¶¶ 292-98. To state a claim under § 1962(d), Plaintiff must "plead as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of [that] co-

conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly participated in the same." *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 439 (S.D.N.Y. 2019); *see also Cofacredit, S.A.*, 187 F.3d at 244 ("To establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions.") (internal quotations and citations omitted). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht*, 897 F.2d at 25. "Even a mere [allegation of an] agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d). Rather, a plaintiff must show that the defendants understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." *Morin v. Trupin*, 711 F. Supp. 97, 111 (S.D.N.Y. 1989) (internal quotations and citations omitted).

Plaintiff has failed to plead a RICO conspiracy claim against Delphi with sufficient particularly. While the Amended Complaint contains a rote recitation of the legal elements required to establish a civil conspiracy (Am. Compl. ¶ 295), such conclusory allegations cannot sustain a RICO conspiracy claim absent specific factual allegations, which are absent here. *See Morin*, 711 F. Supp. at 111 ("bare allegations of conspiracy . . . are insufficient to support a civil RICO claim . . . .") (internal quotations and citations omitted). Plaintiff does not allege any details about the alleged agreement among the Defendants, such as when or how it was entered into, any material terms, or what conduct the agreement even pertained to; and, Plaintiff does not allege how Delphi, in particular, understood the scope of the alleged Enterprise or its alleged role therein, or expressed its agreement to participate therein. *See Picard*, 907 F. Supp. 2d at 400 (dismissing RICO conspiracy claim where plaintiff failed to allege "some factual basis for a finding of a

conscious agreement among the defendants") (quoting *Hecht*, 897 F.2d at 26, n.4). Relatedly, Plaintiff's allegations for his RICO conspiracy claim, like that of his RICO claim, impermissibly lump all of the Defendants together. *See Morin*, 711 F. Supp. at 111 (dismissing RICO conspiracy claim where plaintiff's allegations failed to "delineate among the defendants as to their participation or responsibilities in making the statements which are the subject of the suit"). Accordingly, like Plaintiff's RICO claim, Plaintiff's claim against Delphi for conspiracy to violate RICO cannot be sustained. *See id.* (dismissing RICO conspiracy claim where plaintiff failed to adequately allege defendants agreed to commit two or more RICO predicate acts).

## IV.    THE CLASS CLAIMS SHOULD BE DISMISSED

Because Plaintiff has failed to state any viable claim against Delphi, the related class claims against Delphi should also be dismissed. *Grant v. N.Y. Times Co.,* No. 16 CV 3175 (PKC), 2017 WL 4119279, at *9 (S.D.N.Y. Sept. 14, 2017) ("Of course, plaintiffs may not pursue class claims based on any individual claim that has been dismissed"); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308 (S.D.N.Y. 2009) ("if the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim").

## <u>CONCLUSION</u>

For the reasons stated above, the Court should dismiss the Amended Complaint against Delphi with prejudice.

Dated: December 12, 2022
New York, New York

Respectfully submitted,

BROWN RUDNICK LLP

By: */s/ Jessica N. Meyers*
Jessica N. Meyers, Esq.
7 Times Square
New York, New York 10036
Tel: (212) 209-4938
Fax: (212) 209-4800
jmeyers@brownrudnick.com

Stephen D. Palley, Esq. (application for admission
S.D.N.Y. pending)
601 13th Street NW, #600
Washington, D.C. 20005
Tel: (202) 536-1766
Fax: (617) 289-0766
spalley@brownrudnick.com

Stephanie Calnan, Esq. (*pro hac vice* pending)
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 856-8149
Fax: (617) 289-0685
scalnan@brownrudnick.com

*Counsel for Defendant Delphi Digital Consulting, Inc.*