**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW ALBRIGHT, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>-against-<br><br>TERRAFORM LABS, PTE. LTD., JUMP TRADING LLC, DELPHI DIGITAL CONSULTING, INC., DO KWON, NICHOLAS PLATIAS, LUNA FOUNDATION GUARD LTD., JOSE MACEDO, KANAV KARIYA, and REMI TETOT,<br><br>          Defendants. | Case No. 1:22-cv-07281-JSR |

**DEFENDANT DELPHI DIGITAL CONSULTING, INC.'S REPLY**
**IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

I.     Plaintiff's Allegations Concerning Macedo Do Not Support His Claims Against Delphi. 1

II.    Plaintiff Fails to Adequately Plead a RICO Claim Against Delphi..................................... 4

       A.     Plaintiff Does Not Allege Delphi Engaged in Any Predicate Act .............. 4

       B.     Plaintiff Does Not Allege Delphi Engaged in a Pattern of Racketeering ... 5

       C.     Plaintiff Has Not Alleged Any Causal Link Between Delphi's Alleged
              Conduct and His Damages ......................................................................... 7

III.   Plaintiff Fails to Adequately Plead Delphi's Participation in a RICO Conspiracy ........... 9

IV.    Conclusion ................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Lyons*,
    843 F. Supp. 2d 358 (E.D.N.Y. 2012) ........................................................................6

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*,
    346 F. Supp. 3d 432 (S.D.N.Y. 2018)........................................................................9

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)....................................................................................................8

*Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F. 3d 229 (2d Cir. 1999).......................................................................................7

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
    67 F. 3d 463 (2d Cir. 1995).........................................................................................7

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)....................................................................................................6

*Heinrich v. Waiting Angels Adoption Servs.*
    668 F. 3d 393 (6th Cir. 2010) ..............................................................................6, 7

*Jund v. Town of Hempstead*,
    941 F.2d 1271 (2d Cir. 1991)......................................................................................9

*Makowski v. United Bhd. of Carpenters & Joiners of Am.*,
    No. 08 Civ. 6150 (PAC), 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010)....................2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.NY. Mar. 15, 1994)...................4, 8

*Metro. Transp. Auth. v. Contini*,
    No. 04-cv-104, 2005 WL 1565524 (E.D.N.Y. July 6, 2005)....................................3

*Morin v. Trupin*,
    711 F. Supp. 97 (S.D.N.Y. 1989)............................................................................10

*Rosenheck v. Rieber*,
    932 F. Supp. 626 (S.D.N.Y. 1996) (Rakoff, J.) ........................................................5

*Serin v. N. Leasing Sys., Inc.*,
    No. 7:06 Civ. 1625, 2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009)..........................3

*Silvester v. Selene Fin., LP*,
    2021 WL 861080 (S.D.N.Y. Mar. 8, 2021) ..................................................5

*Spool v. World Child Intern. Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)..................................................................6

*United States v. Aulicino*,
    44 F.3d 1102 (2d Cir.1995)...................................................................6

*USA Certified Merchs., LLC v. Koebel*,
    262 F. Supp. 2d 319 (S.D.N.Y. 2003).................................................2, 3

**Other Authorities**

Fed. R. Civ. P. 9(b) ..............................................................................5

## REPLY

Plaintiff's *Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss* [ECF No. 71] (the "Opposition" or "Opp.") suffers from the same shortcomings as his Amended Complaint:[1] Defendants are referred to generally, instead of individually, and Delphi is again addressed as an afterthought. Plaintiff gives the arguments in Delphi's Motion short shrift, often declining to even address such arguments specifically – because no valid rebuttal exists. To obfuscate the fact that the Amended Complaint lacks any allegations of misconduct on the part of Delphi specifically, Plaintiff attempts to attribute allegations concerning Defendant Jose Macedo to Delphi. *See, e.g.*, Opp. at 41. Plaintiff even goes so far as to claim (incorrectly) that Delphi's Motion is also Mr. Macedo's. *See id.* at 1 (stating that Opposition is to motions to dismiss filed by "Delphi Digital Consulting, Inc. . . . and Jose Macedo"). To be clear, the Motion pending before this Court is Delphi's, not Mr. Macedo's. Mr. Macedo waived service and will respond to the Amended Complaint on or before March 3, 2023 (*see* ECF No. 64), but he has not yet done so. Thus, the only issue raised by the Motion is whether the Amended Complaint adequately pleads a claim *against Delphi*. As set forth in the Motion and herein, it does not.

## I.   Plaintiff's Allegations Concerning Macedo Do Not Support His Claims Against Delphi

As a threshold matter, Plaintiff cannot rely on Mr. Macedo's conduct to support claims against Delphi. Plaintiff argues that because "Macedo is a Founding Partner at Delphi Ventures and Head of Delphi Labs . . . [h]is scienter can be imputed to Delphi." Opp. at 42 (citing Delphi Br. at 9-10). This argument fails for a simple reason: Plaintiff has alleged no basis to "impute" Mr.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Memorandum of Law in Support of Delphi Digital Consulting, Inc's Motion to Dismiss* [ECF No. 67] ("Delphi Br."). Delphi's motion to dismiss [ECF Nos. 66-67] shall be referred to herein as the "Motion."

Macedo's conduct to Delphi in the Amended Complaint.

      Plaintiff does not argue that Delphi's alleged conduct constitutes a RICO violation. Although the argument is not explicit, Plaintiff appears to be proceeding on a vicarious liability theory against Delphi. Courts in the Second Circuit, however, "generally do not impose vicarious liability under RICO unless the corporate . . . defendant is a 'central figure' in the RICO scheme." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08 Civ. 6150 (PAC), 2010 WL 3026510, at *6 (S.D.N.Y. Aug. 2, 2010) (quoting *Mikhlin v. HSBC*, No. 08-CV-1302 (CPS), 2009 WL 485667, at *8 (E.D.N.Y. Feb. 26, 2009)); *see also USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 329 (S.D.N.Y. 2003). A plaintiff seeking to impose vicarious liability must, at a minimum "show that a corporate . . .  officer . . . had knowledge of or was recklessly indifferent toward the unlawful activity." *Id.* (quoting *USA Certified Merchs.*, 262 F. Supp. 2d at 328).  Even if such knowledge is shown, courts will consider other factors, such as the number of employees involved in the racketeering activity, the degree of such participation, and whether the corporation benefited from the racketeering activity. *Id.* (citing *Mikhlin*, 2009 WL 485667, at *8).

      Here, Plaintiff does not allege that Mr. Macedo is an employee of Delphi. *See* Delphi Br. at 1 n.1, 8. Rather, Plaintiff alleges that Mr. Macedo is "Founding Partner at Delphi *Ventures*, Head of Delphi *Labs*" – not Defendant Delphi *Digital Consulting, Inc. See id.* (quoting Am. Compl. at ¶ 31) (emphasis added). Thus, the employer-employee relationship required for vicarious liability is not alleged here. *Cf. USA Certified Merchs.*, 262 F. Supp. 2d at 329 (finding corporate defendant could not be vicariously liable for conduct of individual who was not an officer or director of the corporation). Even if it were, the Amended Complaint pleads no facts sufficient to hold Delphi liable for Mr. Macedo's conduct. In particular, Plaintiff alleges no facts demonstrating that any senior Delphi employee participated in or knew of the alleged wrongful

conduct. *See Makowski*, 2010 WL 3026510, at *7 (dismissing corporate defendant alleged to be vicariously liable, where plaintiff failed to allege facts showing corporate officers were complicit in any wrongs); *USA Certified Merchants*, 262 F. Supp. 2d at 329 (dismissing corporate defendant where there was no allegation or evidence that any other employee, "most importantly an officer or director, was informed about the allegedly fraudulent scheme").

Plaintiff cites cases that are distinguishable from the facts of this case and do not support a different result. *See* Opp. at 42, 67 (citing *Metro. Transp. Auth. v. Contini*, No. 04-cv-104, 2005 WL 1565524, at *5 (E.D.N.Y. July 6, 2005); *Serin v. N. Leasing Sys., Inc.*, No. 7:06 Civ. 1625, 2009 WL 7823216, at *14 (S.D.N.Y. Dec. 18, 2009)). In *Contini*, the plaintiff alleged that the corporate employee was the owner and operator of the corporate defendant and was, thus, "a sufficiently high level employee to impute knowledge of wrongdoing on [the corporate defendant]." *Contini*, 2005 WL 1565524, at *5. Plaintiff makes no such allegation concerning Mr. Macedo's position at Delphi. Likewise, in *Serin*, the court found that employees' knowledge could be imputed to the corporate defendant that "they allegedly controlled and utilized to further the [RICO] conspiracy." *Serin*, 2009 WL 7823216, at *14. Plaintiff alleges no such control or utilization by Mr. Macedo with respect to Delphi. Plaintiff has alleged no facts that would support holding Delphi vicariously liable for Mr. Macedo's conduct, or otherwise attributing Mr. Macedo's conduct to Delphi for purposes of this Motion. Thus, the only allegations that should be considered on this Motion are those that pertain to Delphi's conduct, which are scant. Mr. Macedo's alleged conduct cannot be considered in ruling on Delphi's Motion.[2]

---

[2] In any event, as will be set forth more fully in Mr. Macedo's forthcoming response to the Amended Complaint, Plaintiff's allegations concerning Mr. Macedo's conduct also fail to plead a RICO violation or conspiracy.

II.     **Plaintiff Fails to Adequately Plead a RICO Claim Against Delphi**

     A.   <u>Plaintiff Does Not Allege Delphi Engaged in Any Predicate Act</u>

          1.   *Plaintiff Does Not Allege Delphi Engaged in Wire Fraud*

Plaintiff does not respond to Delphi's argument that Plaintiff's wire fraud claim fails because the Amended Complaint does not allege any statements by Delphi. *Compare* Delphi Br. at 7-11 at *with* Opp. at 32-36. In arguing that he has adequately alleged a "scheme or artifice to defraud," Plaintiff claims that "Macedo of Delphi published a tweet regarding the Anchor Protocol's yield, growth and stability of UST, the resilience of Terraform Labs, and the cost of attacking the UST peg." Opp at 35 (citing Am. Compl. at ¶¶ 137, 144, 153, 155).[3] Plaintiff identifies no Delphi statements and, tellingly, does not argue that the alleged tweets by Mr. Macedo can be attributed to Delphi. *See generally* Opp. at 33-36. On this basis alone Plaintiff fails to plead a RICO claim against Delphi based on wire fraud. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *25 (S.D.N.Y. Mar. 15, 1994) (dismissing RICO claim predicated on mail and wire fraud against defendant where complaint "contains not one communication which on its face implicates [the defendant]").

Plaintiff does respond to Delphi's argument that the Amended Complaint fails to raise a strong inference of fraudulent intent by Delphi, but seeks to impute Mr. Macedo's alleged knowledge to Delphi. Opp. at 41-42. This argument fails for the reasons set forth in Section I, *supra*. Plaintiff identifies no allegations concerning Delphi's knowledge or intent, nor authority to support imputing Mr. Macedo's knowledge to a corporation he is not even alleged to work for. *See*

---

[3] Despite identifying "a tweet," this appears to be a reference to multiple tweets, some of which were mere retweets of the other Defendants. *See, e.g.*, Am. Compl. at ¶ 144.

*id.*[4] Plaintiff acknowledges Rule 9(b)'s heightened pleading standard applies to a RICO claim predicated on mail and wire fraud (*see* Opp. at 24); and Plaintiff does not meaningfully dispute that he fails to satisfy this heightened pleading standard in pleading such claim against Delphi, whether directly or on a vicarious liability theory. Plaintiff's RICO claim against Delphi predicated on mail and wire fraud fails.

### 2.   *Plaintiff Does Not Allege Delphi Engaged in Money Laundering*

Plaintiff's Opposition does not respond to Delphi's argument that the Amended Complaint fails to state a RICO claim predicated on money laundering against Delphi. *Compare* Delphi Br. at 11-13 *with* Opp. at 42-43. This failure to respond should be deemed a concession by Plaintiff that he has failed to adequately plead a RICO claim predicated on money laundering against Delphi. *See, e.g.*, *Silvester v. Selene Fin., LP*, 2021 WL 861080, at *8 (S.D.N.Y. Mar. 8, 2021).

### B.   Plaintiff Does Not Allege Delphi Engaged in a Pattern of Racketeering

In his Opposition, Plaintiff concedes that he is not proceeding on a theory of closed-ended continuity against Delphi (*see* Opp. at 52), leaving open-ended continuity as the only basis to

---

[4] In any event, Plaintiff has also failed to adequately plead that Mr. Macedo had the requisite fraudulent intent that he seeks to impute to Delphi. Plaintiff contends that it can be "inferred" from Mr. Macedo's position on the Luna Foundation Guard that he knew of the Foundation's allegedly fraudulent purpose and activities. Opp. at 41-42. Plaintiff cites no authority for this proposition and the only paragraph of the Amended Complaint cited in support of this "inference" is a paragraph that simply alleges that funds were transferred from the Foundation to an "unidentified" wallet. *See id.* (citing Am. Compl. at ¶ 193). The Amended Complaint alleges no particulars about Mr. Macedo's position at the Foundation whatsoever (*i.e.*, whether he had any contractual arrangement with the Foundation (and if so, the terms of such arrangement), what information he had access to, how often, if ever, he met with the other council members, etc.) that raise an inference, let alone a strong one, that Mr. Macedo had any knowledge of the alleged fraudulent scheme. *See, e.g.*, *Rosenheck v. Rieber*, 932 F. Supp. 626, 628 (S.D.N.Y. 1996) (Rakoff, J.) (dismissing RICO claim, where defendant allegedly mailed a false letter, but the complaint failed to allege any "particulars" as to how defendant knew the letter contained false statements).

establish that Delphi engaged in a pattern of racketeering. *See id.* at 54. The Amended Complaint, however, does not adequately plead Delphi engaged in an open-ended pattern of racketeering.

Plaintiff's claim that the cryptocurrency industry is inherently unlawful and "akin to . . . the creation of counterfeit money" (*see id.*) is bald *ipse dixit*. Unsurprisingly, Plaintiff does not cite any support for this contention. While "murder or obstruction of justice" are inherently unlawful activities and "in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement," *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir.1995), cryptocurrency is *not* an inherently unlawful activity and, thus, "no presumption of a continued threat arises." *See Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008).

Plaintiff responds with inapposite authority to Delphi's argument that there is no threat of continued criminal activity because the alleged scheme is inherently terminable. *See* Opp. at 54-55.  Plaintiff cites *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989) and *Heinrich v. Waiting Angels Adoption Servs.* 668 F. 3d 393, 410–11 (6th Cir. 2010) for the unremarkable proposition that open-ended continuity exists where there is a threat of repetition or continuity at the time the alleged racketeering activity occurred. Opp. at 55.[5] Here, Plaintiff alleges only that Delphi made a "commitment" and one-off investment in the Terra Ecosystem, which ultimately imploded (Am.

---

[5] Plaintiff cites to *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 370 (E.D.N.Y. 2012), where defendants were allegedly defrauding Allstate for benefits under New York's no-fault law. The defendants included professional corporations that were owned by licensed medical doctors but, in actuality, were controlled by non-doctors. One of the defendants, a licensed medical doctor, argued that open-ended continuity did not apply to him because he was no longer an owner of any existing professional corporation. In rejecting this argument, the court noted that the professional corporation was not a charged RICO defendant and plaintiff had adequately alleged that the professional corporation's "reason for being" was to facilitate the defendant's racketeering activity. *Id.* Here, by contrast, the defunct business at issue – Terraform Labs and the Luna Foundation Guard – are charged RICO defendants and there is no allegation that these organizations *were formed by Delphi* for any racketeering activity, or that Delphi even had any position, shares, or right with either of these entities. Thus, the "threat" of continued activity in *Allstate* – that defendant could form another entity to continue the fraud – is not present here.

Compl. at ¶¶ 138, 141, 237-38): no plausible "threat of repetition" can be discerned from this alleged conduct. Further, in *Henrich* the Sixth Circuit found that open-ended continuity existed where the enterprise was shut down as a result of the criminal prosecution. In connection with this finding, the Sixth Circuit expressly distinguished between a scheme ending because of law enforcement intervention and "an inherently terminable scheme . . . with a built-in ending point," with only the former qualifying as an open-ended pattern of racketeering activity. *See Heinrich*, 668 F. 3d at 410-11. Here, by contrast, the purported scheme is alleged to be inherently terminable, as Plaintiff alleges the algorithm supporting the Terra Ecosystem was "inherently unsustainable and destined to fail." Am. Compl. at ¶ 74.[6]

### C.  Plaintiff Has Not Alleged Any Causal Link Between Delphi's Alleged Conduct and His Damages

Plaintiff fails to adequately plead that Delphi's alleged conduct caused his alleged damages. He argues that he has adequately plead but-for causation with respect to Delphi, but fails to address the fact that he has not alleged *a single specific statement by Delphi* that could have caused his alleged damages.[7] Plaintiff, instead, argues that "Defendants" made certain statements

---

[6] Plaintiff curiously takes issue with Delphi's citation to *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F. 3d 229, 244 (2d Cir. 1999) and *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F. 3d 463, 466 (2d Cir. 1995), contending that these cases are "inapposite." Opp. at 55. In *Cofacrèdit,* the Second Circuit found that "because the [insurance] limits had been met, the . . . Defendants' scheme to obtain cost-free inventory had necessarily come to its conclusion" and "such an 'inherently terminable' scheme does not imply a threat of continued racketeering activity." 187 F. 3d at 244. In *GICC Cap. Corp.*, the Second Circuit found a looting scheme was inherently terminable when "there is nothing left to loot." 67 F.3d at 466. Likewise, when the Terra Ecosystem collapsed, as it was allegedly destined to do, there was "nothing left to loot:" there is no open-ended pattern of racketeering activity here under these Second Circuit authorities.

[7] Plaintiff incorrectly claims that "Delphi barely contests its but-for causation" because Delphi simply argues the "Amended Complaint is bereft of any specific factual allegations that establish a causal link . . . between Delphi's alleged conduct and Plaintiff's alleged damages." *See* Opp. at 62 n.23 (quoting Delphi Br. at 18). To be clear, Delphi's argument that there is no causal link alleged necessarily encompasses but-for and proximate causation.

7

that Plaintiff relied on in purchasing UST. Opp. at 58. But, in the long list of allegedly fraudulent conduct Plaintiff recites in the Opposition, Delphi is nowhere to be found. Opp. at 58-59. Plaintiff cannot sustain a RICO claim against Delphi by merely grouping Delphi in with the other Defendants, while failing to allege any specific fraudulent conduct by Delphi. *See, e.g.*, *Young*, 1994 WL 88129, at *20 ("The allegations' impermissible failure to distinguish between . . . Defendants mandates dismissal under both Rule 9(b) and Rule 8(a).").[8]

Plaintiff's proximate cause argument with respect to Delphi also fails. Plaintiff argues that "[t]he collapse of the Terra Ecosystem was likewise caused by Defendants' actions – their design and promotion of the flawed algorithm" (Opp. at 61), but Plaintiff has not alleged that *Delphi* designed or promoted "the flawed algorithm." To the extent Plaintiff alleges that Delphi promoted "the flawed algorithm" by purchasing Luna tokens, then the Plaintiff would also be culpable for this "promotion."[9] Plaintiff goes on to argue that it does not matter that he failed to allege any contact or interaction with Delphi because the "false statements designed to elicit participants in the Terra Ecosystem – did have that effect, which resulted in their loss of funds." *See* Opp. at 61-62. But Plaintiff identifies no statement, let alone a false one, by Delphi, so this argument necessarily fails with respect to Delphi.

---

[8] Plaintiff also contends that he does not need to allege that he specifically relied on any of Defendant's misrepresentations (Opp. at 58), but the case Plaintiff cites for that proposition holds that "the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008). Here, Plaintiff has failed to allege any statements, let alone misrepresentations by Delphi, so he could not have plead any reliance with respect to Delphi.

[9] Plaintiff also notes that "Delphi's actions helped prop up the Enterprise's fraud which in turn caused Plaintiff's injury." Opp. at 62 n.23. What Delphi did to "prop up" the Enterprise's fraud is not explained, but assuming it is the purchase of Luna tokens, Plaintiff, again, according to his own logic, is also such a prop.

Finally, Plaintiff argues that the intervening factors identified by Delphi (and the other Defendants) did not break the causal link between Defendants' alleged conduct and Plaintiff's alleged damages because the downturn in the cryptocurrency market and cascading impact on Luna and UST was foreseeable. Opp. at 62-63. First, in the case Plaintiff cites for this proposition, the Second Circuit held that the plaintiff's injury was too remote from defendants' conduct to sustain a RICO claim and the "mere possibility of such causation is not enough." *See Jund v. Town of Hempstead*, 941 F.2d 1271, 1286 (2d Cir. 1991) (quoting Prosser on Torts § 41, at 269). Second, this argument is inconsistent with Plaintiff's argument for open-ended continuity. Plaintiff's argument, on the one hand, that the alleged scheme *was not* "inherently terminable" cannot be squared with Plaintiff's argument that it was foreseeable that the cryptocurrency market would decline and overwhelm the algorithm governing the Terra Ecosystem that was allegedly "inherently unsustainable and destined to fail." *See* Am. Compl. at ¶ 74. The two arguments are mutually exclusive and, under either theory, Plaintiff's RICO claim against Delphi fails.

## III.    Plaintiff Fails to Adequately Plead Delphi's Participation in a RICO Conspiracy

Plaintiff also fails to rebut Delphi's argument that he failed to adequately plead a RICO conspiracy. Plaintiff contends he need not allege a conscious agreement among the Defendants so long as he alleged "facts supporting an inference that an agreement existed between defendants and 'that each Defendant benefitted financially from the scheme.'" Opp. at 67 (quoting *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 464 (S.D.N.Y. 2018)). He has not even done that with respect to Delphi. *See* Delphi Br. at 21-22. Plaintiff cites to thirty-three paragraphs in the Amended Complaint that, he claims, support a RICO conspiracy claim against Delphi. *See* Opp. at 68. Of those thirty-three paragraphs, only four mention Delphi specifically, but none of these four paragraphs allege facts supporting Delphi's alleged involvement in a RICO conspiracy or benefit therefrom. Rather, they allege that Delphi:

9

(1) made a monetary commitment to Terraform Labs; (2) contributed funds to the Luna Foundation

Guard in exchange for Luna tokens; and (3) hosted a podcast where Defendants Kwon and Macedo

spoke.  *See* Am. Compl. at ¶¶ 30, 138, 141, 238.  Such allegations, contrary to Plaintiff's argument,

support an inference that Delphi, like the Plaintiff, incurred financial losses as a result of the

alleged scheme. The remainder of the paragraphs Plaintiff cites are either specific to other

Defendants, like Kwon and Terraform Labs, or refer to Defendants generally (*see* Am. Compl., ¶¶

132, 137, 144, 150, 153, 155, 174-97), which is insufficient to plead a RICO conspiracy against

Delphi. *See Morin v. Trupin*, 711 F. Supp. 97, 111 (S.D.N.Y. 1989) (dismissing RICO conspiracy

claim where allegations failed to "delineate among the defendants as to their participation or

responsibilities in making the statements which are the subject of the suit" (internal quotes

omitted)). In short, Plaintiff has not stated a RICO conspiracy claim against Delphi even under the

more lenient standard he claims applies.

## IV.    Conclusion

For the reasons set forth in Delphi's Motion and this reply, Plaintiff's claims against Delphi

in the Amended Complaint should be dismissed with prejudice.


Dated: December 28, 2022
       New York, New York


                                    **BROWN RUDNICK LLP**

                                    By: */s/ Jessica N. Meyers*
                                    Jessica N. Meyers, Esq.
                                    7 Times Square
                                    New York, New York 10036
                                    Tel: (212) 209-4938
                                    Fax: (212) 209-4800
                                    jmeyers@brownrudnick.com

                                    Stephen D. Palley, Esq.
                                    601 13th Street NW, #600

Washington, D.C. 20005
Tel: (202) 536-1766
Fax: (617) 289-0766
spalley@brownrudnick.com

Stephanie Calnan, Esq. (*pro hac vice*)
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 856-8149
Fax: (617) 289-0685
scalnan@brownrudnick.com

*Counsel for Defendant Delphi Digital Consulting, Inc.*