## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MATTHEW ALBRIGHT, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

TERRAFORM LABS, PTE. LTD., JUMP TRADING LLC, DELPHI DIGITAL CONSULTING, INC., DO KWON, NICHOLAS PLATIAS, LUNA FOUNDATION GUARD LTD., JOSE MACEDO, KANAV KARIYA, and REMI TETOT,

Defendants.

Civil Action No. 1:22-cv-07281

Hon. Jed S. Rakoff

**REPLY IN FURTHER SUPPORT OF TERRAFORM LABS, PTE. LTD,
LUNA FOUNDATION GUARD LTD. AND DO KWON'S
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)**

**ORAL ARGUMENT SCHEDULED FOR JANUARY 4, 2023**

Douglas W. Henkin
Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
douglas.henkin@dentons.com

Stephen J. Senderowitz (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 876-8141
stephen.senderowitz@dentons.com

*Counsel for Defendants
Terraform Labs Pte. Ltd., Luna Foundation
Guard Ltd., and Do Kwon*

# TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................ 1

   I.     Plaintiff Has Not Established Personal Jurisdiction Over TFL, LFG, Or
         Mr. Kwon. ........................................................................................................ 1

   II.    Plaintiff's RICO Claims Are Barred By PSLRA Section 107 ............................ 3

   III.   Plaintiff Fails To Allege A RICO Injury Or Proximate Causation ....................... 6

   IV.   Plaintiff's RICO Claim Fails Because It Is Impermissibly Extraterritorial. .......... 8

   V.    Plaintiff Does Not Sufficiently Allege A RICO Claim. ...................................... 9

        A.    Plaintiff Still Fails To Sufficiently Allege Predicate Acts ........................ 9

             1.    Plaintiff failed to plead a scheme to defraud and to identify
                  material misrepresentations in support of his mail and wire
                  fraud claims .................................................................................. 9

             2.    Plaintiff failed to sufficiently plead money laundering. ............... 13

        B.    Plaintiff Has Not Adequately Pled An Association-in-Fact
            Enterprise .......................................................................................... 14

        C.    Plaintiff Has Not Properly Alleged TFL, LFG, Or Do Kwon
            Operated Or Managed an Enterprise ...................................................... 15

        D.    Plaintiff Has Not Alleged Pattern And Continuity ................................. 16

   VI.   Plaintiff's RICO Conspiracy Claim Is Deficiently Pled And Should Be
         Dismissed. ...................................................................................................... 16

   VII.  The Class Claims Asserted in the AC Are Barred By the Anchor Terms of
         Service .......................................................................................................... 17

CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Adelphia Supply USA*,
   No. 15CV5826CBALB, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ..................................15, 16

*Amsterdam Tobacco Inc. v. Philip Morris Inc.*,
   107 F. Supp. 2d 210 (S.D.N.Y. 2000).....................................................................................15

*Bakken Resources, Inc. v. Edington*,
   15 Civ. 8686 (ALC), 2019 WL 1437273 (S.D.N.Y. Mar. 29, 2019)........................................3

*Banco Safra S.A. – Cayman Islands Branch v. Samarco Mineração S.A.*,
   16 Civ 8800 (RMB), 2019 WL 2514056 (S.D.N.Y. June 18, 2019) ........................................9

*Barry v. Cboe Global Markets, Inc.*,
   42 F.4th 619 (7th Cir. 2022)...................................................................................................12

*Bascuñán v. Elsaca*,
   874 F.3d 806 (2d Cir. 2017)......................................................................................................8

*Boyle v. United States*,
   556 U.S. 938 (2009).................................................................................................................14

*Capitol Records, LLC v. VideoEgg, Inc.*,
   611 F. Supp. 2d 349 (S.D.N.Y. 2009).......................................................................................3

*Casio Computer Co., Ltd. v. Sayo*,
   2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) .........................................................................13

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) ......................................................................................1

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001)....................................................................................................16

*Democratic Nat'l Comm. v. Russian Fed'n*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019).....................................................................................16

*Dennis v. JPMorgan Chase & Co.*,
   343 F. Supp. 3d 122 (S.D.N.Y. 2018).......................................................................................9

*Elsevier Inc. v. Pierre Grossman, IBIS Corp.*,
   No. 12 Civ. 5121, 2017 WL 5135992 (S.D.N.Y. Nov. 2, 2017) ...............................................9

*Elsevier Inc. v. W.H.P.R. Inc.*,
 692 F. Supp. 2d 297 (S.D.N.Y. 2010)............................................................................14, 15

*George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd*,
 20-CV-2626 (VEC), 2021 WL 168930 (S.D.N.Y. Jan. 18, 2021).............................................3

*Green v. Green Mountain Coffee Roasters, Inc.*,
 279 F.R.D. 275 (D.N.J. 2011)................................................................................................18

*Hemi Grp., LLC v. City of New York, N.Y.*,
 559 U.S. 1 (2010)..............................................................................................................7, 8

*Kuczynski v. Ragen Corp.*,
 732 F. Supp. 378 (S.D.N.Y. 1989) .........................................................................................11

*Lavastone Cap. LLC v. Coventry First LLC*,
 No. 14-CV-7139 JSR, 2015 WL 4940471 (S.D.N.Y. July 30, 2015)....................................16

*Lerner v. Colman*,
 26 F.4th 71 (1st Cir. 2022).......................................................................................................5

*Levine v. Torino Jewelers, Ltd.*,
 No. 05 CIV 3159, 2006 WL 709098 (S.D.N.Y. Mar. 22, 2006) .............................................7

*Ltd. v. Patriarch Partners, LLC*,
 286 F. Supp. 3d 634 (S.D.N.Y. 2017)......................................................................................5

*Mackin v. Auberger*,
 59 F. Supp. 3d 528 (W.D.N.Y. 2014) .....................................................................................14

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
 354 F. Supp. 2d 293 (S.D.N.Y. 2004)....................................................................................16

*Mitchell v. Forsyth*,
 472 U.S. 511 (1985)...................................................................................................................5

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
 651 F.3d 268 (2d Cir. 2001).......................................................................................................5

*Monsanto Int'l Sales Co., Inc. v. Hanjin Container Lines, Ltd.*,
 770 F. Supp. 832 (S.D.N.Y. 1991) ...........................................................................................3

*Moore v. PaineWebber, Inc.*,
 189 F.3d 165 (2d Cir. 1999)..................................................................................................9, 10

*MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*,
 442 F. Supp. 3d 738 (S.D.N.Y. 2020).......................................................................................1

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
  74 F. Supp. 2d 221 (E.D.N.Y. 1999) ................................................................6, 7

*Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*,
  420 F. Supp. 2d 253 (S.D.N.Y. 2006)...................................................................17

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)...............................................................................................11

*Oom v. Michaels Cos. Inc.*,
  Case No. 1:16-cv-257, 2017 WL 3048540 (W.D. Mich. Jul. 19, 2017)..................18

*Paraco Gas Corporation v. Ion Bank*,
  20 CV 4971 (VB), 2021 WL 2810062 (S.D.N.Y. July 6, 2021) .............................2

*In re Petrobras Secs. Litig.*,
  Nos. 14-cv-9662 & 15-cv-6618 (JSR), 2016 WL 11671141 (S.D.N.Y. Mar.
  25, 2016) ...............................................................................................................4

*Picard v. Kohn*,
  907 F. Supp. 2d 392 (S.D.N.Y. 2012)...............................................................5, 16

*In re Platinum-Beechwood Litig.*,
  427 F. Supp. 3d 395 (S.D.N.Y. 2019).....................................................................5

*Red Fort Cap., Inc v. Guardhouse Prods. LLC*,
  397 F. Supp. 3d 456 (S.D.N.Y. 2019)...................................................................16

*In re Refco Inc. Sec. Litig.*,
  826 F. Supp. 2d 478 (S.D.N.Y. 2011)...................................................................17

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)..................................................................................12

*Skrodzki v. Marcello*,
  810 F. Supp. 2d 501 (E.D.N.Y. 2011) ....................................................................3

*Sky Med. Supply Inc. v. SCS Support Claims Serv., Inc.*,
  17 F. Supp. 3d 207 (E.D.N.Y. 2014) ......................................................................6

*In re Tether & Bitfinex Crypto Asset Litig.*,
  576 F. Supp. 3d 55 (S.D.N.Y. 2021).......................................................................7

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)..................................................................................11

*Town of Mamakating, N.Y. v. Lamm*,
No. 15-CV-2865 KBF, 2015 WL 5311265 (S.D.N.Y. Sept. 11, 2015), *aff'd*,
651 F. App'x 51 (2d Cir. 2016) ............................................................................14

*Tymoshenko v. Firtash*,
57 F. Supp. 3d 311 (S.D.N.Y. 2014)..............................................................13, 14

*West Virginia v. E.P.A.*,
142 S. Ct. 2587 (2022) ............................................................................................6

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990)..................................................................................12

**Statutes**

18 United States Code
§ 1962(c) ......................................................................................................6, 15, 16

Private Securities Litigation Reform Act
§ 107.......................................................................................................3, 4, 5, 11

**Rules and Regulations**

Federal Rules of Civil Procedure
Rule 8 ......................................................................................................................9
Rule 8(a) ................................................................................................................13
Rule 9(b) ....................................................................................................9, 10, 13
Rule 11 ....................................................................................................................4
Rule 12(b)(2) ...........................................................................................................1
Rule 12(b)(6) ...........................................................................................................1
Rule 23 ..................................................................................................................18
Rule 23(a) ..............................................................................................................17
Rule 23(b)(3)..........................................................................................................17
Rule 23(d)(1)(D) ...................................................................................................18

**Other Authorities**

141 Congressional Record H2760-01 (Mar. 7, 1995).....................................................5

Defendants TFL, LFG, and Do Kwon respectfully submit this reply memorandum of law in further support of their motion to dismiss the AC.[1]

## ARGUMENT

## I.   Plaintiff Has Not Established Personal Jurisdiction Over TFL, LFG, Or Mr. Kwon.[2]

Plaintiff doubles down on his argument that this Court can exercise specific personal jurisdiction because "the Second Circuit has already found such jurisdiction exists, on facts similar to those presented here."  (PB 5)  This argument fails.  *First*, it has nothing to with LFG, which was not a party to or even discussed in the SEC Case and did not exist at the inception of that case.

*Second*, Plaintiff concedes that for any doubts regarding personal jurisdiction to be resolved in his favor he bears the burden of making a prima facie showing of jurisdiction through his "*own* affidavits and supporting materials" (PB 23 (emphasis added)), precisely what he has not done. Plaintiff admits that he relies entirely on the work of other attorneys in a different case to establish jurisdiction.  (PB 27-30; AC ¶¶ 33, 35)  Plaintiff could have filed, with the Opposition, a sworn declaration stating that he conducted an independent investigation into jurisdictional facts and relied on sources outside of the SEC Case to verify jurisdictional facts.[3]  Instead, Plaintiff tries to shift his burden to TFL, LFG, and Mr. Kwon (PB 28 n.6) even though Plaintiff always bears the

---

[1] Capitalized terms not defined here have the meanings set forth in the Memorandum in Support of Terraform Labs, Pte. Ltd., Luna Foundation Guard Ltd., and Do Kwon's Motion to Dismiss the Amended Class Action Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (ECF No. 58, "Opening Brief" or "OB").   References to Plaintiff's Opposition to Defendants' Motions to Dismiss (ECF No. 71, "Opposition") are in the form "PB xx."

[2] Plaintiff does not address the general jurisdiction arguments in the Opening Brief, and instead responds only to the specific jurisdiction arguments, thus conceding that the Court cannot exercise general jurisdiction over TFL, LFG, or Mr. Kwon.

[3] *See MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 742 n.1 (S.D.N.Y. 2020); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008).

burden of proving personal jurisdiction and of independently verifying the factual and legal bases for the claims set forth in the AC.  (OB 11-12)  As demonstrated in the Opening Brief, even the alleged facts Plaintiff tries to lift from the SEC Case (which was about enforcing investigative subpoenas, not pursuing RICO claims) do not suffice for specific jurisdiction.  (OB 12-18)

*Paraco Gas Corporation v. Ion Bank*, 20 CV 4971 (VB), 2021 WL 2810062, at *6 (S.D.N.Y. July 6, 2021), is instructive in this regard.  In *Paraco*, the plaintiff alleged that the defendant "transacted business" under the RICO statute and New York long-arm statute by "the systematic marketing and selling of its banking products, lending money to, accepting deposits and guarantees from New York State residents, which, led to Ion Bank commencing litigation against such residents in the Courts of this State."  *Id.*  The court found those allegations conclusory, lacking specificity, and not adequate to plead that the defendant transacted business in New York and held it could not exercise personal jurisdiction over the defendant.  *Id.*  The court also held that the plaintiff failed to articulate a sufficient nexus between any alleged "business transaction" and the alleged RICO scheme when it alleged that the defendant previously filed suit against a New York resident guarantor and filed an affidavit admitting it conducted business with New York residents.  *Id.*  Plaintiff does not even allege as much as was alleged in *Paraco*, and does not explain how general marketing and promotional activities and nonspecific transactions and business suffice to create minimum contacts with the U.S. or New York (or a sufficient nexus with Plaintiff's RICO claims).

Although the Opposition focuses on New York (PB 27), TFL, LFG, and Mr. Kwon did not "transact business" in New York or the rest of the U.S. through websites because creating and maintaining a website only amounts to a business transaction if a website is "interactive," and a website that conveys information and offers a direct link to contact the company is "passive" and

does not support jurisdiction. *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 514-15 (E.D.N.Y. 2011). A website is "interactive" if a consumer can purchase goods directly through that website and if such sale is directed to a consumer in a specific jurisdiction as opposed to users in other jurisdictions. *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 359 (S.D.N.Y. 2009). Plaintiff neither alleges nor proffers an affidavit that TFL, LFG, or Mr. Kwon sold UST or Luna via the channels addressed in the AC or that TFL, LFG, or Mr. Kwon had any control or maintenance responsibilities over the marketplaces in which UST and Luna were available to buy and sell. Plaintiff's other jurisdictional allegations likewise fail because Plaintiff does not identify any specific "business transactions" that could sustain specific jurisdiction. For example, Mr. Kwon's single visit to New York to attend a general industry conference cannot sustain a finding of personal jurisdiction over him. *See Bakken Resources, Inc. v. Edington*, 15 Civ. 8686 (ALC), 2019 WL 1437273, at *5 (S.D.N.Y. Mar. 29, 2019).[4]

## II.     Plaintiff's RICO Claims Are Barred By PSLRA Section 107.

Plaintiff rests his opposition to the application of Section 107 on two flawed premises. *First*, Plaintiff asserts that TFL, LFG, and Mr. Kwon "agree … that UST and Luna are not securities." (PB 71)  False: TFL, LFG, and Mr. Kwon stated that the Court need not decide that question because Section 107's applicability does not depend on it. (OB 19-20)  *Second*, Plaintiff asks the Court to ignore the fact that members of the putative class *proposed by Plaintiff* plead that

---

[4] Plaintiff makes a passing reference to jurisdictional discovery that is not in the argument section of his brief (PB 5). Even if that could be considered a request for jurisdictional discovery—it cannot—because (a) Plaintiff has failed to "first make a threshold showing that there is some basis for the assertion of jurisdiction," *Monsanto Int'l Sales Co., Inc. v. Hanjin Container Lines, Ltd.*, 770 F. Supp. 832, 838-39 (S.D.N.Y. 1991), and (b) the relevant defendants engaged in "worldwide business activity," Plaintiff may not seek jurisdictional discovery in the hopes of finding "examples of [domestic] business activity," *George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd*, 20-CV-2626 (VEC), 2021 WL 168930, at *13 (S.D.N.Y. Jan. 18, 2021).

UST and Luna are securities and have asserted federal securities law claims relating to alleged purchases and sales of UST and Luna.[5] (PB 73)  The Court should decline that invitation.

On the one hand, Plaintiff is trying to walk away from the AC:  Whereas Plaintiff's brief argues that "purchasers of UST did not 'invest money'" (PB 74), the AC repeatedly calls UST purchasers "investors" (*e.g.,* AC ¶¶ 74, 124, 165, 209, 212, 215).  Plaintiff's argument is inconsistent with the AC, which cannot be amended through an opposition brief.  *See In re Petrobras Secs. Litig.*, Nos. 14-cv-9662 & 15-cv-6618 (JSR), 2016 WL 11671141, at *3 (S.D.N.Y. Mar. 25, 2016) (Rakoff, J.).  And although Plaintiff has now withdrawn his allegation that the defendants obstructed justice by "hiding their criminal scheme from … the SEC" rather than defend it (PB 6 n.3), that withdrawal concedes that TFL, LFG, and Mr. Kwon's arguments about that claim were correct and that its inclusion in the AC supports the application of Section 107.

On the other hand, the key phrase in Section 107 is "actionable as fraud in the purchase or sale of securities," which is not dependent on whether any claim is viable, as the cases interpreting Section 107 have made clear in dealing with attempts to plead around Section 107.  Plaintiff cites nothing in any prior decision stating that it was "fundamental" to any court's "entire analysis … that … at the heart were securities" (PB 72), because that issue did not arise in prior cases.

Courts interpreting Section 107 have focused on the word "actionable."  The decisions are clear that "actionable" does not mean "viable" or even "winnable," which is why courts have uniformly held that even if no plaintiff could ever pursue a successful securities claim against any

---

[5] Plaintiff does not dispute that members of the proposed class have pleaded federal securities law claims based on allegations that UST and Luna are securities, and his assertion that the California Action plaintiffs should not decide whether UST and Luna are securities (PB 71-74 & n.27) misses the point.  Those plaintiffs and their counsel, presumably after exercising their obligations under Rule 11, alleged that UST and Luna are securities and asserted securities claims.  Congress's expressed intent in enacting Section 107 was that there would no longer be securities and RICO claims about the same instruments.  Here there are, and that is what Section 107 precludes.

potential defendant, Section 107 still applies.  *See Lerner v. Colman*, 26 F.4th 71, 78 (1st Cir. 2022); *MLSMK Inv. Co. v. JP Morgan Chase & Co*., 651 F.3d 268, 277 (2d Cir. 2001); *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 644 (S.D.N.Y. 2017); *Picard v. Kohn*, 907 F. Supp. 2d 392, 398 (S.D.N.Y. 2012) (Rakoff, J.).  Because Section 107 bars any claim *potentially* subject to it, *see In re Platinum-Beechwood Litig.,* 427 F. Supp. 3d 395, 447 (S.D.N.Y. 2019) (Rakoff, J.), "actionable" contemplates only whether someone could assert a claim under the securities laws, not whether such a claim would have any chance of success.  No one has to guess whether someone could assert securities claims relating to UST and Luna, because Patterson *has* asserted such claims, and that is enough for Section 107 to bar Plaintiff's claims.

Plaintiff's final attempt to avoid Section 107 is to argue that whether or not UST and Luna are securities must be determined after discovery and extensive factual analysis (PB 73-75), which fails for two reasons.  *First*, as demonstrated in the preceding paragraph, the fact that the *Patterson* claims have been asserted is enough.  *Second*, Plaintiff's argument is what Congress intended to avoid:  The sponsor of the amendment that became Section 107 explained that a primary purpose of Section 107 was to prevent costly and time-consuming discovery into the elements of RICO claims, discovery that would not be necessary once Section 107 was enacted.  *See* 141 Cong. Rec. H2760-01, H2771 (Mar. 7, 1995).  Plaintiff's argument is exactly the sort of circumvention effort that led Congress to enact Section 107.[6]  *See id*.

---

[6] Congress's removal of certain predicate acts from the scope of civil RICO claims thus functions in much the same way that absolute immunity functions: It creates a right not to have to litigate these RICO claims beyond a motion to dismiss.  *Accord Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985) (the essence of absolute immunity is avoiding all aspects of civil litigation, including discovery).  That means there should be no discovery and the application of the bar should be decided on the pleadings (which in this situation includes a separate complaint filed by members of the same class Plaintiff seeks to represent, but that does not change the nature of the inquiry).  And the answer to Plaintiff's professed inability to understand what relevance *West Virginia v.*

**III.     Plaintiff Fails To Allege A RICO Injury Or Proximate Causation.**

Plaintiff's argument that he has alleged "a direct pecuniary loss" (PB 56) ignores that the allegation he relies on (AC ¶ 290) is conclusory and simply parrots the language of 18 U.S.C. § 1962(c).[7]   None of this is surprising given that Plaintiff pleads no facts about how much UST or LUNA he purchased or sold, when he did so, how he did so, or geographically where the purchases were made.   Plaintiff knows all of this and could have included it in the AC, chose not to, and even chose not to ask to replead such facts; those choices doom the AC.

Although the AC says nothing about Plaintiff other than alleging that he resides in Puerto Rico (AC ¶ 22), Plaintiff is the CEO of a cryptocurrency gaming company based in Puerto Rico (Reply Declaration of Douglas W. Henkin dated December 28, 2022 ("Henkin Rep. Decl.") Ex. A) who purchased UST *after* its price dropped.[8]   Plaintiff's company has a public Telegram channel on which Plaintiff posted frequently.   At 8:27 a.m. on May 11, 2022—well into the UST depeg—Plaintiff posted "I went in on ust at 30 cents … Wish me luck [teardrop emoji]" and approximately four hours later posted "Wonder if that means my ust play will work out … I

---

*E.P.A.*, 142 S. Ct. 2587 (2022), might have to cryptocurrency cases (PB 73 n.26) is that *West Virginia* was decided on June 30, 2022; it will take time for its application of the major questions doctrine to circumscribe agency action to percolate through the federal courts.

[7] *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 229 (E.D.N.Y. 1999) (cited at PB 56) does not help Plaintiff because it deals with pecuniary loss stemming from claims of infliction of personal injuries, which has nothing to do with this case.   *Sky Med. Supply Inc. v. SCS Support Claims Serv., Inc.*, 17 F. Supp. 3d 207, 231 (E.D.N.Y. 2014), does not help Plaintiff because it held that the plaintiff there did *not* sufficiently allege damages.

[8] That company's ecosystem is based on two tokens ($STARSHIP and $KYANITE) described in its whitepaper (*id*. Ex. B). Plaintiff was also accused of crashing the price of $TYPH tokens (a different project) in May 2021 and using the proceeds he received to purchase Starship tokens. *See id*. Ex. C.   His apparent involvement with multiple cryptocurrency platforms (and cexy.finance, an apparently forthcoming cryptocurrency exchange) may explain why Plaintiff disagrees with other putative class members about whether UST and Luna are securities—classifying tokens as securities would have an impact on Plaintiff's own cryptocurrency projects.

thought luna would go to $1 before that but now I am not sure" (*id*. Ex. D). That Plaintiff seems to have purchased UST well into the depeg (approximately 30 minutes after stating in the public Telegram channel that he was "roasting marshmellows [sic] on the luna fire," *id*. Ex. D) makes his claims to have relied on statements about the peg mechanism's stability (*e.g.*, PB 57 n.21) at best questionable; this alone requires dismissal. And the price of UST recovered substantially from $0.30 on May 11, reaching $0.80 before the peg was fully lost; if Plaintiff sold UST purchased for $0.30 above that same price, he suffered no loss at all.

Nor has Plaintiff pled proximate causation, a connection between the challenged conduct and the alleged injury that is "direct" and "straightforward," not "too remote, purely contingent, or indirect." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 11 (2010). Plaintiff did not and cannot plead a direct link between the alleged misrepresentations about UST's sustainability (much less alleged siphoning of funds) and his supposed loss, because he affirmatively alleges that intervening forces caused the collapse.[9] Plaintiff tries to get around the intervening cause he pled by asserting that his alleged injury was "a reasonably foreseeable and natural consequence" of the challenged conduct. (PB at 60-63) But that argument fails as a matter of law. *Hemi Group* made clear that "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm," *not* "foreseeability." 559 U.S. at 12; *see also Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d at 122 (rejecting the same argument).[10]

---

[9] *See* OB 22-24*; see also In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 117-18 (S.D.N.Y. 2021) (no proximate causation where "[t]he involvement of independent market actors in that intermediate step introduces the possibility that factors other than Defendants' racketeering activity gave rise to the artificial price inflation that injured Plaintiffs").

[10] Plaintiff's citations to *Levine v. Torino Jewelers, Ltd.*, No. 05 CIV. 3159, 2006 WL 709098, at *3 (S.D.N.Y. Mar. 22, 2006) and *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 224 (E.D.N.Y. 1999) provide no support for a pleading causation based on foreseeability because of the *Hemi Group* decision. 559 U.S. at 12.

**IV.**   **Plaintiff's RICO Claim Fails Because It Is Impermissibly Extraterritorial.**

To survive a motion to dismiss, Plaintiff must allege domestic injury to business[11] or property.  *See Bascuñán v. Elsaca*, 874 F.3d 806, 816-18 (2d Cir. 2017).  Plaintiff concedes that *Bascuñán* is the controlling authority on this point.  (PB 63-65)

Plaintiff spends most of his argument opposing extraterritoriality by claiming that the alleged racketeering conduct was domestic.[12]  (PB 63-65)  Specifically, he argues that the AC sufficiently alleges domestic conduct because UST was pegged to the U.S. dollar.  (*Id.*)  That argument fails: The U.S. dollar "is the world's dominant reserve currency" and is "widely used to conduct international trade and financial transactions."[13]  Indeed, several *non-U.S.* countries have adopted the U.S. dollar as permitted legal tender or even their official currency.[14]  Deeming dollar-denominated transactions sufficient for a domestic injury "might well effectively eliminate the effect of the domestic injury requirement in a large number of cases."  *Bascuñán*, 874 F.3d at 819 (mere use of domestic bank account cannot transform an otherwise foreign injury into a domestic one); *see also Banco Safra S.A. – Cayman Islands Branch v. Samarco Mineração S.A.*, 16 Civ 8800 (RMB), 2019 WL 2514056 (S.D.N.Y. June 18, 2019) (allegation that transactions were

---

[11] Plaintiff's conclusory assertion that he "will continue to be injured in its [sic] business" (AC ¶¶ 290, 297) is insufficient.  Plaintiff fails to allege that he qualifies as a business or even what his "business" is, but it involves other cryptocurrencies.  *See supra* pp. 6-7.

[12] Although RICO can apply extraterritorially to the predicate offenses of money laundering and obstruction of justice, that does not mean TFL, LFG, and Mr. Kwon have waived their arguments regarding the domestic injury requirement, as Plaintiff seems to imply.  (PB 63 n.24)  TFL, LFG, and Mr. Kwon have challenged all of Plaintiff's claims as impermissibly extraterritorial, and Plaintiff in fact withdrew the obstruction allegations in his Opposition.  (PB 6, fn. 3)

[13] Henkin Rep. Decl. Ex. E.

[14] For example, the British Virgin Islands, Ecuador, El Salvador, the Federated States of Micronesia, the Marshall Islands, Palau, Turks & Caicos, and Zimbabwe use the U.S. dollar.  *See* Henkin Rep. Decl. Ex. F at 1; Henkin Rep. Decl. Ex. G at 16; Henkin Rep. Decl. Ex. H at 16; Henkin Rep. Decl. Ex. I at 14; Henkin Rep. Decl. Ex. J at 3; Henkin Rep. Decl. Ex. K at 15; Henkin Rep. Decl. Ex. L at 1; Henkin Rep. Decl. Ex. M at 14, 17.

"consummated with U.S. dollars" was insufficient to plead domestic injury).  If transacting business in U.S. dollars is not enough to create domestic injury, then pegging an asset's value to the U.S. dollar surely cannot be.  The AC thus fails to allege domestic conduct directed to the U.S.

Plaintiff's reliance on *Elsevier Inc. v. Pierre Grossman, IBIS Corp.*, No. 12 Civ. 5121, 2017 WL 5135992 (S.D.N.Y. Nov. 2, 2017), and *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122 (S.D.N.Y. 2018), is misplaced.  In *Elsevier*, the court found a domestic injury because the plaintiff had specifically alleged, and supported with a sworn declaration, that it shipped its property from the U.S. under false pretenses and thereby suffered the effects of the defendant's conduct in the U.S.  But Plaintiff has not alleged *any* geographic facts about his alleged transactions in UST or Luna.  *Dennis* also does not help Plaintiff because the plaintiff in that case "traded on a domestic exchange – the CME."  343 F. Supp. 3d at 181.  Once again, Plaintiff's failure to specify where, when, or how he bought or sold UST or Luna dooms his argument.

## V.     Plaintiff Does Not Sufficiently Allege A RICO Claim.

### A.     Plaintiff Still Fails To Sufficiently Allege Predicate Acts

Although Plaintiff desperately seeks to apply the lower Rule 8 pleading standard to his claims (PB 23-24), he does not (and cannot) dispute that his civil RICO claims—not just the mail and wire fraud allegations—are subject to Rule 9(b).  *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-73 (2d Cir. 1999).  His claims fail under Rule 9(b).

#### 1.     Plaintiff failed to plead a scheme to defraud and to identify material misrepresentations in support of his mail and wire fraud claims.

Rather than explain *how* or *why* any statements discussed in the AC were fraudulent, Plaintiff's Opposition repeats the allegations in the AC over and over.  But repetition is not explanation and cannot cover up failure to comply with Rule 9(b).

Plaintiff points to his allegations about Mr. Kwon's or TFL's involvement in "Basis Cash,"

but those allegations do not satisfy Rule 9(b). *See Moore*, 189 F.3d at 172-73. Plaintiff has not sufficiently alleged that Basis Cash was a TFL project or that Mr. Kwon was actually involved. Plaintiff's sole allegation that Mr. Kwon was involved with Basis Cash is from "unnamed sources cited in an article on CoinDesk.com" (AC ¶ 47), which does not even come close to satisfying Rule 9(b). The Basis Whitepaper does not name Mr. Kwon as an author, whereas the Terra Whitepaper does. The only thing the two white papers have in common is that both sought to introduce algorithmic stablecoins.[15] That is not surprising given that Plaintiff himself alleged that there "has long been demand within the crypto community for a medium of exchange which could act as an equivalent to a traditional fiat currency." (AC ¶ 4) Even if Mr. Kwon had developed Basis Cash (he did not), non-disclosure of that fact would not support a fraud claim for two reasons. *First*, there was no duty to disclose anything about Basis Cash (OB 28 n.12); Plaintiff was not a customer of TFL (which had no customers) and does not claim to have purchased *any* tokens from Mr. Kwon or TFL. *Second*, the argument that the failure of Basis Cash means Mr. Kwon knew UST would necessarily fail (AC ¶¶ 45-50) incorrectly assumes that the two stablecoins used the same algorithm—they did not, as even a cursory comparison of the whitepapers shows. Plaintiff has no response to either point.

Plaintiff also argues that the Terra Whitepaper and Anchor Whitepaper each contained false statements. (PB 33) But as explained in the Opening Brief (OB 28-30), the documents simply described product design and capabilities of the of the Terra protocol, UST, Luna, and the Anchor Protocol. Plaintiff does not contest that the Terra Whitepaper's central assumption was

---

[15] *Compare* Henkin Decl. Ex. A *with* Henkin Rep. Decl. Ex. N ("Basis Whitepaper"). Notably, the Basis Whitepaper makes no mention of Mr. Kwon or TFL, and it even identifies other attempts to create stablecoins, one of which, Seigniorage Shares, is also based on the idea of expanding and contracting coin supply to maintain a peg. Sharing a similar design philosophy is not evidence of a scheme to defraud.

that the price of UST could be stabilized by adjusting its supply in response to changes in demand if "*all conditions held equal*," (AC ¶¶ 52, 78) or that the Anchor Whitepaper accurately described the protocol's function and specifically warned Plaintiff of the exact danger that came to pass (losses "in fiat-denominated terms") (OB 30).   Nor does Plaintiff contest that Anchor paid depositors the offered rate at all times, despite conclusorily calling that rate "impossible." (PB 38)

Plaintiff recycles the collection of cherry-picked tweets[16] in the AC to argue that "Defendants' statements about the sustainability and stability of UST and the Terra Ecosystem were false, not simply optimistic."[17]   Plaintiff argues that Mr. Kwon and TFL could "anticipate" and "expect" that UST would ultimately fail as a result of "softening demand for cryptocurrencies" based on "predictable patterns in Bitcoin valuations."   (PB 36)   This argument fails because it assumes that (a) TFL, LFG, and Mr. Kwon viewed the world around supposed patterns in Bitcoin valuations based solely on Plaintiff's conclusory allegation that the "crypto community has come to recognize" such patterns (AC ¶¶ 67-73) and (b) that TFL, LFG, and Mr. Kwon possessed precognitive powers (for which, unsurprisingly, Plaintiff cites nothing).   This is Plaintiff's only response to *Barry v. Cboe Global Markets, Inc.*, 42 F.4th 619 (7th Cir. 2022), which held that a

---

[16] Plaintiff complains that no examples of complaints similarly based on project documents and social media were identified (PB 24).   TFL, LFG, and Mr. Kwon respectfully refer the Court to *Morgan et al. v. Constellation Network, Inc. et al.*, Case No. 3:21-cv-08869-JSW (N.D. Cal.), ECF No. 1.

[17] *Kuczynski v. Ragen Corp.*, 732 F. Supp. 378 (S.D.N.Y. 1989), does not help Plaintiff.   In *Kuczynski*, the court denied the defendants' motion to dismiss civil RICO claims where the plaintiffs sued a corporation and its CEO for making misrepresentations about its primary product in its annual reports every year from 1981-1984, inflated sales figures in a five-year business plan circulated to the financial community and stock brokers, and made "optimistic statements" about entering into lucrative contracts in a Form 8-K filed with the SEC that were misrepresented. *Id.* at 384.   *Kuczynski* was effectively overruled by PSLRA Section 107.   And Mr. Kwon's, TFL's, and LFG's tweets on social media or statements on podcasts expressing opinions of confidence and excitement about UST and Luna cannot be compared to the alleged misrepresentations in *Kuczynski*. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188, (2015); *Tongue v. Sanofi*, 816 F.3d 199, 213 (2d Cir. 2016).

flawed design is not a basis for a fraud claim (that *Barry* happened to involve a Section 10(b) claim does not limit its reasoning).  And Plaintiff affirmatively states that his claims are based on the alleged "design and promotion of [a] flawed algorithm" (PB 61), similar to *Barry*.

Nor is there any support for Plaintiff's assertion that Mr. Kwon "lied in telling the public that Terraform Labs had a close relationship with Chai." (PB 38 n.14)  *First*, the AC does not allege that Mr. Kwon said Chai had a "close relationship" with TFL, it alleges that in March 2021 Mr. Kwon said that "Chai uses Terra's blockchain (stablecoins) to settle transactions faster and cheaper than legacy counterparts," and does not contend that Chai worked differently.  (AC ¶¶ 118-19)  The AC contains no factual allegations to support Plaintiff's contention that Chai had ceased settling transactions on Terra when Mr. Kwon made the alleged misstatement in March 2021 or that, if it had, Mr. Kwon knew about it.  Plaintiff insists that Mr. Kwon could not have been "unaware," but "an inference that the defendants knew their statements to be false cannot be based on allegations which are themselves speculative." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990) (citing cases).

Finally, Plaintiff argues that all of the allegedly "false statements" by Mr. Kwon, TFL, and LFG, taken together, evidence that they each acted with the necessary intent to defraud.  (PB 37-39)  This claim fails because the AC does not adequately plead that any of the alleged misrepresentations were actually false.  (OB 27-31)  Moreover, Plaintiff's "financial motive" theory (PB 37) relies on conclusory allegations that make no economic sense, which violates the Second Circuit rule that courts assume defendants act in their informed economic self-interest.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994).  If Mr. Kwon's or TFL's goal was to "funnel profits" directly to themselves, they would have let UST fail without investing more of their own funds in it.  Instead they set up LFG and spent billions of dollars to try to defend

the UST peg (AC ¶¶ 190-194; Henkin Decl. Ex. F, at 8-11), which cannot be reconciled with Plaintiff's "financial motive" theory and thus does not suffice to plead scienter.

### 2.    Plaintiff failed to sufficiently plead money laundering.

The Opposition leaves no doubt that Plaintiff has not sufficiently pleaded money laundering as a predicate act.  *First*, Plaintiff argues that *Casio Computer Co., Ltd. v. Sayo,* 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000), stands for the proposition that a "Plaintiff 'need not allege money laundering with great particularity."  (PB 42)  This is incorrect.  As *Casio Computer* made clear, only money laundering allegations that "are ***not premised on fraud*** are pled under the less stringent requirements of Rule 8(a)."  *See* 2000 WL 1877516, at *16.  But Plaintiff alleges that the money laundering statute was violated because "the financial transactions involved the proceeds of unlawful activities, namely mail and wire fraud."  (AC ¶ 282)  Plaintiff's money laundering claim is thus subject to Rule 9(b) and lacks the requisite particularity, and it also fails for the same reasons Plaintiff's wire and mail fraud claims fail.  *See Supra,* § I(a); *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 322–23 (S.D.N.Y. 2014).

*Second*, Plaintiff concedes that none of the allegedly "unlawful transactions" concealed or disguised anything about those funds.  (PB 42-43; AC ¶¶ 175, 178-79, 193-94)  Indeed, Plaintiff repeatedly alleges that TFL, LFG, or Mr. Kwon announced the dates on which funds were transferred, the amounts being transferred, and the wallet addresses being used to conduct the transfers.  (AC ¶¶ 189, 192)[18]  And even if the Court were to view the money laundering allegations in Plaintiff's favor, the alleged transactions would not have proximately caused Plaintiff's alleged injuries.  *See Tymoshenko,* 57 F. Supp. 3d at 323-24; OB 23-24.  Plaintiff therefore failed to plead

---

[18] Contrary to Plaintiff's assertion (PB 43), this argument does not "rest on" Henkin Decl. Ex. F (which Plaintiff does not deny is based on publicly available blockchain information), that report provides context for understanding Plaintiff's pleading failures.

the elements of money laundering.

### B.        Plaintiff Has Not Adequately Pled An Association-in-Fact Enterprise

Plaintiff begins his enterprise misadventure by arguing that *Boyle v. United States*, 556 U.S. 938 (2009) establishes a "low" threshold for pleading an association-in-fact enterprise and then relying on a case in which the Court found that a plaintiff failed to meet that "low" threshold. *Compare* PB 44 *with Mackin v. Auberger*, 59 F. Supp. 3d 528, 542 (W.D.N.Y.  2014).   As in *Mackin*, Plaintiff has failed to allege an association-in-fact enterprise.

Plaintiff's arguments that he has properly alleged an association-in-fact enterprise consist only of conclusions that interpersonal relationships existed among Defendants, they worked together for the supposed enterprise, and there is sufficient longevity.  (PB 45-47)  But those conclusions are not supported by factual allegations, which means they cannot support the existence of the association-in-fact enterprise Plaintiff proposes or show any discernable organization or unity amongst the Defendants.  *See Town of Mamakating, N.Y. v. Lamm*, No. 15-CV-2865 KBF, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015), *aff'd*, 651 F. App'x 51 (2d Cir. 2016) ("The fatal flaw is plaintiffs' failure to explain the 'specific details of any hierarchy, organization, or unity among the various alleged conspirators' in any non-conclusory way.").  Not only do Plaintiff's arguments ignore the case law cited in the Opening Brief, Plaintiff himself cites and relies on a case which found that an association-in-fact enterprise had not been pleaded. *Elsevier Inc. v. W.H.P.R. Inc.*, 692 F. Supp. 2d 297, 306 (S.D.N.Y. 2010).

Plaintiff also fails to explain how the Defendants are anything more than a group of entities connected through arms-length transactions.  (OB 37)  Plaintiff's only attempt to address that argument is a feeble regurgitation of case law coupled with conclusory allegations that the Defendants' alleged enterprise is a continuing unit with a common purpose.  (PB 46)  That is not

enough for RICO claims: Plaintiff alleges no *facts* to support the conclusion that the Defendants were a "continuing unit," and the only facts alleged do not support the existence of a continuing unit with the intent to defraud. *See Elsevier Inc*, 692 F. Supp. 2d at 297.

## C.   Plaintiff Has Not Properly Alleged TFL, LFG, Or Do Kwon Operated Or Managed an Enterprise.

To participate, directly or indirectly, in the conduct of an enterprise's affairs, a defendant must have played a part in operating or managing those affairs, either by being part of upper management or by exerting control over *the enterprise*. *See Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000). As to LFG and TFL, Plaintiff claims that making allegedly false statements, hosting the Terra Ecosystem, or raising funds constitutes the requisite exertion of control. (PB 48-50) However, "[p]roviding important services to a racketeering enterprise is not the same as directing the affairs of an enterprise." *Id.* at 217; *see also Abbott Lab'ys v. Adelphia Supply USA*, No. 15CV5826CBALB, 2017 WL 57802, at \*6 (E.D.N.Y. Jan. 4, 2017) ("[a] defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise"). And, of course, Plaintiff offers no explanation of how LFG's publicly-disclosed raising and disbursement of funds to defend UST's peg could be considered fraudulent (because it is not). (PB 50)

As to Mr. Kwon, Plaintiff contends that he operated and managed the enterprise based on the issuance of the Terra White Paper and creation of the Anchor Protocol, "which contributed to the continued operation of the Enterprise." (PB 50) But Plaintiff fails to explain why such actions were not simply in furtherance of TFL's business, as opposed to the alleged enterprise, or that such conduct was done for the purpose of exerting control of the alleged enterprise. As pleaded, Mr. Kwon's actions amount to no more than acting as CEO of TFL (which Plaintiff does not allege

was a RICO enterprise) and in furtherance of TFL's general, non-fraudulent business activities.[19]
*See Abbott Lab'ys*, 2017 WL 57802, at *9.

### D.    Plaintiff Has Not Alleged Pattern And Continuity

As demonstrated in the Opening Brief and above, Plaintiff has not sufficiently pleaded mail and wire fraud or money laundering. *Ipso facto*, Plaintiff thus cannot establish closed-ended continuity. *See DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001).

Plaintiff has also failed to allege open-ended continuity. Plaintiff affirmatively pleads that Defendants knew UST and LUNA were designed and destined to fail. *See* PB 9-11, 43, 57; AC ¶¶ 7, 9, 18, 174, 187. Because "[s]chemes that are 'inherently terminable' do not imply a threat of ongoing racketeering activity," *Red Fort Cap., Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 468 (S.D.N.Y. 2019), Plaintiff's own allegations foreclose open-ended continuity.

## VI.   Plaintiff's RICO Conspiracy Claim Is Deficiently Pled And Should Be Dismissed.

This Court has consistently dismissed RICO conspiracy claims where the substantive RICO claim is deficient. *See Picard v. Kohn*, 907 F. Supp. 2d 392, 401 (S.D.N.Y. 2012) (Rakoff, J.); *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 446 (S.D.N.Y. 2019); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 305 (S.D.N.Y. 2004). As demonstrated in the Opening Brief and above, the conspiracy claim thus fails because Plaintiff's Section 1962(c) claim fails.

Plaintiff's conspiracy claim also fails because Plaintiff has not sufficiently alleged an

---

[19] Plaintiff argues that TFL, LFG, and Mr. Kwon cite a case where the Court denied a motion to dismiss (PB 49), but fails to note that TFL, LFG, and Mr. Kwon relied on a later opinion in the case (*Lavastone Cap. LLC v. Coventry First LLC*, No. 14-CV-7139 JSR, 2015 WL 4940471, at *7 (S.D.N.Y. July 30, 2015) (Rakoff, J.)) and merely noted the Court's language supporting the notion that just being the CEO of one entity is not sufficient to plead operation and management of a separate alleged enterprise. (OB 39)

agreement amongst any Defendants to commit predicate acts.  Plaintiff again attempts to dodge his pleading obligation by asserting (incorrectly) that the Court may infer a conscious agreement between defendants without factual allegations supporting such an agreement.  (PB 67-70)  This Court has squarely rejected Plaintiff's argument.  *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 540 (S.D.N.Y. 2011) (Rakoff, J.).  Because the AC contains no non-conclusory allegations that the Defendants "knew" of a conspiracy and agreed to join it (AC ¶¶ 293-296), the RICO conspiracy claim fails.  *See Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006).

## VII.   The Class Claims Asserted in the AC Are Barred By the Anchor Terms of Service.

Plaintiff does not deny that any putative class member who used the Anchor Protocol is bound by its Terms of Service and that those Terms of Service release all claims against TFL and Mr. Kwon, waive the right to pursue class claims, select Singapore law as the governing law, and require claims to be arbitrated in Singapore (Henkin Decl. Ex. K ¶¶ 14, 15, 17-20), nor has he withdrawn his allegation that 75% of all UST was staked in the Anchor Protocol at its peak (AC ¶ 110).  Plaintiff thus concedes that the vast majority of putative class members released all claims against TFL and Mr. Kwon, waived the right to pursue class claims, accepted Singapore law as the governing law, and agreed to arbitrate in Singapore; Plaintiff cannot address these issues because, according to his counsel, he did not use the Anchor Protocol.  This means that this case could not satisfy the requirements of Fed. R. Civ. P. 23(b)(3), that Plaintiff cannot satisfy Fed. R. Civ. P. 23(a) because he is unlike most putative class members (putting aside his purchases of UST well into the depeg), and that even ascertaining who might not have used the Anchor Protocol would require individual inquiry.  Although issues like this often arise for the first time during class certification, courts can and do strike class claims before a certification motion is made.  *See,*

*e.g.,* Fed. R. Civ. P. 23(d)(1)(D) (allowing courts to require pleadings to be amended to delete class claims); *Oom v. Michaels Cos. Inc.*, Case No. 1:16-cv-257, 2017 WL 3048540, at *3-7 (W.D. Mich. Jul. 19, 2017) (striking class claims because it was clear that Rule 23 could not be satisfied); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 284-85 (D.N.J. 2011) (dismissing class claims because, *inter alia*, "the putative class includes individuals who do not presently have a claim against Defendants").

## CONCLUSION

For all the foregoing reasons and those set forth in the Opening Brief, TFL, Mr. Kwon, and LFG respectfully request that the Court dismiss the AC in its entirety with prejudice.

Dated: December 28, 2022　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　*/s/ Douglas W. Henkin*
　　　　　　　　　　　　　　　　　Douglas W. Henkin
　　　　　　　　　　　　　　　　　DENTONS US LLP
　　　　　　　　　　　　　　　　　1221 Avenue of the Americas
　　　　　　　　　　　　　　　　　New York, New York 10020
　　　　　　　　　　　　　　　　　Tel: (212) 768-6700
　　　　　　　　　　　　　　　　　douglas.henkin@dentons.com

　　　　　　　　　　　　　　　　　Stephen J. Senderowitz
　　　　　　　　　　　　　　　　　233 S. Wacker Drive
　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　Tel: (312) 876-8141
　　　　　　　　　　　　　　　　　stephen.senderowitz@dentons.com

　　　　　　　　　　　　　　　　　*Counsel for Defendants Terraform Labs Pte. Ltd.,*
　　　　　　　　　　　　　　　　　*Do Kwon, and Luna Foundation Guard Ltd.*