**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW ALBRIGHT, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>TERRAFORM LABS, PTE. LTD., JUMP TRADING, LLC, DELPHI DIGITAL CONSULTING INC., DO KWON, NICHOLAS PLATIAS, LUNA FOUNDATION GUARD LTD., JOSE MACEDO, KANAV KARIYA, and REMI TETOT,<br><br>　　　　　　　　Defendants. | Case No. 1:22-cv-07281-JSR |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS JUMP TRADING, LLC AND KANAV KARIYA'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** .................................................................................................................. i

**TABLE OF AUTHORITIES** ........................................................................................................... ii

**INTRODUCTION** ............................................................................................................................ 1

**ARGUMENT** .................................................................................................................................... 3

    I.    Plaintiff Fails To Satisfy The Applicable Pleading Requirements ..................................... 3

    II.   The May 2021 De-Peg Does Not Transform The Jump Defendants' Later Statements Into Predicate Acts Of Mail And Wire Fraud ..................................................................... 4

    III.  Plaintiff Fails To Address—Let Alone Rectify—The Flaws In His Money Laundering Theory ......................................................................................... 6

    IV.  That The Jump Defendants Allegedly Delayed The Collapse Of UST And LUNA By "Infusing Cash" In May 2021 Is Not A Viable Theory Of RICO Causation ................ 7

    V.   Plaintiff Fails To Plead Any Kind Of Pattern Of Continuous Conduct, Dooming His RICO Claim ................................................................................................ 9

    VI.  Plaintiff's Attempt To Recast His Burden To Plead A RICO Conspiracy Does Not Save His Claim ............................................................................................... 11

**CONCLUSION** .............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Lyons*,
  843 F. Supp. 2d 358 (E.D.N.Y. 2012) ................................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 3, 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 3

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) .................................................................................................................. 9

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) .................................................................................................. 10

*D.R.S. Trading Co., Inc. v. Fisher*,
  2002 WL 1482764 (S.D.N.Y. July 10, 2002) ........................................................................ 11

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001) .................................................................................................... 4

*Dolan v. Fairbanks Cap. Corp.*,
  930 F. Supp. 2d 396 (E.D.N.Y. 2013) ................................................................................... 10

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) ............................................................................................... 9, 12

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
  492 U.S. 229 (1989) ............................................................................................................... 10

*Heinrich v. Waiting Angels Adoption Servs.*,
  668 F. 3d 393 (6th Cir. 2012) ............................................................................................... 10

*Holmes v. Securities Inv. Prot. Corp.*,
    503 U.S. 258 (1992) .................................................................................................. 8

*In re Platinum-Beechwood Litig.*,
    427 F. Supp. 3d 395 (S.D.N.Y. 2019) ....................................................................... 4

*In re Tether and Bitfinex Crypto Asset Litigation*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021) ......................................................................... 7

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ........................................................................... 4, 5

*Kriss v. Bayrock Grp. LLC*,
    2017 WL 1901966 (S.D.N.Y. May 8, 2017) ........................................................... 12

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Cir. 2018) ....................................................................................... 9

*Levine v. Torino Jewelers Ltd.*,
    2006 WL 709098 (S.D.N.Y. Mar. 22, 2006) ............................................................ 3

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) ....................................................................................... 9

*McBrearty v. Vanguard Grp., Inc.*,
    353 F. App'x 640 (2d Cir. 2009) .............................................................................. 8

*Merhej v. I.C.S. Intern. Custody Sys., Inc.*,
    2014 WL 104908 (S.D.N.Y. Jan. 9, 2014) ............................................................. 12

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*,
    2022 WL 4448621 (S.D.N.Y. Sept. 23, 2022) ........................................................ 12

*Oak Beverages, Inc. v. Tomra of Mass., L.L.P.*,
    96 F. Supp. 2d 336 (S.D.N.Y. 2000) ...................................................................... 10

*Picard v. Kohn,*
   907 F. Supp. 2d 392 (S.D.N.Y. 2012) ................................................................................. 7, 8

*Sathianathan v. Smith Barney, Inc.*,
   2006 WL 538152 (S.D.N.Y. Feb. 24, 2006) .......................................................................... 12

*Skylon Corp. v. Guilford Mills, Inc.*,
   1997 WL 88894 (S.D.N.Y. Mar. 3, 1997) ............................................................................. 12

*Sullivan v. Barclays PLC*,
   2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ........................................................................... 3

*United States v. Aulicino*,
   44 F. 3d 1102 (2d Cir. 1995) ................................................................................................ 10

**<u>Statutes</u>**

18 U.S.C. § 1964 ............................................................................................................................. 9

**<u>Rules</u>**

Fed. R. Civ. P. 8 ......................................................................................................................... 1, 3
Fed. R. Civ. P. 9(b) ................................................................................................................ 1, 3, 4

Defendants Jump Trading, LLC ("Jump Trading"), and Kanav Kariya (together, the "Jump Defendants") respectfully submit this reply brief in response to Plaintiff's opposition brief, *see* ECF No. 71 ("Opp." or "Opposition"), and in further support of their Motion to Dismiss the Amended Complaint, *see* ECF No. 61, and accompanying memorandum of law, ECF No. 62 ("Jump Defs. Mot.").

## INTRODUCTION

Plaintiff made very limited, conclusory allegations against the Jump Defendants in the Amended Complaint. *See* Jump Defs. Mot. at 4-5 (listing eight statements by Jump Trading and seven by Mr. Kariya). Plaintiff now attempts to brush over that deficiency by lumping "Defendants" together throughout his Opposition, belying that the Amended Complaint is simply not directed at the Jump Defendants. Plaintiff's theories in the Opposition cannot fix that reality, nor the fact that he fails to meet his burden under Federal Rules of Civil Procedure 8 and 9(b) to plead facts sufficient to support allegations against *each individual defendant*.

Plaintiff's Opposition lays bare that his theory of fraud against the Jump Defendants is *not* that they actually made false statements. Rather, his entire theory against the Jump Defendants is one of omission: the Jump Defendants allegedly (1) knew that the Terra algorithm did not work on its own to maintain the peg in volatile market conditions at the time they "secretly" "bailed out" UST in May 2021; and (2) failed to disclose this new information to the market. Plaintiff claims this somehow rendered the Jump Defendants' later tweets and other statements materially misleading, even though Plaintiff does not plead facts supporting an argument that the Jump Defendants had any duty to disclose anything.

Fatal to Plaintiff's theory against the Jump Defendants, however, is that the Jump Defendants' alleged statements do not suggest that the algorithm, by itself, would maintain the peg in all market conditions. Quite the opposite: Plaintiff alleges that, in February 2022, the Jump

1

Defendants tweeted their optimistic view that adding a billion dollar-plus cash reserve would help maintain the peg in volatile market conditions.  *See, e.g.*, ECF No. 42, Am. Compl. ¶¶ 139-40 (alleging on February 22, 2022, Mr. Kariya tweeted and Jump retweeted that a reserve would "further strengthen[] confidence in the peg [because] [i]t can be used to help protect" it and compared this reserve to "how many central banks hold reserves of foreign currencies to back monetary liabilities and protect against dynamic market conditions").  Thus, assuming all facts alleged by Plaintiff are true, the Jump Defendants' tweets amounted to a public announcement that the algorithmically-driven peg could be unstable in certain conditions and therefore could be strengthened with additional cash support.  This destroys Plaintiff's entire theory of the case against the Jump Defendants, namely that they intentionally hid their alleged May 2021 "bail out" to conceal that the peg could become unstable.

Plaintiff's Opposition also fails to answer for the many other equally fatal defects in the Amended Complaint as to the Jump Defendants.  With respect to his money laundering allegations, Plaintiff has no meaningful response to his failure to allege facts permitting a plausible inference that the Jump Defendants knew that transfers were the proceeds of a crime.  With respect to causation, Plaintiff ignores most of the Jump Defendants' arguments altogether and pointedly avoids revealing whether he even bought LUNA or UST *after* the Jump Defendants' alleged predicate acts.  Thus, he fails to establish not only RICO causation but also Article III standing to sue.  And with respect to his allegations relating to a "pattern" of racketeering, he does not explain how any of the non-conclusory allegations of fact in his Amended Complaint satisfy either closed-ended or open-ended continuity.  They do not.  At most, his allegations set forth an inherently limited scheme in which the Jump Defendants were allegedly involved for a mere nine months (as opposed to the required two years).  Finally, Plaintiff's failure to allege either an actionable pre-

existing conspiracy or agreement by the Jump Defendants precludes his RICO conspiracy claim against them.

## ARGUMENT

### I. Plaintiff Fails To Satisfy The Applicable Pleading Requirements

Plaintiff's allegations of fraud are the crux of his case and are subject to heightened pleading requirements. Plaintiff tries to minimize this fact by stating that "[o]ther than some of the allegations concerning mail and wire fraud," his Amended Complaint is subject to the "low pleading bar" of "notice pleading." *See* Opp. at 5, 23, 56. This should be seen for what it is: Plaintiff's attempt to lower the bar by first ignoring the deficiencies in his allegations against the Jump Defendants and then trying to meet a lower pleading standard that does not apply to the heart of his claims.

The Jump Defendants do not dispute that the applicable pleading standards are Rule 9(b) for Plaintiff's allegations of mail and wire fraud and Rule 8 for the remainder of his claims. But even with respect to the pleading requirements for his non-fraud allegations (governed by Rule 8 as opposed to Rule 9(b)), Plaintiff presents this Court with clearly abrogated law. Plaintiff repeatedly cites to *Levine v. Torino Jewelers Ltd.*, 2006 WL 709098 (S.D.N.Y. Mar. 22, 2006), even though it was decided before *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and applies the "any set of facts" standard made obsolete by those decisions. *See Levine*, 2006 WL 709098, at *2. Post *Twombly/Iqbal*, Plaintiff cannot simply rely on his "formulaic recitation of the elements of a cause of action" to meet his burden. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, he must plead facts demonstrating that his claims are "plausible," *id.* (quoting *Twombly*, 550 U.S. at 570), and must do so as to each defendant individually. *Sullivan v. Barclays PLC*, 2017 WL 685570, at *35 (S.D.N.Y. Feb. 21, 2017) (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). As set

3

forth in the Jump Defendants' Motion and herein, Plaintiff does not demonstrate that his claims against Jump Trading and Mr. Kariya are plausible and fails to meet the heightened pleading requirements of Rule 9(b) with respect to his allegations of mail and wire fraud against them.

## II. The May 2021 De-Peg Does Not Transform The Jump Defendants' Later Statements Into Predicate Acts Of Mail And Wire Fraud

The Amended Complaint does not plead any allegedly false statements by the Jump Defendants. It is no surprise, therefore, that Plaintiff's Opposition also does not identify a single statement of fact by the Jump Defendants that he alleges to be false. Instead, he now argues, based on an allegedly clandestine May 2021 token purchase by Jump Trading, or so-called "cash infusion," that the Jump Defendants knew something that Plaintiff did not: that the Terra algorithm did not work as advertised. *See*, *e.g.*, Opp. at 4, 17, 34, 40. And, says Plaintiff, because the Jump Defendants did not publicly disclose the alleged May 2021 token purchase, the Jump Defendants were "complicit" in statements *by other Defendants* that allegedly misrepresented how UST re-pegged, and the Jump Defendants' tweets (made months later) were somehow rendered misleading. Opp. at 34-35, 45. This theory of fraud by omission fails for three reasons.

First, Plaintiff expressly does not argue that the Jump Defendants had any duty to (or relationship with) any other party that would create an affirmative duty to disclose the alleged token purchase. *Id.* at 40–41. "Absent the existence of any such duty to disclose, a mail fraud claim premised on a material omission must fail." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996), *aff'd*, 113 F. 3d 1229 (2d Cir. 1997); *accord In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 440 (S.D.N.Y. 2019) (Rakoff, J.) ("Absent a fiduciary duty to speak, silence cannot support a claim of fraud.").

Second, while an omission can be actionable when coupled with a misleading half-truth even in the absence of a duty, *see Katzman*, 167 F.R.D. at 656, Plaintiff does not allege the Jump

4

Defendants said *anything* about the May 2021 de-peg—let alone anything that could be considered remotely close to a "half-truth" about the functionality of the Terra algorithm.  *See generally* Am. Compl.  On the contrary, what Plaintiff actually alleges is that the Jump Defendants later made public statements that the creation of the Luna Foundation Guard ("LFG") reserve would "help" maintain the peg going forward, necessarily suggesting that a reserve (*i.e.*, standby money that could be used if needed) would assist in maintaining the UST peg *when the algorithm was not able to do so on its own*.  *See, e.g.*, Am. Compl. ¶¶ 139-40, 146 (alleging Mr. Kariya appeared with Mr. Kwon on a show and "explained that 'it's extremely useful to have a [cash] reserve that can step in until the market is able to . . . reconsolidate liquidity'").

Plaintiff is stuck with his own allegations, which are assumed to be true for the purposes of this motion.  Having cited the Jump Defendants' statements that can only be read to show that they spoke in support of measures to bolster the peg due to inherent limitations of the algorithm, Plaintiff defeats his own claim that the Jump Defendants' purported nondisclosure of a prior "cash infusion" is actionable.  On these alleged facts, Plaintiff cannot state a claim that the Jump Defendants misled the public about the stability of UST.

Third, no facts alleged in the Amended Complaint support any inference—let alone the requisite "strong inference"—that the Jump Defendants' purported non-disclosure of a token purchase in conjunction with their later tweets and other statements was with scienter.  *See* Opp. at 40-41.  Theoretically, had the Jump Defendants implied through their statements that the algorithm *always* worked organically to maintain the peg even in volatile conditions, despite "knowing" that in May 2021 it did not, that might suffice to allege scienter under Plaintiff's theory.  But, as noted above, nothing that Plaintiff alleges the Jump Defendants said resembles that.  On the contrary, their alleged statements that the LFG cash reserve would "help" maintain or

"strengthen confidence" in the peg going forward undermines Plaintiff's theory that the Jump Defendants intentionally concealed the purported "cash infusion" as part of a scheme to mislead the public into thinking that the algorithm maintained the peg even in extreme market conditions. *See* Am. Compl. ¶¶ 139-40, 146.

Plaintiff also makes a half-hearted attempt to suggest, with virtually no explanation, that the Jump Defendants' alleged relationship with the LFG somehow supports an inference of scienter.  *See* Opp. at 40-41 (alleging Jump "was integral in the process of forming" the LFG and "recruited" others "to contribute funds to a reserve fund . . . designed to quell debate about the feasibility of the UST-Terra algorithm" (citing Am. Compl. ¶¶ 132, 222)).  But, as with Plaintiff's other arguments regarding the May 2021 de-peg, this relies on Plaintiff's incorrect theory that the Jump Defendants had a duty to disclose that the algorithm did not work and failed to do so (which, as laid out in Plaintiff's own allegations, is wrong twice over).

### III. Plaintiff Fails To Address—Let Alone Rectify—The Flaws In His Money Laundering Theory

Plaintiff essentially ignores the Jump Defendants' arguments demonstrating the inadequacy of his money laundering allegations.  He devotes three sentences to the topic that the Jump Defendants (lumped in with TFL) knew that they received the proceeds of crime:

> The TFL and Jump Defendants also argue that the Complaint does not allege that Defendants *knew* the property they siphoned out of the Terra Ecosystem was the proceeds of crime. That is incorrect. The Complaint alleges that these Defendants in fact, committed the crimes of mail and wire fraud to induce purchasers of cryptocurrencies into parting with their personal funds in exchange for a "stablecoin" destined to fail.

Opp. at 43.  First, as described above, mail and wire fraud were not adequately pled as to the Jump Defendants.  Second, even assuming *arguendo* that Plaintiff pled mail and wire fraud against other defendants, he does not allege facts in the Amended Complaint permitting a plausible inference that the Jump Defendants had knowledge that the alleged transfers (to the Jump Defendants or

anyone else) were "proceeds of crime." Instead, Plaintiff just asserts this element in conclusory fashion. *See* Opp. at 43; Am. Compl. ¶ 285. That is not sufficient. *Iqbal*, 556 U.S. at 678.

**IV.     That The Jump Defendants Allegedly Delayed The Collapse Of UST And LUNA By "Infusing Cash" In May 2021 Is Not A Viable Theory Of RICO Causation**

In their motion to dismiss, the Jump Defendants explained how (1) Plaintiff improperly injected a fraud-on-the-market theory of reliance into his case to show causation; (2) Plaintiff failed to say he relied on any of the Jump Defendants' alleged misstatements or even if he bought LUNA or UST following the Jump Defendants' alleged predicate acts; and (3) the *In re Tether and Bitfinex Crypto Asset Litigation* decision forecloses a finding that Plaintiff adequately pled proximate cause here. 576 F. Supp. 3d 55 (S.D.N.Y. 2021). Plaintiff addresses none of these arguments.

Rather, Plaintiff's Opposition makes clear that his theory of causation against the Jump Defendants is solely that the May 2021 purported "cash infusion" concealed problems with the algorithm, thereby allowing further purchases of UST by members of the putative Class. *See* Opp. at 58 (claiming Jump's "cash infusion [was] designed to hide flaws in the Terra Ecosystem"); *id.* at 62 (claiming "it is more than plausible that members of the Class purchased UST after" Jump's "cash infusion" in 2021). This theory of causation fails.

In *Picard v. Kohn*, a case which the Jump Defendants raised in their opening brief but Plaintiff ignored in his Opposition, this Court considered and rejected the same theory of causation. 907 F. Supp. 2d 392 (S.D.N.Y. 2012) (Rakoff, J.). In *Picard*, the Trustee alleged that the defendants caused harm by perpetuating the Madoff Ponzi scheme by feeding more money into it. *See id.* at 397 (the Trustee alleged that "defendants extended Madoff Securities' duration by providing it with a 'flood of cash.'"). As this Court explained, "[a]cts that merely further[], facilitate[], permit[] or conceal[] an injury which happened or could have happened independently of the act do not directly cause that injury, and thus do not proximately cause it." *Id.* (internal

7

citation omitted). Because "Madoff Securities operated independently" and the defendants only "extended Madoff Securities duration by providing it with a 'flood of cash,'" this Court found that the plaintiff failed to plead proximate cause and explained why under each of the factors that courts typically use to evaluate RICO causation. *Id.* at 397–98. Specifically, the Court found that "to ascertain the amount of . . . damages attributable to the violation," it would need to engage in "imponderable counterfactuals" concerning "how much earlier Madoff Securities would have been caught . . . without defendants' alleged contributions." *Id.* at 397 (quoting *Holmes v. Securities Inv. Prot. Corp.*, 503 U.S. 258, 269-70 (1992)). It also found that it would have no reliable method "for apportioning damages among Madoff Securities' investors" (*i.e.*, those that were injured). *Id.* Therefore, the Court found that such a theory of liability failed to satisfy the proximate cause requirement. *Id.* at 397–98. Likewise, even if the Jump Defendants' purported "cash infusion" helped sustain the market, "application of the very reasons that [the Supreme Court] identified for the tight requirement of proximate cause in RICO cases" prevents Plaintiff from establishing proximate causation due to the various issues of directness, evaluation, and apportionment of damages. *Id.*[1]

Moreover, Plaintiff compounds his error by relying on purchases by *other putative Class members* to establish causation. *See* Opp. at 62. He never claims to have purchased any UST or LUNA after Jump Trading's alleged May 2021 token purchase. *See generally* Am. Compl.; Opp. He only claims that it is "plausible that members of the Class purchased UST" after Jump Trading's

---

[1] While the Plaintiff speaks about proximate cause in terms of foreseeability, *see* Opp. at 60–63, "[p]roximate cause, in this [RICO] context, *refers not to the foreseeability of harm to a plaintiff*, but instead to the directness of the relationship between the purported enterprise's alleged criminal acts and the plaintiff's injuries." *Picard*, 907 F. Supp. at 397 (emphasis added). Indeed, "[a]lthough foreseeability is often the test of proximate causation at common law, RICO causation is a concept distinct from 'proximate causation as that term is used at common law.'" *See McBrearty v. Vanguard Grp., Inc.*, 353 F. App'x 640, 642 n.1 (2d Cir. 2009) (citation omitted).

8

actions. Opp. at 62. But Plaintiff is required to plead that *his* injury was caused by the Jump Defendants' conduct. His failure (and apparent inability) to do so means he failed to state a claim, *see* 18 U.S.C. § 1964, and indeed lacks Article III standing to sue the Jump Defendants. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-66 (2d Cir. 2012) (affirming dismissal because Article III does not "permit[] suits against non-injurious defendants"); *see also Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94 (2d Cir. 2018) (noting that there is no "standing against a particular defendant when that defendant did not actually injure a named plaintiff").[2]

### V. Plaintiff Fails To Plead Any Kind Of Pattern Of Continuous Conduct, Dooming His RICO Claim

Plaintiff has not pled a "pattern" of racketeering conduct by the Jump Defendants because he has not properly alleged either closed-ended or open-ended continuity.

As to closed-ended continuity, Plaintiff does not even attempt to set forth a timeline of predicate acts by the Jump Defendants lasting the requisite two years. Instead, he relies on two tweets suggesting the Jump Defendants worked with TFL for a "couple of years" and "a long time." *See* Opp. at 53. Of course, merely working with TFL on unspecified projects for an unspecified amount of time is not a predicate act under the RICO statute, so Plaintiff cannot use those tweets to plead *predicate acts* spanning a two-year period. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178–82 (2d Cir. 2004) (considering only surviving allegations of predicate acts); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243-44 (2d Cir. 1999) (same). At most, the alleged predicate acts pertaining to the Jump Defendants take

---

[2] Plaintiff misreads *Bridge v. Phoenix Bond & Indemnity Co.* as not requiring reliance, but *Bridge* simply says *first-party* reliance is not necessary for mail fraud. 553 U.S. 639, 657-58 (2008). That Court, however, recognized that "*someone*" had to have relied on the fraudulent statements to demonstrate causation of the Plaintiff's injury. *See id.* at 658–59 (explaining "if the county knew petitioners' attestations were false" but did not rely on them, then the causal chain could be severed).

9

place over a period of nine months and do not establish closed-ended continuity. *See id.*; Jump Defs. Mot. at 16–18.

Plaintiff's open-ended continuity argument fares no better. He does not allege any conduct "that by its nature projects into the future with a threat of repetition." *See* Opp. at 55 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). To the contrary, Plaintiff himself repeatedly alleges that the Defendants knew the "eventual demise of the system" was "ensured" and they had an "exit strategy." *See, e.g.,* Am. Compl. ¶¶ 19, 174. His own allegations thus describe "an 'inherently terminable' scheme" that "*does not* imply a threat of continued racketeering activity." *See Cofacredit*, 187 F.3d at 244 (emphasis added).[3] That the alleged scheme may not have had a precisely defined end date is of no moment. *See Dolan v. Fairbanks Cap. Corp.*, 930 F. Supp. 2d 396, 409 (E.D.N.Y. 2013). In fact, the inability to continue the alleged scheme due to LUNA and UST's allegedly inevitable collapse and the mass exodus of holders is incompatible with open-ended continuity.[4] *See Oak Beverages, Inc. v. Tomra of Mass., L.L.P.*, 96 F. Supp. 2d 336, 348 (S.D.N.Y. 2000) (rejecting open-ended continuity where plaintiff had terminated business with defendants and alleged no further fraudulent action by defendant); *see also D.R.S. Trading Co., Inc. v. Fisher*, 2002 WL 1482764, at *5 (S.D.N.Y. July 10, 2002).

---

[3] Plaintiff's cases are inapposite. They involve either the interruption of ongoing unlawful activity or the repetition of the same illegal conduct. *See Heinrich v. Waiting Angels Adoption Servs.*, 668 F. 3d 393, 410 (6th Cir. 2012) (the "subsequent event" that did not preclude open-ended continuity was a criminal prosecution); *United States v. Aulicino*, 44 F. 3d 1102, 1112 (2d Cir. 1995) (referring to repeated murders and repeated kidnappings as a continuing threat); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 370 (E.D.N.Y. 2012) (repeated submission of false MRIs).

[4] Plaintiff similarly fails to establish an inherently unlawful business sufficient for open-ended continuity. It is the legality of the underlying business activity that must be examined. *See Dolan*, 930 F. Supp. 2d at 409 (holding the "underlying business activities—servicing residential mortgages—are not inherently illegal"). At no point has Plaintiff alleged that LUNA and UST were not real cryptocurrencies with value that were exchanged for other currencies (fiat or virtual).

Accordingly, Plaintiff's RICO claim should be dismissed for failing to allege any kind of pattern of conduct.

## VI. Plaintiff's Attempt To Recast His Burden To Plead A RICO Conspiracy Does Not Save His Claim

Plaintiff acknowledges that a civil RICO conspiracy claim requires pleading an agreement but then goes on to effectively ignore that requirement. Plaintiff fails to plead such an agreement—including that the Jump Defendants knowingly participated in a scheme that, if completed, would constitute a substantive RICO violation.

As an initial matter, Plaintiff fails to allege facts from which it can be inferred that the Jump Defendants knowingly agreed to participate in a pattern of racketeering activity. *See generally* Am. Compl.; Opp. There are no allegations that the Jump Defendants were even aware of, let alone deliberately sought to further, any illegal objective. *Id.* He does not allege the Jump Defendants had a role in designing the algorithm (or any allegedly similar stablecoins) or in promoting its sustainability prior to May 2021. *Id.* At most, Plaintiff alleges that Jump Trading entered into an agreement with the TFL Defendants in May 2021 to provide a "cash infusion" to restore UST's peg and that thereafter the Jump Defendants promoted the LFG's role in defending the peg. *See, e.g.*, Opp. at 68. Even if these allegations somehow supported an inference that the Jump Defendants agreed to the commission of two predicate acts between May 2021 and May 2022 (they do not), Plaintiff fails to address the point that the RICO conspiracy claim would fail due to the lack of the requisite continuity. *See* Jump Defs. Mot. at 28.

The Jump Defendants also cannot be found to have joined a pre-existing conspiracy because the intracorporate conspiracy doctrine prevents TFL managers from conspiring with TFL, and therefore, there existed no conspiracy that Jump Trading could have joined. Plaintiff asserts that the intracorporate conspiracy doctrine does not apply because TFL's individual managers

11

stood to gain financially from the alleged scheme. *See* Opp. 69–70. But Plaintiff fails to plead facts showing that those Defendants were motivated by any "improper personal interest" extraneous to the corporation's interests—such as "extracting profits for themselves at [TFL's] expense." *See Kriss v. Bayrock Grp. LLC*, 2017 WL 1901966, at *3 (S.D.N.Y. May 8, 2017) (citations omitted). Applying the personal interest exception under these circumstances would eviscerate the doctrine, since high-level managers will generally stand to profit from their corporation's success in a business endeavor.[5]

Finally, it is true that in limited circumstances a complaint may state a civil RICO conspiracy claim despite failing to state a plausible substantive RICO claim, such as where the scheme was interrupted before anyone was able to carry out the contemplated racketeering acts. *See* Opp. at 67 (citing *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, 2022 WL 4448621, at *18 (S.D.N.Y. Sept. 23, 2022)). But here, Plaintiff contends that the RICO conspiracy was completed, not interrupted. The problem is that Plaintiff failed to actually allege that the Jump Defendants "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Nastasi*, 2022 WL 4448621, at *18 (quoting *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004)). Accordingly, the claim fails as to the Jump Defendants.

---

[5] Plaintiff cites authority from other jurisdictions declining to apply the doctrine to civil RICO conspiracy claims. Opp. at 69. But the Second Circuit has not ruled on this issue, and district courts in this circuit have consistently held that a corporation and its officers, employees, or agents acting within the scope of their employment or in the course of their duties cannot create a conspiracy to violate RICO. *See, e.g.*, *Merhej v. I.C.S. Intern. Custody Sys., Inc.*, 2014 WL 104908, at *4 (S.D.N.Y. Jan. 9, 2014), *report and recommendation adopted*, 2014 WL 948108 (S.D.N.Y. Mar. 11, 2014); *Sathianathan v. Smith Barney, Inc.*, 2006 WL 538152, at *23 (S.D.N.Y. Feb. 24, 2006), *report and recommendation adopted in relevant part*, 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007); *Skylon Corp. v. Guilford Mills, Inc.*, 1997 WL 88894, at *7-8 (S.D.N.Y. Mar. 3, 1997).

**CONCLUSION**

For all the foregoing reasons, the Jump Defendants respectfully request that the Court dismiss the Amended Complaint as to Mr. Kariya and Jump Trading.

Dated: New York, New York
December 28, 2022

Respectfully submitted,

KOBRE & KIM LLP

/s/ Jonathan Cogan
Jonathan Cogan
Steven W. Perlstein
Amanda Tuminelli
Tapan Oza
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Email: jonathan.cogan@kobrekim.com
Email: steven.perlstein@kobrekim.com
Email: amanda.tuminelli@kobrekim.com
Email: tapan.oza@kobrekim.com

*Attorneys for Defendant Jump Trading, LLC*

ZUCKERMAN SPAEDER LLP

/s/ Aitan Goelman
Aitan Goelman
Nell Z. Peyser
1800 M Street, NW, Suite 1000
Washington, DC 20036
Telephone: (212) 778-1800
Email: agoelman@zuckerman.com
Email: npeyser@zuckerman.com

*Attorneys for Defendant Kanav Kariya*